IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AD HOC COMMITTEE OF EQUITY HOLDERS OF TECTONIC NETWORK, INC.<br><br>                    Plaintiff,<br><br>    vs.<br><br>AROL WOLFORD, SHERWIN KRUG, CHARLES McROBERTS, JOHN McROBERTS, CHARLES PECCHIO, JR., LAURA ROGERS and THEO VANDERBOOM<br><br>                    Defendants. | Civil Action No. 06-665 (KAJ) |

**OPENING BRIEF IN**
**SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
William D. Johnston (No. 2123)
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone:   (302) 571-6672

PAUL, HASTINGS, JANOFSKY & WALKER LLP
J. Allen Maines, Bar No. 466575
John G. Parker, Bar No. 562425
Albert M. Myers, Bar No. 002711
600 Peachtree Street, Suite 2400
Atlanta, GA  30308
Telephone:   (404) 815-2400
Facsimile:   (404) 815-2424

*Attorneys for Defendants*

November 28, 2006

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................. iii

PRELIMINARY STATEMENT ........................................................................1

NATURE AND STAGE OF PROCEEDINGS ...................................................3

SUMMARY OF ARGUMENT .........................................................................3

BACKGROUND/FACTS ..................................................................................5

ARGUMENT ...................................................................................................7

I.    THE ACTION MUST BE DISMISSED BECAUSE THE COURT
      LACKS SUBJECT MATTER JURISDICTION. ...................................7

II.   THE COMPLAINT SHOULD BE DISMISSED FOR INSUFFICIENCY
      OF SERVICE OF PROCESS. .................................................................9

III.  THE CLAIMS ARE DERIVATIVE IN NATURE AND PLAINTIFF
      HAS NO STANDING TO BRING SUCH CLAIMS, NOR HAS IT
      SATISFIED THE LONGSTANDING PREREQUISITES FOR
      BRINGING SUCH CLAIMS. ...............................................................10

      A.  The Claims Are Derivative, Not Direct. ....................................10

      B.  Plaintiff Has No Standing To Assert The Claims Because All
          Derivative Claims Were Abandoned In Tectonic's Bankruptcy. ..............11

      C.  In The Alternative, Plaintiff Has No Standing To Assert The
          Claims Because It Does Not Satisfy The "Contemporaneous
          Ownership Rule" Applicable To Derivative Claims And Otherwise
          Fails To Satisfy The Procedural Requirements For Bringing Such
          Claims. ....................................................................................11

          1.  Plaintiff Does Not Plead That It Has Ever Owned Any Stock
              In Tectonic And It Acknowledges In Its Complaint That It Does
              Not Currently Own Shares. ..................................................12

          2.  Plaintiff Made No Pre-Suit Demand, And Demand Is Not
              Excused. ............................................................................13

          3.  The Complaint Is Not Verified And Does Not Contain
              The Required Allegation Regarding Jurisdiction. ................21

# TABLE OF CONTENTS

Page

IV.    THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE
A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND
FAILURE TO PLEAD FRAUD WITH PARTICULARITY.................................22

    A.   The Complaint Fails To State A Claim For Breach of Fiduciary
Duties. .........................................................................................................22

        1.  The Complaint Fails to State a Claim for Breach of Duty of
Loyalty. .............................................................................................22

        2.  The Complaint Fails to State a Claim for Breach of Duty of
Good Faith. ........................................................................................23

        3.  The Complaint Fails to State a Claim for Breach of Duty of
Care. ..................................................................................................24

        4.  The Complaint Fails to State a Claim for Corporate Waste. ...............25

    B.   The Complaint Fails To State Claims Of Fraud With Particularity. .........25

CONCLUSION..............................................................................................................27

DB02:5631898.1                                                                                         000000.0

# TABLE OF AUTHORITIES

## CASES

Page

Allison on behalf of Gen. Motors Corp. v. General Motors Corp.,
 604 F. Supp. 1106 (D. Del. 1985).........................................................................................14

Aronson v. Lewis,
 473 A.2d 805 (Del. 1984) ...........................................................................14, 17, 18, 20

Bank of Am. Nat'l Trust & Sav. Ass'n v. GAC Props. Credit, Inc.,
 389 A.2d 1304 (Del. Ch. 1978)..............................................................................................9

Beam v. Stewart,
 845 A.2d 1040 (Del. 2004) .................................................................................................17

Benerofe v. Jung Woong Cha, C.A. No. 14614, 1998 WL 83081
 (Del. Ch. Feb. 20, 1998) ....................................................................................................18

Blue v. National Fuel Gas Distributing Corp.,
 437 F. Supp. 715 (W.D. Pa. 1977),
 aff'd, 601 F.2d 573 (3d Cir. 1979) ......................................................................................8

Brambles USA, Inc. v. Blocker,
 731 F. Supp. 643 (D. Del. 1990)........................................................................................12

Brehm v. Eisner,
 746 A.2d 244 (Del. 2000) ..............................................13, 14, 19, 20, 21, 23, 25

In re Burlington Coat Factory Sec. Litigation,
 114 F.3d 1410 (3d Cir. 1997)..............................................................................................26

In re Caremark International Inc. Deriv. Litigation,
 698 A.2d 959 (Del. Ch. 1996).......................................................................................23, 24

Cede & Co. v. Technicolor, Inc.,
 634 A.2d 345 (Del. 1993) ...................................................................................................22

Emerald Partners v. Berlin,
 726 A.2d 1215 (Del. 1999) .................................................................................................24

Gaubert v. Federal Home Loan Bank Board,
 863 F.2d 59 (D.C. Cir. 1988).............................................................................................19

iii

Grimes v. Donald,
    673 A.2d 1207 (Del. 1996) ...................................................................19

Guttmann v. Jen-Hsun Huang,
    823 A.2d 492 (Del. Ch. 2003)...........................................................24

Kamen v. Kemper Finance Services, Inc.,
    500 U.S. 90 (1991)...............................................................13, 21, 22

Kohls v. Duthie,
    765 A.2d 1274, 1284 ...........................................................................18

Lewis v. Anderson,
    477 A.2d 1040 (Del. 1984) .............................................................12, 13

Lewis v. Vogelstein,
    699 A.2d 327 (Del. Ch. 1997)...........................................................25

Litt v. Wycoff,
    No. Civ. A. 19083 NC, 2003 WL 1794724
    (Del. Ch. Mar. 28, 2003) ...................................................................18

Malpiede v. Townson,
    780 A.2d 1075 (Del. 2001) .................................................................24

McMullin v. Beran,
    765 A.2d 910 (Del. 2000) ...................................................................17

Orman v. Cullman,
    794 A.2d 5 (Del. Ch. 2002)................................................................15

Rales v. Blasband,
    634 A.2d 927 (Del. 1993) ...................................................................14

Siegman v. Tri-star Pictures, Inc.,
    No. Civ. A. No. 9477, 1989 WL 48746
    (Del. Ch. May 5, 1989) .......................................................................14

Sinclair Oil Corp. v. Levien,
    280 A.2d 717 (Del. 1971) ...................................................................18

Stanziale v. Nachtomi,
    C.A. No. 01-403 KAJ, 2004 U.S. Dist. LEXIS 15664
    (D. Del. Aug. 6, 2004) ........................................................................19

DB02:5631898.1                                                                              000000.0

Stein v. Orloff,
    No. 7276, 1985 WL 11561
    (Del. Ch. May 30, 1985) ............................................................................................18

Stone v. Ritter,
    No. 93, 2006, 2006 Del. LEXIS 597
    (Del. Nov. 6, 2006) ....................................................................................................23

In re Suprema Specialties, Inc. Sec. Litigation,
    438 F.3d 256 (3d Cir. 2006).......................................................................................26

In re Walt Disney Co. Derivative Litig.,
    731 A.2d 342 (Del. Ch. Oct. 7, 1998).................................................................18, 23

Telxon Corp. v. Meyerson,
    802 A.2d 257 (Del. 2002) ..........................................................................................15

Tomczak v. Morton Thiokol, Inc.,
    Civ. A. No. 7861, 1990 Del. Ch. LEXIS 47
    (Del. Ch. Apr. 5, 1990) ..............................................................................................20

Tooley v. Donaldson, Lufkin, & Jenrette, Inc.,
    845 A.2d 1031 (Del. 2004) ...................................................................................10, 11

Transamerica Corp. v. Reliance Insurance Co.,
    884 F. Supp. 133 (D. Del. 1995)..................................................................................8

In re Tri-Star Pictures, Inc. Litigation,
    634 A.2d 319 (Del. 1993) ...........................................................................................14

Turner v. Bernstein,
    No. 16190, 1999 WL 66532
    (Del. Ch. Feb. 9, 1999) ..............................................................................................13

Unitrin, Inc. v. American Gen. Corp.,
    651 A.2d 1361 (Del. 1995) .........................................................................................18

Washington Bancorporation v. Said,
    812 F. Supp. 1256 (D.D.C. 1993) ..............................................................................20

v

## STATUTES

28 U.S.C. § 1332.................................................................................................2, 8

Fed. R. Civ. P. 9(b) ........................................................................................2, 5, 26

Fed. R. Civ. P. 12(b)(2) & (6)...............................................................................1

Fed. R. Civ. P. 23.1 ...........................................................................1, 2, 3, 12, 13, 21

Fed. R. Civ. P. 23.2.............................................................................................12

Del. Ch. R. 23.1 ..................................................................................................13

10 <u>Del</u>. <u>C</u>. § 3114(c)..........................................................................................4, 9

## OTHER AUTHORITIES

Delaware General Corporation Law § 102(b)(7)..................................................24

5 <u>Moore's Federal Practice</u> § 23.1.06 (3d ed.)....................................................22

William M. Fletcher, 13 <u>Fletcher Cyclopedia of Private Corporations</u>
        § 5981 (West 1005).................................................................................12

DB02:5631898.1                                                                                      000000.0

Arol Wolford, Sherwin Krug, Charles McRoberts, John McRoberts, Charles Pecchio, Jr., Laura Rogers and Theo Vanderboom (collectively "Defendants"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their motion pursuant to Fed R. Civ. P. 23.1 and Fed. R. Civ. P. 12(b)(2) & (6) to dismiss the complaint ("Complaint" or "Compl.") brought against them by the plaintiff, the so-called Ad Hoc Committee of Equity Holders of Tectonic Network, Inc. ("Committee").

## PRELIMINARY STATEMENT

The claims in this action are brought by a group of former shareholders of Tectonic Network, Inc. ("Tectonic") operating under the name "Ad Hoc Committee of Equity Holders of Tectonic Network, Inc." Plaintiff – to the extent it is a single plaintiff which Defendants dispute – asserts claims against several former directors and officers of Tectonic for allegedly improper conduct that occurred before Tectonic filed for protection under the Bankruptcy Code in 2005. In particular, plaintiff alleges that Defendants breached their fiduciary duties to, and committed fraud on, Tectonic.

None of the claims allege any injury to plaintiff – or any actual Tectonic shareholder – that is independent of injury to Tectonic itself. The claims, therefore, are purely derivative in nature. As such, they must be dismissed. Tectonic expressly abandoned all such claims in its bankruptcy proceedings. Moreover, such claims are subject to the longstanding requirements applicable to derivative claims set forth in the Federal Rules of Civil Procedure, and related jurisprudence. Namely, pursuant to Fed. R. Civ. P. 23.1, plaintiff must allege, in a verified complaint, that it held stock, both at the time of the events complained of and now; it must allege with particularity either that it made a demand on Tectonic's Board of Directors or other authority to institute this action, and that such demand was either refused or would have

1

been futile; and it must allege that the action is not a collusive one to confer subject matter jurisdiction where it otherwise would be lacking, and submit a verified complaint. Plaintiff here fails in all of these tasks. In fact, plaintiff has not taken the first steps towards properly asserting derivative claims. Even setting aside these failures, plaintiff does not state a claim for breach of fiduciary duties, and it does not plead fraud with the particularity required by Fed. R. Civ. P. 9(b).

The Court need not reach such issues, however. The action can be dismissed for the simple reason that the Court lacks subject matter jurisdiction to adjudicate the claims. Plaintiff, in its *un*verified complaint, does not set forth facts establishing diversity of citizenship under 28 U.S.C. § 1332 (the only basis to be in federal court), and, in fact, the parties are not completely diverse. Finally, the action fails because of lack of personal jurisdiction over Defendants. Defendants were not sufficiently served with process.

2

## NATURE AND STAGE OF PROCEEDINGS

This action, against various current and former directors and officers of Tectonic, was commenced by the filing of an unverified complaint in this Court on October 27, 2006. Although the claims are derivative in nature, the would-be plaintiff does not allege that it ever made pre-suit demand on Tectonic's board of directors, nor does it comply with other procedural requirements of Fed. R. Civ. P. 23.1 applicable to this action. Summons was issued on October 31, 2006, and plaintiff purported to effectuate service by serving copies of the Summons and complaint on Tectonic's former registered agent in Delaware.

The same claims were previously asserted against directors and officers of Tectonic in Tectonic's proceedings under Chapter 11 of the Bankruptcy Code in 2005, in the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court"). The claims took the form of a motion to be appointed an Ad Hoc Committee of Equity Holders. However, both Tectonic and the United States Trustee opposed the motion, and the Bankruptcy Court did not entertain the claims.

## SUMMARY OF ARGUMENT

The action must be dismissed for four separate and independent reasons. First, the Court lacks subject matter jurisdiction over this action. In an action such as this, purportedly brought by an unincorporated association which bases subject matter jurisdiction on diversity of citizenship, there is no complete diversity – and hence no jurisdiction – where any member of the association has citizenship in common with any defendant. Yet based on materials properly before the Court on a motion to dismiss, four members of the would-be plaintiff reside in (and

3

therefore are citizens of, for diversity purposes) Florida – which is also the residence of

defendant John McRoberts. Complete diversity thus is destroyed, and there is no jurisdiction.

Second, the Court lacks personal jurisdiction over any defendant in that the

plaintiff has not sufficiently served any defendant with process. Where, as here, personal

jurisdiction is based on Delaware's consent statute for corporate officers and directors, 10 Del.

C. § 3114(c) (1999), the perfection of process requires, not only that the corporation's registered

agent be served, but also that the Prothonotary or the Register in Chancery of the court in which

the action is pending shall send copies of process to each defendant. There is no evidence that

the latter task was accomplished here. Moreover, it is not clear that Tectonic, which underwent

bankruptcy protection in 2005, has had the same registered agent throughout the period in

question. Only through fortuity did the Complaint chance to make its way from Tectonic's

registered agent to one of the defendants.

Third, the claims are, by their nature, derivative, not direct, and hence must be

brought in the name of Tectonic. As such, the plaintiff was required to follow certain

longstanding prerequisites before filing an action containing such claims. Those prerequisites

included making demand on Tectonic's Board of Directors to bring the suit or allege with

particularity the reasons why failure to make such a demand should be excused as futile; the

filing of a verified complaint; and the affirmative allegation that the suit in federal court is not a

collusive one to confer subject matter jurisdiction where it otherwise would be lacking. The

plaintiff complied with none of these prerequisites, which are part and parcel of the substantive

corporate law of the State of Delaware. Moreover, plaintiff association never could have owned

any stock in Tectonic, and it concedes that all shares of Tectonic were canceled in the

4

bankruptcy. Any derivative claims that conceivably could survive these defects were, at any rate, abandoned by Tectonic in the bankruptcy, and they cannot be asserted here.

Finally, the Complaint fails to state a claim upon which relief can be granted, and it fails to plead fraud with particularity as required by Fed. R. Civ. P. 9(b). The Complaint contains only boilerplate allegations of breaches of duties or fraud that, under the case law, are insufficient to sustain such claims. The conduct of defendants as alleged by the plaintiff constitutes nothing more than their good-faith exercise of business judgment in running the affairs of Tectonic with which the plaintiff happens to disagree. The claims therefore are insufficient as a matter of law and should be dismissed.

## BACKGROUND/FACTS

Plaintiff alleges that it is an unincorporated association. Plaintiff nowhere states when, where, or how it was formed, nor does it identify its individual members. The Defendants are former directors and officers of Tectonic, which filed for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court") in October 2005 and emerged from bankruptcy protection in May 2006.

The Committee alleges that one or more of the Defendants engaged in wrongful acts that caused injury to Tectonic. Following is a summary of the allegations, with emphases added to illustrate the manner in which the claims relate to injury to Tectonic, rather than to any shareholder or group of shareholders:

- Plaintiff alleges that Wolford and Krug caused Tectonic to acquire three construction-information businesses, BBN Acquisition, Inc. ("BBN"), Construction Yellow Pages, LLC ("CYP") and SpecSource.com, Inc. ("SSI"), with which Wolford was affiliated, despite the fact that the businesses were unprofitable and cash-poor. Compl. ¶¶ 22, 26. In plaintiffs' words, these defendants thus breached "their fiduciary duties to <u>Tectonic Network</u> . . . and caused <u>Tectonic Network</u> to acquire [the three businesses] to benefit Wolford by having <u>Tectonic Network</u>, rather than Wolford, finance their tremendous needs for cash . . . ." <u>Id</u>. ¶¶ 27-28 (emphases added).

5

- Plaintiff alleges that Wolford caused Tectonic to acquire SSI despite his knowledge that SSI overstated its website usage statistics to its customers and overstated its revenues to Tectonic, thereby committing "fraud" on Tectonic. Id. ¶¶ 36-54.

- Plaintiff alleges that, following the first quarter of 2004, Wolford and Krug falsely advised Tectonic's Board of Directors that over $500,000 in revenues had been achieved from the three acquired businesses when, in fact, much of those revenues would have to be refunded due to incorrect website usage statistics and other information having been furnished to SSI's customers. Id. ¶¶ 55-57. This allegedly caused injury to "Tectonic Network," which otherwise "would not have acquired and thereafter invested substantial funds in the businesses." Id. ¶ 57 (emphasis added).

- Plaintiff alleges that Tectonic's Board of Directors wrongly appointed Wolford to investigate allegations of improper practices at Tectonic Solutions, thereby ensuring it would not be properly investigated and injuring Tectonic. See id. ¶¶ 58-62.

- Plaintiff alleges that Wolford and Krug falsely portrayed a Virtual Business Model ("VBM") service to Tectonic's Board, exaggerating its past and future projected revenues and customer acceptance, so as to secure the Board's consent to Tectonic's funding the VBM service, Tectonic's sale of its GO Software subsidiary, and Tectonic's further funding of the three acquired businesses. Compl. ¶¶ 63-76.

- Plaintiff alleges that Wolford caused Tectonic to publish an ill-conceived national print directory, thereby "squander[ing] the assets of Tectonic Network . . . ." Id. ¶ 77 (emphasis added).

- Plaintiff alleges that Wolford caused Tectonic to sell its most profitable division, GO Software, to reinvest the funds in the three acquired businesses and the VBM service, and that this occurred in a transaction in which certain defendants received improper benefits, thereby harming Tectonic. See id. ¶¶ 83-96.

- Finally, plaintiff alleges that certain defendants improperly received payments on notes as a result of "self dealing and wrongful stripping of value from Tectonic Network." Id. ¶ 103.

This is not the first time that plaintiff has attempted to assert these claims. In Tectonic's bankruptcy proceedings, a motion was made by the same group of shareholders calling itself by the same name. That motion sought appointment as an Ad Hoc Committee and asserted the same claims of wrongdoing alleged in the Complaint. See Affidavit of Adam W. Poff, Esquire, dated November 28, 2006 ("Poff Aff."), Exh. A. The United States Trustee opposed the motion to appoint an Ad Hoc Committee. See id. Exh. B. Moreover, the

6

Bankruptcy Court did not entertain the Committee's claims.  Rather, these claims were deemed "abandoned" by Tectonic.  See id. Exh. C.

In declining to adjudicate the Committee claims, the Bankruptcy Court had before it an analysis of the claims prepared by Tectonic itself, as Debtor-in-Possession.  That analysis examined the claims in painstaking detail in seven single-spaced pages in Tectonic's First Amended Disclosure Statement and First Amended Plan of Reorganization.  See Poff Aff. Exh. D at 18-24.  Tectonic's conclusions, prepared by its bankruptcy counsel, included the following:

> Based upon Debtors' counsel review of documents produced to the Ad Hoc Committee in response to the Ad Hoc Committee subpoena and based on applicable case law, Debtors' counsel has concluded that the allegations made in the Ad Hoc Committee Motion are without merit and are not viable.
> . . .
> Based on Debtors' counsel investigation and review of documents produced to the Ad Hoc Committee in response to the Ad Hoc Committee subpoena, Debtors' counsel believes that the Ad Hoc Committee's claims . . . are not viable.
> . . .
> [B]ased on investigation and review of documents, Debtors' counsel believes that Debtors' estates have no viable claims for recovery of the payments made in connection with the SpecSource transaction and has concluded that the payments, even if made by the Debtors, were not improper . . . .

See id.  For reasons similar to that of Tectonic and its bankruptcy counsel when the same claims were lodged against Tectonic in the bankruptcy, and for other reasons, this Court should dismiss the claims brought by the Plaintiff Committee.

## ARGUMENT

### I.   THE ACTION MUST BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION.

The Court lacks subject matter jurisdiction over this action, and the Court need not consider any other grounds set forth by Defendants in determining to dismiss the Complaint.

7

Plaintiff premises subject matter jurisdiction on diversity of citizenship under 28 U.S.C. § 1332. See Compl. ¶ 17. In that regard, plaintiff asserts that "[n]one of the members of the Ad Hoc Committee is a citizen of the same state of which any of the Defendants is a citizen." Id.

Plaintiff's bare assertion of diversity of citizenship, in its unverified complaint, is insufficient to confer jurisdiction. The plaintiff must affirmatively plead specific facts establishing diversity of citizenship, i.e., the residences of each party to the lawsuit, including all plaintiffs and all defendants. Blue v. National Fuel Gas Distrib. Corp., 437 F. Supp. 715, 716 (W.D. Pa. 1977), aff'd, 601 F.2d 573 (3d Cir. 1979). Section 1332 requires complete diversity: "if any one defendant is a citizen of the same state as any one plaintiff, diversity of citizenship is destroyed and §1332 provides no basis for federal court jurisdiction." Transamerica Corp. v. Reliance Ins. Co., 884 F. Supp. 133, 137 (D. Del. 1995). For purposes of diversity jurisdiction, an unincorporated association has no separate legal identity and its citizenship is the citizenship of each of its members. Id. Thus, to confer subject matter jurisdiction, Plaintiff was required to plead the residences of each of its shareholder members. It did not do so, and this alone defeats jurisdiction.

Subject matter jurisdiction is defeated not just as a pleading matter, but as a factual matter as well. Several members of the Committee share citizenship with several of the Defendants in this action. The Committee disclosed the identity and residences of its members in a pleading filed in Tectonic's bankruptcy proceedings. See Poff Aff. Exh. E. The following members of the Committee are shown in that pleading to be residents of the State of Florida:

Bridge Ventures, Inc.
Harris Friedman
1241 Gulf of Mexico Drive
Longbrook Key, Florida 34228

8

Sharon Will
3014 S.W. 41st Ave.
Ocala Florida 34474

Don Will
150 N. Anoka Avenue
Avon Park, Florida 33825

Albert Saphier
4922 Bayway Place
Tampa, Florida 33629

Id. Each shareholder named above has residence in common with at least one defendant, John

McRoberts, who is a resident of the State of Florida. See Declaration of John McRoberts, dated

November 19, 2006, ¶ 1 (Poff Aff. Exh. J).

## II.    THE COMPLAINT SHOULD BE DISMISSED FOR INSUFFICIENCY OF SERVICE OF PROCESS.

The Complaint must also be dismissed under Rule 12(b)(2) for insufficiency of

service of process.  Plaintiff purports to serve Defendants under the Delaware consent statute for

corporate officers and directors.  The statute, however, provides that, in order to effectuate

service of process, not only must a plaintiff serve the corporation's registered agent with one

copy of such process, but also

> the Prothonotary or the Register in Chancery of the court in which the civil action
> or proceeding is pending shall, within 7 days of such service, deposit in the
> United States mails, or by registered mail, postage prepaid, true and attested
> copies of the process, together with a statement that service is being made
> pursuant to this section, addressed to such director, trustee, member or officer . . .
> .

10 Del. C. § 3114(c)(1999).  No process duly prepared and transmitted by any such court

personnel was ever sent to any of the Defendants.  The fact that one or more of the Defendants

actually received a copy of the Summons and Complaint does not constitute valid service.  See

Bank of Am. Nat'l Trust & Sav. Ass'n v. GAC Props. Credit, Inc., 389 A.2d 1304, 1307-1308

9

(Del. Ch. 1978). Thus, since process was not validly served on any Defendant, personal jurisdiction has not been established over any Defendant, and the action must be dismissed on this independent ground.

### III. THE CLAIMS ARE DERIVATIVE IN NATURE AND PLAINTIFF HAS NO STANDING TO BRING SUCH CLAIMS, NOR HAS IT SATISFIED THE LONGSTANDING PREREQUISITES FOR BRINGING SUCH CLAIMS.

Even were jurisdiction found to exist here, the Complaint must still be dismissed. Each of the claims is derivative in nature, and Plaintiff has no standing to bring such claims and has not satisfied any of the prerequisites for doing so.

### A. The Claims Are Derivative, Not Direct.

Typically, a derivative claim alleges harm to the corporation and does not allege any injury to the shareholder that is independent of the harm to the corporation. Because a derivative suit is being brought on behalf of the corporation, the recovery, if any, must go to the corporation. By contrast, a stockholder who is directly injured, independent of harm to the corporation, does retain the right to bring an action for injuries affecting his legal rights as a shareholder. In such individual suits, the recovery or other relief flows directly to the shareholder, not to the corporation. Tooley v. Donaldson, Lufkin, & Jenrette, Inc., 845 A.2d 1031, 1036 (Del. 2004).

In Tooley, the Delaware Supreme Court clarified what is required to render a claim direct, and not derivative. Specifically, the Supreme Court held that, to qualify as a direct and not a derivative claim, the alleged injury "must be independent of any alleged injury to the corporation," the "stockholder must demonstrate that the duty breached was owed to the stockholder," and the stockholder must show "that he or she can prevail without showing an injury to the corporation." Tooley, 845 A.2d at 1039.

10

Applying <u>Tooley</u>, each of the claims here is squarely derivative. Cutting through the verbiage of the Complaint, Plaintiff's grievances rest on a series of pre-petition events, each of which alleges injury to <u>Tectonic</u>. <u>See</u> <u>supra</u>, p. 3-4. Plaintiff itself concedes (as it must) the derivative nature of its claims in the very first substantive allegation of the Complaint, entitled "<u>Nature of this Action</u>":

> This is an action brought under substantive state law for Defendants' breaches of their fiduciary duties <u>to Tectonic Network</u>, including Defendants' breaches of their duty of undivided loyalty <u>to Tectonic Network</u> and their self-dealing, and the fraud of Defendants Wolford and Krug <u>on Tectonic Network</u>, all of which led to <u>its</u> insolvency and the loss of value in <u>its</u> stock.

Compl. ¶ 19 (emphases added).

**B.    Plaintiff Has No Standing To Assert The Claims Because All Derivative Claims Were Abandoned In Tectonic's Bankruptcy.**

Because the Plaintiff's claims are derivative, they may not go forward. In the bankruptcy proceedings, Tectonic expressly and irrevocably abandoned any derivative claims it might have had against its officers and directors. <u>See</u> Ad Hoc Committee Order ¶ 3, at 3 ("Upon entry of this Order . . . the Claims shall be deemed to be abandoned."), a true and correct copy of which is attached as Exhibit C to the Poff Affidavit.

**C.    In The Alternative, Plaintiff Has No Standing To Assert The Claims Because It Does Not Satisfy The "Contemporaneous Ownership Rule" Applicable To Derivative Claims And Otherwise Fails To Satisfy The Procedural Requirements For Bringing Such Claims.**

Even if the claims had not been abandoned in the bankruptcy proceedings, they still may not go forward, for at least two reasons:

11

1.    **Plaintiff Does Not Plead That It Has Ever Owned Any Stock In Tectonic And It Acknowledges In Its Complaint That It Does Not Currently Own Shares.**

Fed. R. Civ. P. 23.1 requires that a derivative plaintiff must:  (i) be a shareholder of the corporation at the time of the challenged transaction (and must so allege); and (ii) must continuously hold those shares throughout the lawsuit.  Brambles USA, Inc. v. Blocker, 731 F. Supp. 643, 648 (D. Del. 1990); Lewis v. Anderson, 477 A.2d at 1040, 1046 (Del. 1984).  Commentators and courts refer to this requirement as the "contemporaneous ownership rule." See, e.g., William M. Fletcher, 13 Fletcher Cyclopedia of Private Corporations § 5981 nn. 2-5 (West 1005).  If a would-be plaintiff fails the "contemporaneous ownership rule," that would-be plaintiff lacks standing to sue derivatively.

The would-be plaintiff in this action is an unincorporated association, the Ad Hoc Committee of Equity Holders of Tectonic Network, Inc.  As its name implies, the Committee did not hold, and could not have held, shares of Tectonic in its own name – either at the time of the challenged transaction or at the commencement of this action.  At most, it is simply a group of certain former shareholders of Tectonic who have elected not to sue in their own names, or even to identify themselves (as, for example, Fed. R. Civ. P. 23.2 would contemplate).  Plaintiff concedes that it itself never owned any shares of Tectonic but simply "consists of a group of [former] public shareholders" of Tectonic.  Compl. ¶ 1.  In electing to sue under this guise, the former shareholders who constitute the Committee have pleaded themselves out of any standing to bring a derivative claim.

Even if the holdings of the particular shareholders who constitute the Committee were deemed to count towards satisfaction of the "contemporaneous ownership rule," the rule

12

still would not be satisfied.    Under Tectonic's Plan of Reorganization, which was confirmed by

the Bankruptcy Court on  May 22, 2006, all "Existing Securities" of Tectonic, including its

shares of common stock, were canceled and rendered null and void.    Plaintiff affirmatively

pleads that all shares which any of its members ever owned were canceled in Tectonic's

bankruptcy proceedings. Compl. ¶¶ 2, 16.  It avers that new shares, issued after Tectonic's

emergence from bankruptcy, are owned entirely by Wolford. Id. ¶ 16.  Thus, by Plaintiffs' own

admission, none of its member shareholders currently holds any shares of Tectonic.  Such

shareholders therefore lack standing to bring a derivative action. See Lewis, 477 A.2d at 1049

("[a] plaintiff who ceases to be a shareholder, whether by reason of a merger or for any other

reason, loses standing to continue a derivative suit"); Turner v. Bernstein, No. 16190, 1999 WL

66532, at *3 (Del. Ch. Feb. 9, 1999).

##### 2.    Plaintiff Made No Pre-Suit Demand, And Demand Is Not Excused.

Because directors of a corporation manage the business and affairs of the

corporation, they are responsible for deciding whether to engage in derivative litigation. Kamen

v. Kemper Fin. Servs., Inc., 500 U.S. 90, 91 (1991).  Thus, a plaintiff in a derivative action must

allege with particularity either its efforts to make a demand on the Board or reasons for the

failure to make demand. See Fed. R. Civ. P. 23.1; Del. Ch. R. 23.1.  If a court finds that demand

is not excused and has not been made, the suit must be dismissed. Brehm v. Eisner, 746 A.2d

244, 267 (Del. 2000).  Demand will only be excused as futile in extraordinary circumstances.

Kamen, 500 U.S. at 96.

Where, as here, a would-be plaintiff has failed to make a pre-suit demand, that

plaintiff must plead with particularity reasons why a demand was not made and bears the burden

of showing that demand would have been futile. See Fed. R. Civ. P. 23.1; Del. Ch. R. 23.1;

Allison on behalf of Gen. Motors Corp. v. General Motors Corp., 604 F. Supp. 1106, 1114 (D.

Del. 1985); Siegman v. Tri-star Pictures, Inc., No. Civ. A. No. 9477, 1989 WL 48746, at *10

(Del. Ch. May 5, 1989), aff'd in part, rev'd in part on other grounds sub nom., In re Tri-Star

Pictures, Inc. Litig, 634 A.2d 319 (Del. 1993).  Conclusory allegations that a demand would be

futile are insufficient.  Brehm, 746 A.2d at 254.

            Delaware law provides two tests for determining demand futility depending on

whether the complaint challenges:  (i) a Board-approved transaction, or (ii) complete inaction by

the Board.  Where the complaint challenges board action, demand is excused only where "a

reasonable doubt is created that:  (1) the directors are disinterested and independent and (2) the

challenged transaction was otherwise the product of a valid exercise of business judgment."

Aronson v. Lewis, 473 A.2d 805, 814 (Del. 1984), overruled on other grounds, Brehm, 746 A.2d

244.  On the other hand, where the challenged conduct was not affirmatively approved by the

Board, courts excuse demand only upon a showing that a majority of the Board is incapable of

impartially considering the demand because of self-interest or lack of independence.  Rales v.

Blasband, 634 A.2d 927, 933 (Del. 1993); Allison, 604 F. Supp. at 1114 (holding that "unless a

plaintiff makes sufficiently particular allegations of participation, self-dealing, bias, bad faith, or

corrupt motive, failure to make a demand will not be excused . . . [t]he mere fact that plaintiff

names members of the Board of Directors as defendants or even makes conclusory allegations of

director wrongdoing does not suffice to excuse demand") (citations omitted).  Plaintiff has not

set forth allegations satisfying either of these tests for demand futility.  The Board of Tectonic

currently consists of two members, Arol Wolford and Charles McRoberts.  In order to meet

either test, Plaintiff must allege facts with particularity demonstrating that both of these

individuals (i.e., a majority of the Board) lacked disinterestedness and independence.  Setting

14

aside the allegations concerning Wolford,[1] it is apparent that the Complaint contains <u>inadequate</u> allegations concerning McRoberts's supposed lack of disinterestedness and independence. The sole allegation concerning McRoberts in this regard is that, in connection with its acquisition of BBN, CYP, and SSI, Tectonic released 3,750,000 shares of common stock from escrow and transferred 309,383 of those shares to McRoberts before it was contractually obligated to do so. <u>See</u> Compl. ¶¶ 31-33. This allegation is insufficient to establish either interest <u>or</u> lack of independence by McRoberts.

A director is considered to be "interested" (and thus disabled from fairly considering pre-suit demand) only when his financial stake is "of such subjective material importance that its threatened loss might create a reason to question whether the director is able to consider the corporate merits of the challenged transaction objectively." <u>Telxon Corp. v. Meyerson</u>, 802 A.2d 257, 264 (Del. 2002). <u>See</u> <u>also</u> <u>Orman v. Cullman</u>, 794 A.2d 5, 23 (Del. Ch. 2002) (materiality means that the alleged benefit was "significant enough in the context of the director's economic circumstances" to affect his decision-making). Here, Plaintiff does not allege facts suggesting that McRoberts's receipt of shares would raise any question, in his economic circumstances, of his ability to have considered the merits of the transaction at issue.

Plaintiff does not make such allegations of "interest" on the part of McRoberts. The release of the escrowed shares can scarcely be said to have overwhelmed McRoberts's ability to consider objectively the acquisitions at issue. Prior to the release of shares, McRoberts and two other directors had the right to 3,765,930 shares if Tectonic reached certain financial milestones. Compl. ¶ 31. As Tectonic disclosed in its financial statements publicly filed with the Securities and Exchange Commission, McRoberts and the other two directors exercised

---

[1] Defendants dispute that Wolford was not disinterested and independent.

voting rights with respect to the shares, which constituted fully one-third of Tectonic's

outstanding common stock. See Poff Aff. Exh. F, p. F-24 through F-25. In return for

irrevocably forfeiting their rights to 2,847,176 shares (over 75 percent of the total), including the

voting rights on those shares, the three directors received a fraction of such shares (less than 25

percent) immediately. See id. Far from conferring a gratuitous benefit on McRoberts (or any

other director), the release of shares simply represented the settlement of bona fide claims by

McRoberts on the company's resources. See id.

All of the above facts concerning McRoberts' alleged "interest" were disclosed to

shareholders, and plaintiff cannot deny having been aware of them. Indeed, in the notes to its

publicly-filed financial statements for the year ended June 30, 2004, Tectonic disclosed as

follows:

> In conjunction with a reverse merger on August 10, 2000, with Net/Tech
> International, Inc. ("NTTI"), a total of 3,765,930 shares of common stock were
> placed in escrow in the names of two officers of the Company and one director.
> At that time, the Company entered into an escrow agreement with three current
> members of its Board of Directors, Charles McRoberts, John McRoberts and
> Charles Pecchio, Jr. The escrow agreement provided that approximately
> 3,765,930 shares of the Company's common stock would be held in escrow for
> release to these directors (i) when certain financial milestones are reached, or (ii)
> upon a change of control. While these shares were held in escrow, the directors
> exercised voting rights with respect to the escrowed shares. However, the
> Company's management analyzed the directors' ownership of the Company's
> shares in the escrow account and concluded that having approximately 33% of the
> outstanding common stock in escrow was not conducive to the Company's
> strategic plans.
>
> Accordingly, on October 29, 2003, a settlement was reached with the three
> directors, providing for a release of 750,000 of the escrowed shares on a pro rata
> basis to the three directors based on their ownership interests, with an additional
> 168,754 shares to remain in escrow through October 2006, to be released to Mr.
> Pecchio, the Chairman of the Board, if the trading price of the Company's
> common stock reaches and maintains certain price targets. None of these targets
> were met in 2004. Under the terms of the escrow settlement agreement, the
> remaining 2,847,176 shares were forfeited by the directors back to the Company
> and were placed in the treasury.

16

Poff Aff. Exh. F, p. F-24 through F-25.

Nor does plaintiff adequately allege lack of "independence" on McRoberts's part. "Independence" is a broader concept than interest, involving both the director's general economic interests as well as any other considerations, such as personal or institutional relationships, that might prevent the director from acting in the corporation's best interest. In Aronson, the court stated that "[i]ndependence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." 473 A.2d at 816. The test for independence, as for interest, is a subjective one based on the particular circumstances and characteristics of each director. See McMullin v. Beran, 765 A.2d 910, 923 (Del. 2000). But it is precisely the "particular circumstances and characteristics" of McRoberts that plaintiff does not allege. All we know about him from the Complaint is that he was an officer and director of Tectonic at various times (Compl. ¶¶ 9, 123), that he was friends with Wolford (id. ¶ 123), and that he received a certain number of shares from the company at one point (in settlement of an obligation to pay him four times as many shares), in connection with a series of acquisitions of which the Board as a whole approved. Similar circumstances are routine in the business world and fail, on their face, to cast reasonable doubt on McRoberts's independence as a Board member. See Beam v. Stewart, 845 A.2d 1040, 1050-51 (Del. 2004) ("[a]llegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about the director's independence"; such allegations "largely boil down to a 'structural bias' argument, which presupposes that the professional and social relationships that naturally develop among members of a board impede independent decision making").

Plaintiff's conclusory allegations that Wolford "controlled" other Board members (e.g., Compl. ¶ 123) are not sufficient to raise an issue with respect to McRoberts's

17

independence. See Stein v. Orloff, No. 7276, 1985 WL 11561, at *4 (Del. Ch. May 30, 1985) (allegations of "extensive business relationships" were insufficient to excuse the failure to make a demand because "[n]o facts are alleged which suggest that the directors would not have retained their other positions unless they acted in accordance with [the allegedly interested director's] wishes. See also Litt v. Wycoff, No. Civ. A. 19083 NC, 2003 WL 1794724, at *4 (Del. Ch. Mar. 28, 2003); Kohls v. Duthie, 765 A.2d 1274, 1284 (Del. Ch. 2000); Benerofe v. Jung Woong Cha, C.A. No. 14614, 1998 WL 83081, at *3 (Del. Ch. Feb. 20, 1998).

        Moreover, with respect to the affirmative actions alleged in the Complaint, plaintiff fails to satisfy the second prong of Aronson, which requires the Complaint to rebut the strong presumption that the Board's decisions are entitled to deference under the business judgment rule. The business judgment rule affords a "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Aronson, 473 A.2d at 812. At the pleading stage, it burdens the "party challenging the [Board's] decision to establish facts rebutting the presumption." Unitrin, Inc. v. American Gen. Corp., 651 A.2d 1361, 1373 (Del. 1995). Under this standard, the business decisions of independent and disinterested directors "will not be disturbed if they can be attributed to any rational business purpose." Sinclair Oil Corp. v. Levien, 280 A.2d 717, 720 (Del. 1971). To rebut the business judgment rule's presumption, the Complaint must allege particularized facts that raise a reason to doubt that (i) the Board acted honestly and in good faith, or (2) the Board acted with adequate information. See In re Walt Disney Co. Derivative Litig., 825 A.2d 275, 286 (Del. Ch. 2003).

        The Complaint fails this second prong of Aronson for at least two reasons. First, the Complaint pleads no specific facts to suggest that the Board did not act in good faith in

18

approving the challenged transactions. The only allegations concerning the Board's state of mind are found in paragraphs 61, 126, and 127 of the Complaint. With one exception, these allegations contain nothing more than conclusory statements that "no reasonable person could possibly authorize in good faith" such-and-such transaction, or that the Board acted "in bad faith" in approving such-and-such transaction. Such bald conclusions simply do not (and cannot) rebut the business judgment rule's presumption. Stanziale v. Nachtomi, C.A. No. 01-403 KAJ, 2004 U.S. Dist. LEXIS 15664, at *5-8 (D. Del. Aug. 6, 2004) (stating that "plaintiff bears the burden of alleging well pleaded facts to overcome the presumption of the business judgment rule and survive a motion to dismiss . . . absent well pleaded allegations of specific acts of self-dealing or even bad faith, plaintiff cannot overcome the presumption afforded by the business judgment rule" and holding that plaintiff's "conclusory allegations" that the defendants breached their fiduciary duties of care, loyalty, and good faith did not rebut the presumption of the business judgment rule) (internal quotations in original omitted); See also, Gaubert v. Federal Home Loan Bank Bd., 863 F.2d 59, 69-78 (D.C. Cir. 1988) (Rule 23.1 requires more particularity than does Rule 8(a)); Brehm, 746 A.2d at 254 ("Rule 23.1 is not satisfied by conclusory statements or mere notice pleading"); Grimes v. Donald, 673 A.2d 1207, 1216 (Del. 1996) (plaintiff must allege with particularity that demand would be futile). The only exception, Plaintiff's allegation that the Board appointed Wolford to investigate allegations of improper practices at Tectonic Solutions (Compl. ¶ 61) is inadequate as well. As is made clear by an SEC filing on which plaintiff relies (see Compl. ¶ 62), the Board did not appoint Wolford to investigate the allegations, but rather retained control and direction of the investigation itself.

000000.0

<u>See</u> Form 8-K filed on February 24, 2005, a true and correct copy of which is attached as Exhibit

G to the Poff Affidavit.[2]

Second, the Complaint makes no particularized allegations that the Board was not

adequately informed.  In this regard, it merely repeats as a mantra the conclusory allegation that

Wolford and Krug imparted "false and misleading" information to the Board, <u>e.g.</u>, Compl. ¶¶ 26,

that was "material." <u>E.g.</u>, <u>id.</u> ¶ 41.  As demonstrated herein, such allegations do not satisfy the

standard of pleading with particularity, and thus fail the second prong of <u>Aronson</u>.  <u>See</u> <u>infra</u>,

part IV.B.[3]

In sum, the Complaint amounts to nothing more than second-guessing decisions

of Tectonic's Board with which Plaintiff disagrees, with the benefit of hindsight.  But the mere

fact that a shareholder disagrees with the Board's business judgments "cannot serve as grounds

for imposing liability based on alleged breaches of fiduciary duty and waste." <u>Brehm</u>, 746 A.2d

at 266.  Courts have dismissed claims with far greater factual support than the Complaint here.[4]

---

[2] Indeed, a Special Committee, consisting entirely of outside directors, was appointed to investigate the allegations of wrongdoing at issue.  <u>See</u> Form 8-K filed on October 7, 2005, Exhibit 99.1, a true and correct copy of which is attached as Exhibit H, p. L-1 to the Poff Declaration.  Moreover, the allegations of wrongdoing at issue were subsequently dismissed by the administrative body <i>in which</i> they were made.

[3] Indeed, the Complaint gives new meaning to "alternative pleading,"  Plaintiff first alleges that defendants Wolford and Krug <i>defrauded</i> other Board members ("First Claim for Relief").  Later, plaintiff alleges that those other Board members breach fiduciary duties by approving certain transactions "without serious examination" ("Fourth Claim for Relief").  <u>See also</u> <u>id.</u> at ¶127(b) ("relied in bad faith"); ¶ 128 ("no reasonable person could possibly authorize in good faith").

[4] <u>See</u>, <u>e.g.</u>, <u>Washington Bancorporation v. Said</u>, 812 F. Supp. 1256, 1279-80 (D.D.C. 1993) (court was "greatly troubled with the callous disregard of law, fiduciary duties, and the interests of depositors shown by directors and officers of countless banks and savings and loans," but nevertheless dismissed plaintiff's claims as directors were protected by business judgment rule); <u>Tomczak v. Morton Thiokol, Inc.</u>, Civ. A. No. 7861, 1990 Del. Ch. LEXIS 47 (Del. Ch. Apr. 5, 1990) (granting summary judgment for defendants in shareholder derivative suit because court would not substitute its judgment for that of the Board's absent a showing that the Board's decision was uninformed).

A decision sustaining this Complaint "would invite courts to become super-directors, measuring matters of degree in business decision-making and executive compensation. Such a rule would run counter to the foundation of our jurisprudence." Id. In Brehm, despite lamenting the "extraordinarily lucrative compensation agreement and termination payout awarded a company president who served for only a little over a year and who underperformed to the extent alleged," id. at 267, the Court affirmed dismissal of the plaintiff's derivative claim.

Even if the claims in this case were viewed as having been asserted on behalf of the Ad Hoc Committee of Equity Holders of Tectonic Network, Inc., rather than on behalf of Tectonic itself, dismissal still would be required because Federal Rule of Civil Procedure 23.1 authorizes only "a derivative action brought by one or more *shareholders* as members to enforce a right of a corporation or of an unincorporated association." The Ad Hoc Committee, as such, never owed any shares in Tectonic

### 3.     The Complaint Is Not Verified And Does Not Contain The Required Allegation Regarding Jurisdiction.

A derivative complaint must be verified, and this one is not. See Fed. R. Civ. P. 23.1. A pleading can only be verified by a natural person. Thus, the shareholders behind this lawsuit have placed their own insistence on hiding their identities on a greater plane of importance than the requirements of the Federal Rules.

In addition, a derivative plaintiff must allege that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. See Fed. R. Civ. P. 23.1; Kamen v. Kemper Fin. Servs., 500 U.S. 90, 100 n.6 (1991). On its face, the Complaint fails to meet this requirement, which is by no means a mere formality. "Because diversity jurisdiction does not exist if parties [are] collusively joined, the Court, in order to counteract the perceived abuse, require[s] that the pleading in derivative actions allege that the

21

suit is not a collusive one to confer federal jurisdiction." 5 Moore's Federal Practice § 23.1.06

(3d ed.). See also Kamen, 500 U.S. at 100. The requirement is especially important to prevent

the situation that occurred here, where, as a result of the Plaintiff's failure to plead the residences

of its constituent shareholders, Defendants were forced to locate and produce materials beyond

the pleadings (of which the Court can take judicial notice in the context of this motion) to resolve

the jurisdictional question.

## IV.   THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND FAILURE TO PLEAD FRAUD WITH PARTICULARITY.

### A.   The Complaint Fails To State A Claim For Breach of Fiduciary Duties.

In managing a corporation's affairs, the directors and principal officers must act

for the benefit of the corporation and owe three main duties to the corporation and its

shareholders: loyalty, good faith, and care. Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 361

(Del. 1993). Allegations of breach of fiduciary duty must be analyzed to determine whether

plaintiff rebuts the business judgment rule presumption that disinterested directors who honestly

and reasonably believe they are benefiting the corporation may not be second-guessed by

shareholders. As in this case, if those allegations fail to rebut the presumption, the Complaint

must be dismissed.

#### 1.   The Complaint Fails to State a Claim for Breach of Duty of Loyalty.

The duty of loyalty requires directors to put the interests of the corporation above

their own. Cede & Co., 634 A.2d at 361. Without any adequate allegation that Defendants acted

out of self-interest to Tectonic's detriment, the Complaint fails to rebut the business judgment

rule's presumption. Plaintiff's only allegations of self-interest against Defendants are

conclusory. For example, Plaintiff alleges that certain directors received shares of Tectonic

22

stock released from escrow in connection with business acquisitions. See Compl ¶¶ 31-33. But, as shown above, these allegations are inadequate to establish improper self-interest. See supra, p. 3-4. Similarly, plaintiff alleges that Krug received a salary of $160,000, plus options in Tectonic stock. Compl. ¶ 30. Such compensation arrangements are completely customary for the Chief Financial Officer of a publicly-traded company and do not raise an issue of self-interest. In re Walt Disney Co. Derivative Litig., 731 A.2d 342, 355, (Del. Ch. 1998) (responding to plaintiffs' allegation that many of the directors are interested because they received director fees and stock options, the court noted that "[u]nder Delaware law, the receipt of such customary payments and benefits has been held insufficient to demonstrate any interest that might conflict with [the corporation's] interest in the [compensation] agreement") (citations omitted), aff'd in part, rev'd in part on other grounds sub nom. Brehm v. Eisner (In re Walt Disney Co. Derivative Litig.), 906 A.2d 27 (Del. 2006).

### 2.    The Complaint Fails to State a Claim for Breach of Duty of Good Faith.

The duty of good faith requires that directors not abdicate "all responsibility to consider appropriately an action of material importance to the corporation." Walt Disney, 825 A.2d at 278. To plead a claim for breach of the duty of good faith, Plaintiff must allege facts sufficient to show: (i) that the directors knew or should have known that violations of the law were occurring; (ii) that the directors took no steps in a good faith effort to prevent or remedy that situation. Stone v. Ritter, No. 93, 2006, 2006 Del. LEXIS 597, at *19 (Del. Nov. 6, 2006) (holding that the failure to act in good faith may result in liability only as part of a breach of the duty of loyalty); and (iii) that such failure proximately resulted in the alleged losses. In re Caremark Int'l Inc. Deriv. Litig., 698 A.2d 959, 970-71 (Del. Ch. 1996). As the Caremark court explained:

23

> [W]here a claim of directorial liability for corporate loss is predicated upon ignorance of liability creating activities within the corporation . . . only a sustained or systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a reasonable information and reporting system exists—will establish the lack of good faith that is a necessary condition to liability.

Id. at 971.  Liability under Caremark is premised "on a showing that the directors were conscious of the fact that they were not doing their jobs."  Guttmann v. Jen-Hsun Huang, 823 A.2d 492, 506 (Del. Ch. 2003).  Because Plaintiff has made no such showing, its breach of duty of good faith claim fails as a matter of law.  In fact, Plaintiff alleges in detail many communications and presentations that Tectonic's Board received concerning the transactions at issue, thus negating any claim of systematic failure of oversight by the Board.  See, e.g., Compl. ¶¶ 24, 25, 43, 55, 68, 85.  Moreover, Plaintiff does not allege the existence of any specific "red flags" that should have put the Board on notice of problems—it merely asserts that the Board "should have known of" problems.

### 3.    The Complaint Fails to State a Claim for Breach of Duty of Care.

Plaintiff's only remaining breach of fiduciary duty claim is a claim that the Defendants breached their duty of care.  This claim cannot survive because Plaintiff cannot seek damages against Defendants for breach of the duty of care.  Delaware General Corporation Law § 102(b)(7) permits corporations to protect individual directors from money damages liability for breach of the duty of care, and Tectonic adopted such a charter provision.  See Poff Aff. Exh. I.  Thus, the Court should dismiss any claim against Defendants based on a breach of the duty of care.  See Emerald Partners v. Berlin, 726 A.2d 1215, 1224 (Del. 1999); Malpiede v. Townson, 780 A.2d 1075, 1092 (Del. 2001).

24

### 4.   The Complaint Fails to State a Claim for Corporate Waste.

Plaintiff may argue, in opposition, that it has stated a claim for corporate waste. Courts define corporate waste as "an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade." Lewis v. Vogelstein, 699 A.2d 327, 336 (Del. Ch. 1997). The rationale for this test is virtually identical to that for the business judgment rule: "Courts are ill-fitted to attempt to weigh the 'adequacy' of consideration under the waste standard, or, ex post, to judge appropriate degrees of business risk." Id. Thus, a shareholder must allege that the Board "irrationally squandered" corporate assets – for example, where the challenged transaction served no corporate purpose or where the corporation received no consideration at all. Brehm, 746 A.2d at 263. The Complaint here clearly fails to meet this demanding standard. Plaintiff alleges that the acquisitions of BBN, CYP, and SSI were, at most, misguided, not irrational. In particular, Plaintiff comes forward with no facts supporting its baseless suggestion that these transactions were a boondoggle devoid of any prospect of value.

### B.   The Complaint Fails To State Claims Of Fraud With Particularity.

Besides breach of fiduciary duties, the only other claimPlaintiff alleges is fraud. See Compl. ¶¶ 105-09. The elements of a claim for fraud are a material misstatement on which plaintiff relied, made with scienter, which caused damages to plaintiff. Importantly, Plaintiff does not allege that there were any misstatements made to it – or any shareholder of Tectonic – on which it relied. Rather the allegations are that misstatements were made to the Board and that the Board relied on them. See Compl ¶¶ 24-26, 29, 39, 40, 42-45, 47, 51-56, 62, 64, 66, 68, 69, 82, 86. For this reason alone, the fraud claim must be dismissed.

25

Assuming _arguendo_ that the fraud claim could be interpreted as involving misrepresentations made to plaintiff, it still fails. Fed. R. Civil P. 9(b) requires that allegations of fraud must be pled with particularity . "The imposition of a heightened pleading requirement in fraud actions serves important objectives: Rule 9(b)'s heightened pleading standard gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997). Rule 9(b) requires a plaintiff to plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage. In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 270 (3d Cir. 2006). Thus, a plaintiff is at least obligated to include some manner of "precision and some measure of substantiation into [his] allegations of fraud." Id.

Plaintiff utterly fails to meet this heightened pleading standard. The allegation is that Wolford and/or Krug made misrepresentations to induce Tectonic to acquire and invest further in BBN, CYP, and SSI; to invest in VBM; to sell GO Software; and to approve various payments. The allegations are hopelessly vague, however, and they fail to establish the "who, what, when, where, and how" of any fraud—as required by Rule 9(b). For example, Plaintiff asserts that Wolford and Krug "falsely represented . . . that these businesses would be greatly profitable and viable" and that "[t]he financials are positive and the risks manageable." Compl. ¶¶ 24-25. These alleged statements are so vague and general that, by their terms, they could not reasonably have been relied upon. Moreover, Plaintiff makes no effort to provide specific information as to what makes these statements false. Without pleading any specific facts,

26

plaintiff merely concludes that "the acquired businesses were riddled with fraudulent and unethical business practices, unprofitable, and in need of large infusions of cash in order to continue operating." Id. ¶ 26.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
William D. Johnston (No. 2123)
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone:  (302) 571-6672

PAUL, HASTINGS, JANOFSKY & WALKER LLP
J. Allen Maines
John G. Parker
Albert M. Myers
Michael D. Grider
600 Peachtree Street, Suite 2400
Atlanta, GA  30308
Telephone:  (404) 815-2400
Facsimile:   (404) 815-2424

*Attorneys for Defendants*

Dated:  November 28, 2006

27

## CERTIFICATE OF SERVICE

I, Adam W. Poff, hereby certify that on November 28, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Ian Connor Bifferato
> Linda Richenderfer
> Joseph K. Koury
> Bifferato, Gentilotti, Biden & Balick
> 1308 Delaware Ave.
> Wilmington, DE 19806

I further certify that on November 28, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY FEDERAL EXPRESS

> Thomas J. Flemming
> Herbert C. Ross, Jr.
> Olshan, Grundman, Frome,
> Rosenzweig, & Wolosky LLP
> 65 East 55th Street
> New York, NY 10022

YOUNG CONAWAY STARGATT & TAYLOR, LLP

William D. Johnston (No. 2123)
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
(302) 571-6600
apoff@ycst.com