## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AD HOC COMMITTEE OF EQUITY
HOLDERS OF TECTONIC NETWORK,
INC.,

              Plaintiff,

              v.

AROL WOLFORD; SHERWIN KRUG;
CHARLES MCROBERTS; JOHN
MCROBERTS; CHARLES PECCHIO, JR.;
LAURA ROGERS; and THEO
VANDERBOOM,

              Defendants.

No. 06-665

## PLAINTIFF'S BRIEF IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

Ian Connor Bifferato (#3273)
Linda Richenderfer (#4138)
BIFFERATO, GENTILOTTI, BIDEN
& BALICK LLC
1308 Delaware Avenue
Wilmington, Delaware 19801
(302) 429-1900

and

Thomas J. Fleming, Esquire
Herbert C. Ross, Jr., Esquire
OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
65 East 55th Street
New York, New York 10022
Telephone: 212-451-2300

*Attorneys for Plaintiff*

Dated: Wilmington, Delaware
       December 12, 2006

Table of Contents

Page

Nature and Stage of Proceedings ..................................................................1

Summary of Argument ...................................................................................1

Statement of Facts..........................................................................................5

Argument .....................................................................................................12

    I   THIS COURT HAS SUBJECT MATTER JURISDICTION..................... 12

        A. There is Complete Diversity of Citizenship.................................. 12

        B. This Court Has Subject Matter Jurisdiction Over This Action Under 28
           U.S.C. § 1334................................................................................ 14

        C. Alternatively, if Subject Matter Jurisdiction Here Requires Mr.
           McRoberts' Deletion as a Defendant, He Should be Dropped as a
           Defendant...................................................................................... 16

    II  DEFENDANTS' MOTION TO DISMISS FOR INSUFFICIENCY OF
       SERVICE OF PROCESS SHOULD BE DENIED ................................. 16

        A. Service Was Properly Made.......................................................... 16

        B. The Motion To Dismiss For Insufficiency Of Service Of Process Is
           Premature ...................................................................................... 17

    III AS THIS IS NOT A SHAREHOLDERS' DERIVATIVE ACTION, IT
       CANNOT BE DISMISSED FOR FAILURE TO PLEAD JURISDICTIONAL
       REQUIREMENTS FOR A DERIVATIVE ACTION............................ 18

    IV PLAINTIFF'S COMPLAINT MORE THAN ADEQUATELY PLEADS
       DEFENDANTS' BREACHES OF FIDUCIARY DUTY ....................... 20

        A. Pleading Standards........................................................................ 20

        B. Defendants Apply The Wrong Standard For Pleading Breach Of
           Fiduciary Duty Claims In A Federal Court.................................... 21

           1. Duty of Loyalty..................................................................... 22

           2. Duty of Good Faith ............................................................... 25

           3. Duty of Care.......................................................................... 26

Table of Contents
(continued)

Page

V  PLAINTIFF HAS PLEADED FRAUD WITH THE REQUISITE
   PARTICULARITY REQUIRED BY RULE 8(b).................................................. 27

   A.  The Rule 9(b) Standard ............................................................... 27

   B.  The Fraud Claims Here Meet These Standards ........................................... 28

Conclusion ........................................................................................................31

Table of Contents

Page

**FEDERAL CASES**

*Adkins v. Rumsfeld*, 450 F.Supp.2d 440 (D.Del. 2006) ...................................13

*Allstate Ins. Co. v. Dinkins*, CIV.A. No. 87-6164, 1988 WL 26476 (E.D.Pa. Mar. 11, 1988) ...................................................................................................16

*Borah, M.D., P.C. v. Monumental Life Ins. Co.*, No. Civ.A. 04-3617, 2005 WL 83261 (E.D. Pa. Jan. 14, 2005) ...........................................................................17

*Bruley v. Lincoln Property Co., N.C., Inc.*, 140 F.R.D. 452 (D.Col. 1991) ...................................17

*In re Cendant Corp. Litig.*, 60 F.Supp.2d 354 (D.N.J. 1999) .......................................28

*Conley v. Gibson*, 355 U.S. 41 (1857) ...............................................................20

*Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628 (3rd Cir. 1989)...................................28

*Epic Systems Corp. v. Acacia Research Corp.*, No. CIVA 06-255, 2006 WL 3355185 (D.Del. Nov. 16, 2006) ...........................................................................13

*Field v. Volkswagenwerk AG*, 626 F.2d 293 (3rd Cir. 1980).........................................16

*Henderson v. U.S.*, 517 U.S. 654 (1996)..............................................................17

*IT Litigation Trust v. D'Aniello*, No. 04-1268, 2005 WL 3050611 (D.Del. Nov. 15, 2005) .........................................15, 16, 23, 24, 27

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F. 2d 1406 (3d Cir. 1991) .........................................20

*Krasnov v. Dinan*, 465 F.2d 1298 (3rd Cir. 1972)........................................................12

*Lerman v. Joyce Int'l, Inc.*, 10 F.3d 106 (3rd Cir. 1993) ...........................................20, 21

*Lord v. Living Bridges*,  No. CIV.A. 97-6355, 1998 WL 792179 (E.D. Pa. Nov. 10, 1998) .........17

*McCann v. George W. Newman Irrevocable Trust*, 458 F.3d 281 (3d Cir. 2006)................... 12-14

*In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004) ...............................................15

*Shamrock Holdings, Inc. v. Arenson*, __ F.Supp.2d __, 2006 WL 2802913 (D.Del. Sept. 29, 2006)...........................................................................21, 22

Table of Contents
(continued)

Page

*Timco Engineering, Inc. v. Rex & Co., Inc.*, 603 F.Supp. 925 (E.D.Pa. 1985)..............................16

*In re Tower Air, Inc.*, 416 F.3d 229 (3d Cir. 2005) ....................................................21-23, 25, 27

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F. 3d 478 (3d Cir. 1998) ...........................................................................................................20

*United States ex rel. Kelly v. The Boeing Co.*, 9 F.2d 743 (9th Cir. 1993)............................19, 20

*In re Veritas Software Corp. Securities Litig.*, No. 04-831-SLR, 2006 WL 1431209 (D.Del. May 23, 2006)...........................................................................................28

*Weiner v. Quaker Oats Co.*, 129 F.3d 310 (3rd Cir. 1997).......................................................27, 28

*West v. Terry Bicycles, Inc.*, 230 F.3d 1382 (Fed. Cir. 2000)..........................................................17

*Williamson v. Osenton*, 232 U.S. 619 (1914) ...............................................................................12

## STATE CASES

*Alidina v. Internet.com Corp.*, 2002 WL 31584292 (Del. Ch. Nov. 6, 2002) ..............................27

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984)..................................................................................21

*Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345 (Del. 1993) .........................................................22

*In re Emerging Communications, Inc. Shareholders Litig.*, No. Civ.A. 16415, 2004 WL 1305745 (Del. Ch. May 3, 2004) ..........................................................................20

*Khanna v. McMinn, No. Civ.A 20545*, 2006 WL 1388744 (Del. Ch. May 9, 2006) ....................27

*Orman v. Cullman*, 794 A.2d 5 (Del. Ch. 2002)...........................................................................22

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ...............................................................................23

*Stone v. Ritter*, No. 93, 2006, 2006 WL 3169168 (Del. Nov. 6, 2006) ................................. 25-27

*Street Search Partners, L.P. v. Ricon Int'l L.L.C.*, C.A. No. 04C-09-191-PLA, 2006 WL 1313859 (Del. Super. May 12, 2006) ........................................................................20

*In re Walt Disney Co. Shareholder Litig.*, 906 A.2d 27 (Del. 2006)........................................25-27

iv

Table of Contents
(continued)

Page

**FEDERAL STATUTES**

Fed. R. Civ. P. 4(m).............................................................................................................17

Fed. R .Civ. P. 19................................................................................................................16

28 U.S.C. § 1334..........................................................................................................3, 15, 16

**STATE STATUTES**

Delaware General Corporation Law § 102(b)(7)............................................................27

10 Del. C. § 3701 ...............................................................................................................20

10 Del. C. § 3904 ...............................................................................................................18

10 Del. C. § 3114 (c)..........................................................................................................16

This Brief is submitted on behalf of Plaintiff Ad Hoc Committee of Equity Holders of Tectonic Network, Inc. in opposition to Defendants' motion to dismiss the Complaint in this action.

## NATURE AND STAGE OF PROCEEDINGS

Defendants have mischaracterized this action. This is a direct, rather than a derivative, action against former and current officers and directors of Tectonic Network, Inc. ("Tectonic Network") for their fraud on the corporation and breaches of fiduciary duties which caused the bankruptcy of Tectonic Network in October 2005. Plaintiff, an unincorporated association of non-insider shareholders of Tectonic Network, commenced this action by filing the Complaint in this Court on October 27, 2006. Plaintiff served the summons and complaint on each of the Defendants on October 31, 2006 by delivery of copies for each Defendant to the registered agent for Tectonic Network in the State of Delaware.

By stipulation and order entered April 13, 2006, Tectonic Network and the Bankruptcy Court in which Tectonic Network filed its bankruptcy petition conveyed the claims brought in this action to Plaintiff and authorized it to bring this action for the benefit of itself and its members.

Contrary to what Defendants state, these claims were not heard in the Bankruptcy Court. Rather, Plaintiff's motion there to be appointed an official committee of equity holders to pursue the claims set forth in this action in the Bankruptcy Court was settled by the stipulation and order conveying Tectonic Network's claims against its officers and directors to Plaintiff and authorizing it to prosecute those claims outside of that court in Plaintiff's own name for its and its members' benefit.

## SUMMARY OF ARGUMENT

Plaintiff is an unincorporated association whose members represent about fifty percent of

the non-insider shareholders of Tectonic Network. In this action, Plaintiff seeks recoveries on claims that Tectonic Network and an order of the bankruptcy court assigned to Plaintiff, including claims for the frauds Tectonic Network's President and CEO, defendant Arol Wolford ("Wolford"), and CFO, defendant Sherwin Krug ("Krug"), perpetrated on the corporation and its Board. The frauds led to huge losses by the corporation and its insolvency in October 2005. Wolford and Krug committed these frauds to take what they could for themselves and to reward Wolford's other allies. Plaintiff also seeks to recover for Wolford's and Krug's breaches of fiduciary duty to Tectonic Network, which likewise led to its huge losses and insolvency. Finally, Plaintiff seeks to recover from the other directors, defendants Charles McRoberts, John McRoberts, Charles Pecchio, Jr., Laura Rogers, and Theo VanderBoom, for their complicity with Wolford and Krug and own breaches of fiduciary duty to the corporation, performed to benefit themselves at the expense of the corporation.

The Court should deny Defendants' motion because this Court has subject matter jurisdiction over this action. Defendants allege that one of them, John McRoberts, destroys complete diversity as he has since June 2004 resided in Florida, the same state where a few members of the Plaintiff unincorporated association reside. First, Mr. McRoberts' allegation is inconsistent with the Statement of Financial Affairs filed in the Bankruptcy Court on October 26, 2005 by Tectonic Network on whose Board of Directors he sat in October 2005. That statement gives the same residential address in Birmingham, Alabama as is alleged the Complaint in this action. Second, Mr. McRoberts has maintained a residence in Birmingham, Alabama, for years, and still maintains a residence there. Additionally, Birmingham, Alabama is the principal place of business of all of his business activities for all relevant years with the exception of Tectonic Network which was and still is headquartered in Georgia. At the very least, Plaintiff is entitled to

jurisdictional discovery from John McRoberts on his state citizenship.

Whether or not John McRoberts is a citizen of Florida, this Court has subject matter

jurisdiction over this action under 28 U.S.C. § 1334 because this action relates to the bankruptcy

proceeding filed by Tectonic Network. By stipulation and order of the Bankruptcy Court, the

bankrupt, Tectonic Network, and the court assigned the claims in this action to Plaintiff, the

bankruptcy court authorized Plaintiff to bring this action, and the stipulation and order was

incorporated in the amended plan of reorganization confirmed in Tectonic Network's bankruptcy

proceeding.

In the event that it is found that John McRoberts is a domiciliary of Florida and therefore

destroys complete diversity of citizenship, and jurisdiction somehow does not exist under

§ 1334, Plaintiff asks that it be permitted to move to delete John McRoberts as a defendant in

order to preserve jurisdiction in this Court. He is not an indispensable party to the claims for joint

and several liability against the directors of Tectonic Network for their breach of fiduciary duty,

and his presence is not required in this action.

Defendants' motion should also be denied because Plaintiff properly served the

Summons and Complaint on the Defendants under Delaware law. In the event service was

insufficient, under established authority, that part of the motion seeking dismissal for

insufficiency of service of process is premature because the 120 day period for service of the

summons and complaint under Rule 4(m), Fed. R. Civ. P., has not expired, and a motion to

dismiss for insufficient process tolls the 120 day period.

The part of the motion, including the many pages of Defendants' brief devoted thereto

(see Defs. Br. at Pt. III, pp. 10-22), which seeks dismissal because the action is supposedly a

shareholders' derivative suit and Plaintiff and its members failed to meet procedural and

pleading requirements for such an action is entirely irrelevant. This action is not a derivative one.

By stipulation and order of the Bankruptcy Court, Plaintiff was authorized to bring this action in the right of Tectonic Network, but for the benefit of Plaintiff's members. The order transferred all claims of Tectonic Network against its officers and directors, except those for preferential transfers, to Plaintiff. In fact, the order provides that in the event Plaintiff, in its sole discretion, requests formal assignment from Tectonic Network of its claims such must be given upon demand by Plaintiff. Therefore, as Tectonic Network's claims have been transferred to Plaintiff by order of the Bankruptcy Court, there is no need to comply with any of the procedural formalities of a shareholders' derivative action.

Insofar as the motion is premised on alleged pleading deficiencies in the breach of fiduciary duty claims, the motion also must be denied. First, Defendants ignore controlling Third Circuit precedent that a plaintiff alleging breach of fiduciary duties under Delaware substantive law in an action in federal court need not plead detailed facts showing breach of fiduciary duty to survive a motion to dismiss, that only notice pleading is required, and that the plaintiff need not plead around the "business judgment rule" when the complaint makes no reference to that rule.

In any event, the Complaint alleges in detail the grounds for Defendants' breach of their duty of loyalty, as well as their duty of good faith, to Tectonic Network. Similarly, the Complaint alleges in detail accepted grounds for Plaintiff's claim of Defendants' breach of their duty of care to Tectonic Network, despite any Articles of Incorporation's exclusion of liability for such claims, as Defendants' actions fall within statutory exceptions to such an exclusion. As to the arguments that a claim of corporate waste is not stated, the argument is beside the point as the Complaint makes no effort to allege any such claim.

Finally, the claims of fraud against Defendant Wolford and Krug should not be dismissed

4

for lack of particularity in the pleadings as the Complaint sets forth, in ample detail, the frauds that they perpetrated on Tectonic Network and its Board.

## STATEMENT OF FACTS

For a detailed statement of the facts pertinent to this motion the Court is respectfully referred to the Complaint in this action ("Complaint"), and the declaration of Herbert C. Ross and its exhibits ("Ross Decl."), including the copies of the stipulation and order entered April 13, 2006 and the amended plan of reorganization in the consolidated bankruptcy proceedings for Tectonic Network and Tectonic Solutions, Inc. ("Tectonic Solutions"), which are annexed, respectively, as Exhibits 1 and 2. The following is a summary of the facts for the convenience of the Court.

Plaintiff, the Ad Hoc Committee of Equity Holders of Tectonic Network, Inc., is an unincorporated association consisting of public shareholders which owned approximately fifty percent (50%) of all non-insider owned stock of Tectonic Network. By stipulation and order dated April 12, 2006 and entered April 13, 2006 (Exh. 1 to Ross Decl.) in the matter entitled *Tectonic Network, Inc. and Tectonic Solutions, Inc.*, Debtors (Case Nos. 05-78966 and 05-78955) (the "Bankruptcy"), Tectonic Network conveyed and abandoned to the Ad Hoc Committee Tectonic Network's claims against its officers and directors, and the United States Bankruptcy Court for the Northern District of Georgia authorized Plaintiff to bring those claims against any and all directors and officers of Tectonic Network and Tectonic Solutions in a forum outside of the Bankruptcy. (Complaint ¶ 1; Exh. 1 to Ross Decl.).

Each of the members of Plaintiff owned common stock of Tectonic Network until the Bankruptcy Court's approval of the Amended Joint Plan of Reorganization of Tectonic Network on or about July 11, 2006 and the cancellation of all issued and outstanding stock of Tectonic Network under the plan. (Complaint ¶ 2; Exh. 2 to Ross Decl.).

Defendants Wolford, Krug, Charles McRoberts, Charles Pecchio, Laura Rogers, and Theo VanderBoom are all citizens of the State of Georgia. (Complaint ¶¶ 3, 5, 7, 9-11). They do not deny their Georgia citizenship as alleged in the Complaint.

Defendant John McRoberts is a citizen of Alabama. (Complaint ¶ 8). On this motion, he claims that he has resided in Florida since June 2004 but does not deny the allegation that he is a citizen of Alabama. In fact, an important on-line directory shows that he has the same address today in Birmingham, Alabama as is alleged in the Complaint. (Complaint ¶ 8; Exh. 7 to Ross Decl.). That same Alabama address is the address for him in the Statement of Financial Affairs filed by Tectonic Network shortly after it filed its petition in bankruptcy in October 2005. (Exh. 8 to Ross Decl.). Aside from his role as a director of Tectonic Network, which has been headquartered in Georgia during all relevant times, all of the businesses in which John McRoberts has engaged during the period from August 2000 to the present have been headquartered in Birmingham, Alabama. (Ross Decl. at ¶¶ 6-9).

None of the Plaintiff's members are citizens of Georgia or Alabama. (Complaint ¶ 17; Exh. E to Poff Aff. filed by Defendants).

Since October 2001 defendant Wolford has been a member of the Board of Directors of Tectonic Network. He has been, since February 2002, its President and, since July 2002, its Chief Executive Officer. Since the incorporation of Tectonic Solutions in the second half of 2003, Wolford has been the Chief Executive Officer and a member of the Board of Directors of Tectonic Solutions. (Complaint ¶ 4).

Defendant Krug was, from January 2003 through November 21, 2005, the Chief Financial Officer and Treasurer of Tectonic Network and, from the incorporation of Tectonics Solutions through November 21, 2005, its Chief Financial Officer and Treasurer. (Complaint

6

¶6).

Defendant Charles McRoberts has been, since August 2000, a member of the Board of Directors of Tectonic Network. (Complaint ¶7)

Defendants John McRoberts and Charles Pecchio, Jr. were, from August 2000 to July 2006, members of Tectonic Network's Board of Directors. Charles Pecchio Jr. was the CEO and President of Tectonic Network before Wolford, and, until February 28, 2005, an employee of Tectonic Network (Complaint ¶¶8-9).

Defendant Laura Rogers, from 2002 to November 2005, and Defendant Theo VanderBoom, from 2002 to July 2006, were also members of Tectonic Network's Board of Directors. (Complaint ¶¶ 10-11).

Since 1990, Tectonic Network has been a Delaware corporation. At all relevant times, its principal place of business has been in Georgia. (Complaint ¶ 12).

Under the leadership and upon the urging and inducement of Wolford, Tectonic Network acquired three cash starved, struggling businesses involved in providing information on, and advertising for, construction products to the construction industry in late 2003 and early 2004 as follows:

1.  On November 18, 2003, Tectonic Network acquired BBN Acquisition, Inc. ("BBN") by consummating a merger whereby BBN merged with and into Tectonic Solutions under an agreement dated October 29, 2003. Defendant Wolford was then the principal and controlling shareholder of BBN, and his daughter was a member of BBN's Board of Directors. Tectonic Network conveyed 750,000 shares of its common stock to BBN's shareholders in consideration for all of its stock. Wolford received 311,671 shares of Tectonic

Network stock in return for his 41.6% of the shares of BBN's common stock. Tectonic Network's stock was then valued at $1.82 per share.

2.  On November 26, 2003, Tectonic Network purchased the operating assets of Construction Yellow Pages LLC ("CYP") pursuant to an agreement dated October 29, 2003. Tectonic Network conveyed 750,000 shares of its common stock to the members of CYP and assumed certain of its liabilities in consideration. Owning approximately 58% of the membership interest in CYP, Wolford received 435,000 shares of Tectonic Network's common stock, then valued at $1.82 per share.

3.  On January 2, 2004, Tectonic Network purchased substantially all of the operating assets of SpecSource.com, Inc. ("SpecSource"), pursuant to an agreement dated October 29, 2003 ("SpecSource Agreement"), in return for a non-interest bearing note in the amount of $533,000 payable to SpecSource and 1,450,000 shares of Tectonic Network's common stock, then valued at $1.82 per share. Wolford owned approximately 67.6% of the outstanding shares of the SpecSource's common stock. His daughter was an employee of SpecSource. As a result of Tectonic Network's acquisition of SpecSource's operating assets, Wolford was entitled to receive approximately 980,000 shares of Tectonic Network 's common stock and 67.6% of the payments on the note.

(Complaint ¶¶ 21-22).

Before each acquisition, Wolford and his right hand man, Krug, fraudulently induced the Board to approve the transaction by falsely representing that the business was not only viable but would be hugely profitable under Tectonic Network's ownership, without any reasonable basis

for so stating. (Complaint ¶¶ 24-26, 28). Following the acquisitions, Wolford and Krug concealed their materially false, pre-acquisition representations by grossly overstating to the Board the advertising revenues received from these businesses during the first calendar quarter of 2004. (Complaint ¶ 55).

Additionally, prior to the acquisition of SpecSource, Wolford advised Tectonic Network's Board that, on average, viewers were conducting over 7000 searches per day on SpecSource's website, and that it was accurate and complete. SpecSource's business consisted of maintaining a website for use by buyers of construction products, listing the names and addresses of the suppliers (and their distributors) of a wide variety of construction products. SpecSource earned its revenue by selling advertising space on the website to suppliers.

Wolford's representations about SpecSource's website were false, and he knew them to be false when he made them. (Complaint ¶¶ 36-37, 42-47).

Wolford made his misrepresentations to the Board to benefit himself, first, by relieving himself of the need to fund these struggling, cash starved businesses, second, by receiving Tectonic Network stock in consideration for his interest in them, which would allow him to profit should they somehow succeed as owned by Tectonic Network, and, third, by receiving his two-thirds of any and all payments on the $533,000 note given to SpecSource. Wolford controlled Krug as his superior, and as the person who secured not only salary increases and stock options but also hefty bonuses for Krug in return for his loyalty and assistance in Wolford's plots. (Complaint ¶¶ 34-35).

Wolford also defrauded the Board into funding a start-up, "Virtual Model" business of Tectonic Solutions by which two dimensional construction plans were to be converted into three-dimensional models theoretically making construction quicker. Wolford falsely represented to

9

the Board in 2004 that this start-up business had procured multiple contracts which were already

completed, and that the business would generate revenues of $30,000 to $40,000 per project with

a thirty percent profit margin. None of theserepresentations were true or made on reasonable

bases. Wolford gave the development of this new business to an outside contractor which

employed his nephew to advance the nephew's career. Wolford barred anyone from auditing the

contractors' bills or work. (Complaint ¶¶ 63-76).

   Wolford and Krug also successfully induced the Board to approve the sale of Tectonic

Network's only profitable business, the GO Software business of providing software and

services for credit card and check processing, ostensibly to use the sale proceeds for the new

businesses. In anticipation of the sale, which occurred in late February 2005, Wolford and Krug

induced the Board to approve Tectonic Network's procuring millions of dollars of loans to fund

its newly acquired, cash-poor businesses and the nascent Virtual Model business. (Complaint

¶¶ 83-90).

   Wolford also pushed for the sale of GO Software since he knew that it would trigger

payment of the $533,000 note Tectonic Network gave to SpecSource as a change in control of

Tectonic Network. In fact, upon the sale, Tectonic Network paid most of the note to SpecSource,

and Wolford pocketed two thirds of the payment at a time when Tectonic Network was desperate

for funds. (Complaint ¶¶ 92-93, 100-101). Defendant Charles Pecchio, Jr. ultimately supported

the sale because it would also be deemed a change of control under his employment agreement

with Tectonic Network, which would trigger a total of $360,000 in monthly installment

payments to him. Those payments began shortly after the sale. (Complaint ¶¶ 91, 101).

Additionally, because of the sale, Tectonic Network paid $360,000 to John White, another ally of

Wolford. White was the minority shareholder in SpecSource and signed an unnecessary non-

10

compete agreement in connection with the sale of SpecSource's business in return for a Tectonic Network note to him for $360,00. The sale of GO Software was deemed a change in control under that note, which triggered payment of the note to White. (Complaint ¶¶ 23, 101)

The other Defendants who sat on Tectonic Network's Board of Directors did not seriously examine these acquisitions and investments that Wolford urged but rather acted complicity with Wolford as his tools (Complaint ¶¶ 123-24), in their own self interest (Complaint ¶¶ 31-33, 91-92), and with conscious disregard for their duties and the welfare of Tectonic Network. (Complaint ¶¶ 125-29).

While Wolford, Pecchio, and White profited from the sale of GO Software, Tectonic Network sank quickly, filing for bankruptcy protection less than six months after these payments. (Complaint ¶¶ 15, 104). The payments as well as the lost investments of enormous funds in the three cash starved businesses sold by Wolford to Tectonic Network and in the worthless Virtual Model business, and the millions of dollars of loan liabilities incurred by Tectonic Network under Wolford's guidance in anticipation of the sale of GO Software, were all induced by the fraud of Wolford and Krug, and brought about by the self interested dealings and lack of independence of the Defendants. These losses, in turn, brought Tectonic Network to its knees. (e.g., Complaint ¶¶ 19, 89, 95-96, 127)

Under the amended plan of reorganization in the Bankruptcy, confirmed on July 11, 2006, all stock in Tectonic Network was canceled, and the new stock was issued only to defendants Wolford and Charles McRoberts. (Complaint ¶¶ 12, 15-16).

Pursuant to the stipulation and order incorporated in the amended plan, and the order's assignment of Tectonic Network's claims against its officers and directors to Plaintiff, Plaintiff commenced this action on October 27, 2006 for Wolford and Krug's frauds, their breaches of

fiduciary duties as a director (Wolford) and officers (Wolford and Krug), and the other

Defendants' breaches of fiduciary duty as directors of Tectonic Network. (Exh. 1 to Ross Decl.).

## ARGUMENT

### I.    THIS COURT HAS SUBJECT MATTER JURISDICTION

#### A.    There is Complete Diversity of Citizenship

Defendants claim that diversity of citizenship jurisdiction is defeated by defendant John

W. McRoberts' purported residence in Florida and that certain members of the plaintiff

unincorporated association also reside in Florida. As shown in the Ross declaration, when this

action was commenced, publicly available information showed that Mr. McRoberts was a citizen

of Alabama, and that there was complete diversity of citizenship as none of the members of

Plaintiff and none of Defendants were citizens of the same state.  (See list of Plaintiff's members

annexed as Exh. E to Poff Aff.)

Assuming, *arguendo*, Mr. McRoberts is and has been since June 2004 a resident of

Florida, that is not the end of the inquiry. Citizenship for diversity analysis purposes is

"synonymous with domicile." *McCann v. George W. Newman Irrevocable Trust*, 458 F.3d 281,

286 (3d Cir. 2006). An individual can only have a single domicile. *See Williamson v. Osenton*,

232 U.S. 619, 625 (1914).

An individual's domicile "is his true, fixed and permanent home and place of habitation.

It is the place to which, when he is absent, he has the intention of returning." *McCann*, 458 F.3d

at 286 (*quoting Vlandis v. Kline*, 412 U.S. 441, 454 (1973)). "Where one lives is prima facie

evidence of domicile, but mere residency in a state is insufficient for purposes of diversity."

*Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3rd Cir. 1972). There is a presumption favoring an

established domicile over a new one. *McCann*, 458 F.3d at 286-87.

The Third Circuit in *McCann* recently discussed the factors used in determining domicile

and a purported change of domicile:

> In determining an individual's domicile, a court considers several factors, including declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business. Other factors to be considered may include location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration.
>
> An individual can change domicile instantly. To do so, two things are required: [h]e must take up residence at the new domicile, and he must intend to remain there. But a domicile once acquired is presumed to continue until it is shown to have been changed. This principle gives rise to a presumption favoring an established domicile over a new one.

*Id.* at 286 (internal citations and marks omitted).

The presumption in favor of an established domicile places the initial burden on the defendant opposing federal jurisdiction:

> When the party claiming a new domicile is the opponent of federal jurisdiction, the effect of the presumption in favor of an established domicile is straightforward. The party claiming a new domicile bears the initial burden of producing sufficient evidence to rebut the presumption in favor of the established domicile. If the party does so, the presumption disappears, the case goes forward, and the party asserting jurisdiction bears the burden of proving diversity of citizenship.

*Id.* at 288. "[T]he appropriate standard of proof is preponderance of the evidence." *Id.* at 289.

On a motion to dismiss for lack of personal jurisdiction, the court is not constrained to the pleadings but rather may consider "evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction." *Epic Systems Corp. v. Acacia Research Corp.*, No. CIVA 06-255, 2006 WL 3355185, at *2 (D.Del. Nov. 16, 2006); *Adkins v. Rumsfeld*, 450 F.Supp.2d 440, 445 (D.Del. 2006). "If a defendant contests any one of the jurisdictional allegations as pled by the plaintiff, the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence. If there is a dispute of a material fact, the court

must conduct a plenary hearing on the contested issues prior to determining jurisdiction." *McCann*, 458 F.3d at 290. "A key consideration in determining whether a hearing is required is whether either party requested one." *Id.* at 290.

By merely asserting that John McRoberts has been a resident of Florida since June 2004, Defendants have not met their jurisdictional burden under the above standards.

Even now, publicly available information shows that John McRoberts maintains a residence in Birmingham, Alabama. (Exh. 7 to Ross Decl.). The Statement of Financial Affairs filed by Tectonic Network shortly after its October 2005 bankruptcy petition shows the same Birmingham, Alabama address for Mr. McRoberts as does the Complaint. (Exh. 8 to Ross Decl.). Furthermore, each business in which John McRoberts has engaged since he first became a director of Tectonic Network in 2000, aside from Tectonic Network which has been located in Georgia, has been located in Birmingham Alabama. (Ross Decl. at ¶¶ 6-9)

At the very least, Plaintiff is entitled to jurisdictional discovery from defendant John McRoberts, including documents and a deposition, to determine whether his domicile is Florida or Alabama, and a hearing on Mr. McRoberts' domicile, including the right to subpoena documents from him for the hearing.

**B.** **This Court Has Subject Matter Jurisdiction Over This Action Under 28 U.S.C. § 1334**

This Court has subject matter jurisdiction over this action, whatever Mr. McRoberts' domicile may be, pursuant to 28 U.S.C. § 1334 as this case, although a non-core proceeding, is related to a case under title 11 of the United States Code. The decision in *IT Litigation Trust v. D'Aniello*, No. 04-1268, 2005 WL 3050611 (D.Del. Nov. 15, 2005), is instructive here. There, after confirmation of the bankruptcy plan, this Court held that the action prosecuted by a litigation trust for its beneficiaries against the bankrupt's corporate officers and directors as well

14

as others for breaches of fiduciary duties to the bankrupt and other claims gave this Court subject matter jurisdiction under § 1334 because (i) the claim "arose before the filing of the bankruptcy petition," (ii) "the losses claimed by Plaintiff on behalf of the unsecured creditors are logically connected do the [debtor's] insolvency and subsequent bankruptcy," and (iii) the cause of action was assigned to the Plaintiff Trust in the bankruptcy plan. In being assigned by the plan, the prosecution of the claim in the action "affects the implementation, consummation, and execution of the bankruptcy plan, and there is a close nexus to the bankruptcy sufficient to satisfy the standard" for § 1334 jurisdiction set forth in *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166-67 (3d Cir. 2004). *IT Litigation Trust v. D'Aniello*, 2005 WL 3050611 at *6.

Here, as admitted by Defendants, the bankrupt's claims against its officers and directors for fraud and breach of fiduciary duty arose before the filing its bankruptcy petition in October 2005; and the losses for which these claims are prosecuted "are logically connected to the [debtor's] insolvency and subsequent bankruptcy". Further, Tectonic Network assigned, by stipulation and order, the claims to the Plaintiff, and that stipulation and order was incorporated by reference in the approved amended plan of reorganization. Section 1.1(b) of the Plan defines the "Ad Hoc Committee Stipulation" as "that certain Stipulation and Order by and between the Debtors and the Ad Hoc Committee of Equity Holders entered on the docket in the Bankruptcy case on April 13, 2006." (Exh. 2 to Ross Decl.). Section 8.4 of the Plan provides that "subject to the terms of the Ad Hoc Committee Stipulation which shall be incorporated herein...." (*Id.*) Thus, the operative facts here are the same as those found in establishing subject matter jurisdiction in *IT Litigation Trust*, and subject matter jurisdiction under § 1334 exists for this action.

Because the assignment of the claims is incorporated in the amended plan, prosecution of

the assigned claims, as in *IT Litigation Trust*, "affects the implementation, consummation and

execution of the bankruptcy plan," establishing the close nexus to the bankruptcy required to

establish "related to" jurisdiction under § 1334.

**C.    Alternatively, if Subject Matter Jurisdiction Here Requires
        Mr. McRoberts' Deletion as a Defendant, He Should be Dropped as a Defendant**

Should the Court find John McRoberts to be a domiciliary of Florida and find no

jurisdiction under § 1334, Plaintiff may move for a non-diverse defendant to be dismissed, and

the motion should be granted if the defendant is not indispensable under Fed. R .Civ. P. 19.

*Field v. Volkswagenwerk AG*, 626 F.2d 293, 296 (3rd Cir. 1980) ("The authority of a district

court to drop non-diverse parties whose presence is not essential to the suit in order to preserve

its diversity jurisdiction is well-established."); *Allstate Ins. Co. v. Dinkins*, CIV.A. No. 87-6164,

1988 WL 26476, at *2 (E.D.Pa. Mar. 11, 1988) (dismissing non-diverse defendant and

maintaining action against remaining defendants); *Timco Engineering, Inc. v. Rex & Co., Inc.*,

603 F.Supp. 925, 930 (E.D.Pa. 1985) (dismissing non-diverse defendant).

**II.    DEFENDANTS' MOTION TO DISMISS FOR INSUFFICIENCY OF
        SERVICE OF PROCESS SHOULD BE DENIED**

**A.    Service Was Properly Made**

Service was made properly here under 10 Del. C. § 3114 (c). That subsection provides

that "[s]ervice of process shall be effected by serving the registered agent ... with 1 copy of such

process in the manner provided by law for service of writs of summons." There is no question

that this was accomplished. Indeed, counsel for Plaintiff confirmed in advance that the registered

agent served was the current registered agent for Tectonic Network. (See Affidavit of Chadd P.

Fitzgerald, attached hereto as Exhibit A.)  Defendants only complaint is that a Prothonotary or

the Register in Chancery did not mail, under the second sentence of § 3114 (c), copies of the

summons and complaint to the Defendants. But there is no Prothonotary or Register of Chancery

in the federal court.

**B.    The Motion To Dismiss For Insufficiency Of Service Of Process Is Premature**

Defendants' motion to dismiss the Complaint for insufficiency of process is premature. The Federal Rules of Civil Procedure provide that service of the summons and complaint must be made upon a defendant within 120 days after the filing of the complaint. Fed. R. Civ. P. 4(m). The Supreme Court has held that Rule 4 "convey(s) a clear message: Complaints are not to be dismissed if served within 120 days, or within such additional time as the court may allow." *Henderson v. U.S.*, 517 U.S. 654, 663 (1996). "The 120-day provision operates not as an outer limit subject to reduction, but as an irreducible allowance." *Id.* at 661. *See also Borah, M.D., P.C. v. Monumental Life Ins. Co.*, No. Civ.A. 04-3617, 2005 WL 83261, at *3 (E.D. Pa. Jan. 14, 2005). A motion to dismiss contesting service of process made before the 120 day period expires cannot be granted, and tolls the time period for service of process. *See Lord v. Living Bridges*, No. CIV.A. 97-6355, 1998 WL 792179, at *1 (E.D. Pa. Nov. 10, 1998) ("A motion to quash service of process or to dismiss a complaint for failure properly to effect service tolls the 120-day period."); *West v. Terry Bicycles, Inc.*, 230 F.3d 1382, 2000 WL 152805, at *3 (Fed. Cir. Feb. 10, 2000) ("Rule 4(m) permits dismissal of a complaint for failure of service only if service is not made within 120 days after the filing of complaint. [Defendant's] filing of a pleading contesting service tolled the time period for effecting service of process."); *Bruley v. Lincoln Property Co., N.C., Inc.*, 140 F.R.D. 452, 455 (D.Col. 1991) (motion to dismiss for ineffective service denied, because when motion was filed "plaintiff still had 35 days to perfect service."). As the complaint in this action was filed on October 27, 2006, Defendants' motion for dismissal for insufficiency of process should be denied as premature.[1]

---

[1] Plaintiff intends to have the summons and complaint served on the Defendants through another method within the next few weeks to remove any service issue.

17

### III.    AS THIS IS NOT A SHAREHOLDERS' DERIVATIVE ACTION, IT CANNOT BE DISMISSED FOR FAILURE TO PLEAD JURISDICTIONAL REQUIREMENTS FOR A DERIVATIVE ACTION

The vast majority of Defendants' opening brief is consumed with arguing that this is in actuality a shareholders' derivate action, but that Plaintiff has failed to meet the procedural and pleading requirements for such an action.

As an initial matter, an unincorporated association may bring an action in its own name, 10 Del. C. § 3904, and, in the stipulation and order, both Tectonic Network and the Bankruptcy Court specifically authorized Plaintiff to bring this action in its own name for the benefit of itself and its members. (Exh. 1 at ¶¶ 5, 7, 8 to Ross Decl.). It is also clear that, contrary to Defendants' suggestion otherwise,  the claims here were not released. In fact, the amended plan of reorganization specifically excepts from the release given by Tectonic Network to its officers and directors the claims assigned to Plaintiff ("subject to the terms of the Ad Hoc Committee Stipulation which shall be incorporated herein and in the event of conflict with the Plan control" [Exh. 2, at §8.4, to Ross Decl.]). Furthermore, the stipulation and order states that "[n]either the Plan nor any order of this or any other court…may approve any release of the Claims, which Claims are hereby preserved for the benefit of the Committee." (Exh. 1 at ¶ 9 to Ross Decl.).

Defendants know full well that Plaintiff acquired Tectonic Network's claims against its officers and directors by stipulation and order of the Bankruptcy Court in the consolidated bankruptcy proceedings for Tectonic Network and its subsidiary, Tectonic Solutions. Plaintiff stands in the same shoes as the plaintiff trust in *IT Litigation Trust* which received an assignment of the debtor's claims against its officers and directors.

The stipulation and order entered April 13, 2006 in the Bankruptcy (copy annexed as Exh. 1 to Ross Decl. and as Exh. C to Affidavit for Adam W. Poff, Esquire) defines "Claims" to include each of the claims asserted in this action as follows: "any and all claims against the

Debtors' directories and officers, including but not limited to for fraud, breach of fiduciary duty and breach of the duty of care and loyalty which were assertable prior to the filing of these chapter 11 cases, and claims for fraudulent conveyances." (see Stipulation and Order at p. 2). The stipulation and order explicitly provides that "the automatic stay... shall be terminated to permit the members of the Committee as shareholders of Network to pursue the Claims . . . against the Debtors' directors and officers in a forum outside of the within chapter 11 proceedings" (¶ 3), "recoveries from the Claims shall inure solely to the benefit of the Committee or its members subject to any applicable law requiring the Committee to share any recoveries with similarly situated members of the class" (¶ 5), the Committee may "require the Estate or the Debtors to execute any further documents or the Court to enter any further orders to formally assign, deliver or abandon the Claims to the Committee and/or its members, [and] the Estate and the Debtors shall execute such documents, and fully cooperate with the Committee to effectuate such relief" (¶ 7), and the "Claims are hereby preserved for the benefit of the Committee." (¶ 9).

By this language, the stipulation and order assigned or otherwise transferred Tectonic Network's fraud and breach of fiduciary duty claims to Plaintiff. By definition, the claims in this action against Tectonic Network's senior officers and directors could not be derivative claims because they were not only conveyed by court order to Plaintiff but also because the order provides that the beneficiaries of any recovery were not the corporate assignor, Tectonic Network, but rather Plaintiff (i.e., "recoveries from the Claims shall inure solely to the benefit of the Committee or its members subject to any applicable law requiring the Committee to share any recoveries with similarly situated members of the class" (¶ 5)).

"As a general rule, 'terms of art are not required for a valid assignment.'" *Lerman v.*

*Joyce Int'l, Inc.*, 10 F.3d 106, 112 (3rd Cir. 1993) (*quoting United States ex rel. Kelly v. The Boeing Co.*, 9 F.2d 743 (9th Cir. 1993)).

Under Delaware law, "a chose in action, or the right to bring an action, is transferable if it is the type of claim that would survive the hypothetical death of the assignor and pass to his or her personal representative." *Street Search Partners, L.P. v. Ricon Int'l L.L.C.*, C.A. No. 04C-09-191-PLA, 2006 WL 1313859, at *3 (Del. Super. May 12, 2006); *see also In re Emerging Communications, Inc. Shareholders Litig.*, No. Civ.A. 16415, 2004 WL 1305745, at *29 (Del. Ch. May 3, 2004) ("it is established Delaware law that choses in action that survive the death of the victim are validly assignable."). Under 10 Del. C. § 3701, "all causes of action, except actions for defamation, malicious prosecution, or upon penal statutes shall survive . . ." *Street Search Partners,* 2006 WL 1313859, at *3 (*quoting* 10 Del. C. § 3701). Thus, claims for breach of fiduciary duty and fraud are transferable. *Id.* ("claims for breach of fiduciary duty and resultant unjust enrichment have been held to survive."); *Emerging Communications*, 2004 WL 1305745, at *29 (claims for breach of fiduciary duty and fraud are assignable).

## IV.   PLAINTIFF'S COMPLAINT MORE THAN ADEQUATELY PLEADS DEFENDANTS' BREACHES OF FIDUCIARY DUTY

### A.   Pleading Standards

On a Rule 12(b)(6), Fed.R.Civ.P., motion:

the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F. 3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all inferences in the plaintiff's favor no relief could be granted under any set of facts consistent with the allegations in the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L. Ed. 2d 80 (1857). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F. 2d 1406, 1409 (3d Cir. 1991)."

*Shamrock Holdings, Inc. v. Arenson*, __ F.Supp.2d __, 2006 WL 2802913 at *4 (D.Del. Sept. 29, 2006).

Defendants have failed to meet their burden of persuading the Court that Plaintiff has failed to plead claims for breaches of fiduciary duties against Defendants.

**B.      Defendants Apply The Wrong Standard For Pleading
Breach Of Fiduciary Duty Claims In A Federal Court**

Defendants rely on decisions of the Delaware state courts for the standards for pleading claims for officers' and directors' breaches of fiduciary duties under substantive Delaware state law such as *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984). Defendants ignore the teachings of the Third Circuit in *In re Tower Air, Inc.*, 416 F.3d 229 (3d Cir. 2005), and, in fact, nowhere cite that seminal case. There, the Court of Appeals held that the notice pleading standards of Rule 8, Fed. R. Civ. P., rather than the more specific factual pleading required by Delaware Chancery Rule 8, applied to pleading officers' and directors' breaches of fiduciary duty claims under substantive Delaware state law in the federal courts. *Id.* at 236-38. The Third Circuit also held that the only reason why plaintiff was required there to "plead around the business judgment rule" was that "an unanswered affirmative defense appears on [the complaint's] face", specifically, plaintiff's "Amended Complaint declares that the business judgment rule does not vitiate any of his claims." *Id.* at 238. The Court stated that generally, "we will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6)." *Id.*

Here, Plaintiff's Complaint makes no mention of the business judgment rule, and, accordingly, it need not "plead around it". Recently, Chief Judge Robinson followed this reasoning from *Tower Air* in *Shamrock Holdings*. There, the movant alleged that the claims implicitly raised the business judgment rule. Judge Robinson rejected the argument that the claimant was thereby required to plead around the business judgment rule in pleading its claims,

21

and denied the motion to dismiss them. *Shamrock Holdings*, 2006 WL 2802913 at *8. Thus, all of the discussion in Defendants' brief about failing to allege facts that overcome the presumption afforded by the business judgment rule is inapplicable.

The types of breaches of fiduciary duty alleged against defendants Wolford, Krug, Charles McRoberts, John McRoberts, Charles Pecchio, Jr., Theo VanderBoom and Laura Rogers in the Complaint are breaches of the duties of (1) loyalty, (2) good faith, and (3) due care. The court in *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993) referred to these three duties as the "the triads of [directors'] fiduciary duty...."

Thus, Defendants' argument that "[a]llegations of breach of fiduciary duty must be analyzed to determine whether plaintiff rebuts the business judgment rule presumption", which is the basis of their motion to dismiss the claims of breach of fiduciary duties against the Defendants (the second claim as against defendant Wolford, the third claim as against defendant Krug, and fourth claim against the other Defendants) must be rejected.

1.    Duty of Loyalty

The duty of loyalty requires that "the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Cede & Co.*, 634 A.2d at 361.

A breach of the duty of loyalty is pleaded if the alleged facts, accepted as true, show that the board was either interested in the transaction or lacked the independence to objectively consider whether the transaction was in the best interest of the corporation and its shareholders. *Orman v. Cullman*, 794 A.2d 5, 22 (Del. Ch. 2002). The duty of loyalty requires that "directors can neither appear on both sides of a transaction nor expect to derive any personal financial

22

benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally." *Id.* at 23 (*quoting Aronson*, 473 A.2d at 812).

A director's lack of independence "can be shown when a plaintiff pleads facts that establish 'that the directors are beholden to [the controlling person] or so under their influence that their discretion would be sterilized.'" *Id.* at 24 (*quoting Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993). However, because of the decision in *Tower Air*, it is clear that in alleging a claim of breach of duty of loyalty in federal court, as with any claim of breach of fiduciary duty under substantive Delaware law, the Federal Rules of Civil Procedure govern and "do not require a plaintiff to plead detailed facts to make out a claim...." *IT Litigation Trust*, 2005 WL 3050611 at *8. Rather, plaintiff need only allege those supporting facts "necessary to provide the defendant fair notice of the plaintiff's claim and the 'grounds upon which it rests.'" *In re Tower Air*, 416 F.3d at 237 (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The Complaint alleges a paradigmatic case of breach of the duty of loyalty and more than sufficient facts to give notice of Plaintiff's claims and the grounds for them. The Complaint alleges that Defendant Wolford was an interested officer and director, standing to gain personally and at the expense of the corporation and its shareholders from the transactions that he urged on his fellow board members. While the President, Chief Executive Officer, and a member of the Board of Directors of Tectonic Network, Wolford successfully urged and induced Tectonic Network's purchase of three struggling, cash-starved businesses controlled by Wolford as majority shareholder. (Complaint ¶¶ 21-35). In a classic case of self-dealing, Wolford appeared on both sides of the transactions and stood to receive a personal financial benefit not available to Tectonic's other shareholders (i.e., relief from his funding the cash starved businesses any further, giving him hundreds of thousands of additional shares of Tectonic Network's stock,

23

which would ensure him a great return on these three businesses should they be profitable as owned by Tectonic Network, and receipt of money through the note for $533,000 given to SpecSource as partial payment for its assets). The Complaint alleges that Krug, who assisted Wolford in these plots, was controlled by Wolford and thereby lacked independence. Krug, the Chief Financial Officer of Tectonic, was beholden to and controlled by Wolford, as Wolford was Krug's superior and effectively determined his compensation, including hefty bonuses bestowed on him. (Complaint ¶¶ 29-30).

The Complaint also alleges that Defendants John McRoberts, Charles McRoberts, and Charles Pecchio, Jr. were interested as each stood to benefit in a manner other shareholders did not, because they received hundreds of thousands of shares of Tectonic Network stock which they otherwise could not reasonably expect to receive. (Complaint ¶¶ 31-33). Furthermore, the Complaint alleges the factual bases by Wolford exercised control over Defendants Charles McRoberts, Theo VanderBoom and Laura Rogers. (Complaint ¶¶ 123-24).

Defendants argue that Plaintiff has only made conclusory allegations alleging breaches of the duty of loyalty, and therefore fails to state a claim. This is factually and legally incorrect. The Complaint details how the Defendants were self-interested and/or lacked independence or were controlled by Wolford, who was self-interested in the transactions. (*See* Complaint ¶¶ 22-23, 29-35, 91-93, 119, 123-125). Again, as a legal matter, "the Third Circuit has emphasized the view that the Federal Rules of Civil Procedure do not require a plaintiff to plead detailed facts to make out a claim for breach of fiduciary duty under Delaware law." *IT Litigation Trust*, 2005 WL 3050611, at *8 (D.Del. Nov. 15, 2005) (*citing In re Tower Air, Inc.*, 416 F.3d at 236-39). An action may "not be thrown out of court on a Rule 12(b)(6) motion for lack of detailed facts." *Tower Air*, 416 F.3d at 237.

2.     Duty of Good Faith

The duty of good faith requires "not simply the duties of care and loyalty, . . . , but all actions required by a true faithfulness and devotion to the interests of the corporation and its shareholders." *In re Walt Disney Co. Shareholder Litig.*, 906 A.2d 27, 67 (Del. 2006). Examples of bad faith include:

> [W]here the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating conscious disregard for his duties.

*Stone v. Ritter*, No. 93, 2006, 2006 WL 3169168, at *5 (Del. Nov. 6, 2006) (*quoting Walt Disney*, 906 A.2d at 67). As made clear in *Walt Disney*, 906 A.2d at 67, these examples do not exhaust the actions or inactions constituting bad faith.

Defendants only address the final of these examples, arguing that Plaintiff has not alleged facts sufficient to show director oversight liability. *See* Defendants' Brief at 23-24. However, the Complaint alleges that Defendants violated the duty of good faith by intentionally acting with a purpose other than advancing the best interests of the corporation, namely that they acted for their own personal financial interest and/or with conscious disregard for Wolford's self-interested acts.

The Complaint also alleges that Defendants John McRoberts, Charles McRoberts, Charles Peechio Jr., Laura Rogers and Theo VanderBoom breached their duty of good faith to exercise oversight. "Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith." *Stone*, 2006 WL 3169168, at *6. The directors failed to perform their duty to examine independently the transactions, in the face of transactions that clearly constituted self-dealing by Wolford, in a conscious disregard of their

fiduciary duty to Tectonic Network.

The Complaint specifically alleges numerous and damaging instances of defendants John and Charles McRoberts, Pecchio, Rogers, and VanderBoom's conscious disregard for their duties and the welfare of Tectonic Network. (Complaint ¶¶ 125-129). In doing so, the Complaint not only alleges bad faith in the form of conscious disregard but also, contrary to Defendants' assertion otherwise, irrational, bad faith decisions. For example, it was readily apparent that the decisions to buy the three Wolford controlled business, and invest substantially in them and the Virtual Model business were decisions that no reasonable Board member could support in good faith, and if not apparent to them, those Defendants paid no attention to the poor financial condition and prospects of those businesses. (Complaint ¶127 (a)). The Complaint also alleges that they failed to secure any independent evaluation of these businesses (Complaint ¶126). The Complaint additionally alleges that it was readily apparent that a decision to sell GO Software to support these other businesses was suicidal, and if it was not apparent to these Board members, they paid no attention again to the condition and prospects of the businesses the sale proceeds were supposed to support. (Complaint ¶127 (b)).

3.    Duty of Care

Defendants do not argue that Plaintiff has not alleged a breach of the duty of care. Rather, Defendants argue the claim should be dismissed because Tectonic Network adopted a charter provision pursuant to Delaware General Corporation Law § 102(b)(7) protecting individual directors from money damages liability for the breach of the duty of care. (Defendants' Br. at 24). "Such a provision can exculpate directors from monetary liability for a breach of the duty of care, but not for conduct that is not in good faith or a breach of the duty of loyalty." *Stone*, 2006 WL 3169168, at *4; *see also Walt Disney*, 906 A.2d at 65 ("a corporation can exculpate its

26

directors from monetary liability for a breach of the duty of care, but not for conduct that is not in good faith.").

Initially, with all due respect to the Court in *IT Litigation Trust*, 2005 WL 3050611 at *10-*11, the Third Circuit in *Tower Air* declined to consider a corporate charter's exculpatory provision on reviewing a motion to dismiss not only because it was raised for the first time on appeal but also because it was in the nature of an affirmative defense. *In re Tower Air*, 416 F. 3d at 242 ("the protection of an exculpatory charter provision appears to be in the nature of an affirmative defense ... affirmative defenses generally will not form the basis for dismissal under rule 12(b)(6)[citation omitted]").

In any event,"[w]hen a duty of care breach is not the *exclusive* claim, a court may not dismiss based upon an exculpatory provision." *Khanna v. McMinn*, No. Civ.A 20545, 2006 WL 1388744, at *25 n. 201 (Del. Ch. May 9, 2006) (*quoting Alidina v. Internet.com Corp.*, 2002 WL 31584292, at *8 (Del. Ch. Nov. 6, 2002). Because the duties of loyalty and good faith are raised in the Complaint here, the breach of duty of care claim cannot be dismissed based on the charter provision. Indeed, Delaware General Corporation Law § 102(b)(7) explicitly excludes from the protections afforded by such a charter provision "(i) any breach of the director's duty of loyalty ...; (ii) for acts or omissions not in good faith...; or (iv) for any transaction from which the director derived an improper personal benefit."

## V. PLAINTIFF HAS PLEADED FRAUD WITH THE REQUISITE PARTICULARITY REQUIRED BY RULE 8(b)

### A.  The Rule 9(b) Standard

Rule 9(b), Fed R. Civ. P., provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." However, "focusing exclusively on the particularity requirement is too narrow an approach and fails to take

27

account of the general simplicity and flexibility contemplated by the rules." *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 319 (3rd Cir. 1997) (*quoting Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 645 (3rd Cir. 1989). "The requirement for particularity in pleading fraud does not demand an exhaustive cataloging of facts, but only specificity sufficient to provide assurance that plaintiffs have investigated the alleged fraud and reasonably believe that a wrong has occurred." *In re Veritas Software Corp. Securities Litig.*, No. 04-831-SLR, 2006 WL 1431209, at *8 (D.Del. May 23, 2006).

"The Third Circuit has cautioned that courts should apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." *Id.* (*quoting In re Cendant Corp. Litig.*, 60 F.Supp.2d 354, 368-69 (D.N.J. 1999). In cases alleging corporate fraud, where plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs, the Third Circuit has "relaxed the particularity rule 'when factual information is peculiarly within the defendant's knowledge and control.'" *Weiner*, 129 F.3d at 319 (*quoting Craftmatic Securities Litigation*, 890 F.2d at 645). Such is the case here.

## B.    The Fraud Claims Here Meet These Standards

In any event, the Complaint alleges Wolford's and Krug's fraud on Tectonic Network, including its Board of Directors, with the following particularity among other detailed allegations:

    (a)    Wolford fraudulently induced the acquisition of SpecSource, the majority owner of which was Wolford, by, *inter alia*, (i) materially overstating the revenue of SpecSource in the September 30, 2003 financial statements annexed to the acquisition agreement (Complaint ¶¶ 39-41), (ii) by materially representing to the Board in a presentation on October 22, 2003

(before the Board approved the acquisition on October 29, 2003) that
"[m]ore than 7,000 searches are performed on an average business day [on
SpecSource's website's reference database]" (Complaint ¶31, ¶ 43), (iii)
by falsely representing that "SpecSource's reference database was
complete and accurate" (Complaint ¶¶ 45-48), (iv) by falsely representing
in the acquisition agreement that SpecSource "has not received any notice
or has no knowledge to the effect that any current Customer ... may
terminate or materially alter its business relations with the Company either
as result of the transaction contemplated by this Agreement or otherwise"
and that "[n]o representation, warranty or covenant made by [SpecSource]
or [Wolford and White] in this Agreement (including the schedules hereto)
contains any untrue statement of a material fact or omits to state a material
fact required to be stated herein or necessary to make the statements
contained herein not misleading'" when Wolford knew that SpecSource
had falsely represented to its customers that SpecSource's reference
database was complete and accurate and received thousands of hits and
searches each day and "that such misrepresentations would ultimately
cause a material number of its customers to cancel their contracts, demand
and receive refunds, or receive free advertising, thereby terminating or
materially altering their relationship to the SpecSource business."
(Complaint ¶¶ 51-53)

(b)    Wolford and defendant Krug materially misrepresented and fraudulently
concealed the financial condition and performance of the three acquired

29

businesses after their acquisition when Wolford and Krug falsely
represented to the Board, shortly after the first quarter of 2004, that, during
that quarter, "Tectonic Solutions achieved over $500,000 in advertising
revenue from the three acquired businesses, BBN, CYP, and SpecSource,
when, in fact, Tectonic Solutions would have to refund much of those
advertising revenues or give free advertising to customers...." (Complaint
¶ 55).

(c)     Wolford fraudulently induced the Board of Directors to allocate material
funds to the "Virtual Model Business that Tectonic Solutions, Tectonic
Network's wholly owned subsidiary, was developing, when he
represented, among other things, that the business would "generate
revenues of approximately $30,000 to $40,000 per project with a thirty
percent profit margin" and had no reasonable basis for such an assurance
(Complaint ¶ 64), falsely represented to the Board in August 2004 that
Tectonic Network had received "six (6) new contracts 'in only one month'
of sales during the third calendar quarter of 2004 to develop Virtual
Building Models for the customers, each of these contracts had been
completed, and revenue for these contracts was included in Tectonic
Networks' financial statements for the quarter ended September 30, 2004",
none of which representations were true (Complaint ¶¶ 66-67).

30

## CONCLUSION

Based on the foregoing, Defendants' motion to dismiss should be denied in its entirety.

Dated: December 12, 2006

Ian Connor Bifferato (#3273)
Linda Richenderfer (#4138)
BIFFERATO, GENTILOTTI, BIDEN & BALICK
1308 Delaware Ave.
Wilmington, DE 19806
Telephone: 302-429-1900
Facsimile: 302-429-8600

– and –

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
Thomas J. Fleming
Herbert C. Ross, Jr.
65 East 55th Street
New York, New York 10022
Telephone: 212-451-2300
Facsimile: 212-451-2222

*Attorneys for Plaintiff*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AD HOC COMMITTEE OF EQUITY HOLDERS OF TECTONIC NETWORK, INC., | | No. 06-665 |
| Plaintiff, | | |
| v. | | |
| AROL WOLFORD; SHERWIN KRUG; CHARLES MCROBERTS; JOHN MCROBERTS; CHARLES PECCHIO, JR.; LAURA ROGERS; and THEO VANDERBOOM, | | |
| Defendants. | | |

## AFFIDAVIT OF CHADD P. FITZGERALD

STATE OF DELAWARE    )
                     ) ss.
NEW CASTLE COUNTY    )

I, Chadd P. Fitzgerald, being duly sworn according to law, do hereby depose and say the following:

1.    I am a paralegal at the firm of Bifferato, Gentilotti, Biden & Balick LLC, Delaware counsel to plaintiff in this matter.

2.    I am over 21 years of age and fully competent to take this Affidavit.  I make this Affidavit of my own personal knowledge and in support of Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss.

3.    Attached hereto as Exhibit 1 is a printout dated October 30, 2006 from the web site of the Division of Corporations, Secretary of State, for the State of Delaware.

This is the website I commonly use to obtain service information for Delaware corporations.

4.     As reflected in Exhibit 1, Tectonic Network, Inc. is a Delaware Corporation with a registered agent of TAQ Incorporation located at 874 Walker Road, Suite C, Dover, DE.  Accordingly, the underlying Complaint in this action was served on TAQ as the registered agent for Tectonic Network, Inc. and therefore as the agent for service of the Summons and Complaint on the Defendants as present or former officers and directors of Tectonic Network, Inc.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Chadd P. Fitzgerald

SWORN TO AND SUBSCRIBED before me this _12th_ day of _December_ 2006.

_____
Notary Public

WENDY A. DEMOSS
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires April 22, 2007

# EXHIBIT 1



# State of Delaware
## The Official Website for the First State



Visit the Governor | General Assembly | Courts | Other Elected Officials | Federal, State & L

State Directory | Help | Search Delaware : [GO]     Citizen Services | Business Services | \

**Department of State: Division of Corporations**

HOME
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
General Information
Status
Validate Certificate

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
UCC Searches
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request

Frequently Asked Questions   View Search Results

## Entity Details

THIS IS NOT A STATEMENT OF GOOD STANDING

| | | Incorporation Date / Formation Date: | **01/10/1990** (mm/dd/yyyy) |
|---|---|---|---|
| File Number: | **2218879** | | |

| Entity Name: | **TECTONIC NETWORK, INC.** | | |
|---|---|---|---|
| Entity Kind: | **CORPORATION** | Entity Type: | **GENERAL** |
| Residency: | **DOMESTIC** | State: | **DE** |

### REGISTERED AGENT INFORMATION

| Name: | **TAQ INCORPORATED** | | |
|---|---|---|---|
| Address: | **874 WALKER ROAD - SUITE C** | | |
| City: | **DOVER** | County: | **KENT** |
| State: | **DE** | Postal Code: | **19904** |
| Phone: | **(302)734-8300** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ◯ Status ◯ Status,Tax & History Information [ Submit ]

[ Back to Entity Search ]

To contact a Delaware Online Agent click here.

site map  |  about this site  |  contact us  |  translate  |  delaware.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of December, 2006, a copy of Plaintiff's Brief in

Opposition to Defendants' Motion to Dismiss was caused to be served in the manner indicated

upon the following:

**VIA HAND DELIVERY**
Adam W. Poff, Esquire
William D. Johnston, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

**VIA FEDERAL EXPRESS**
J. Allen Maines, Esquire
John G. Parker, Esquire
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street, Suite 2400
Atlanta, GA  30308

Linda Richenderfer (#4138)
Bifferato, Gentilotti, Biden & Balick
1308 Delaware Avenue
P.O. Box 2165
Wilmington, DE 19899-2165