UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AD HOC COMMITTEE OF EQUITY HOLDERS OF TECTONIC NETWORK, INC., <br><br> Plaintiff, <br><br> v. <br><br> AROL WOLFORD; SHERWIN KRUG; CHARLES MCROBERTS; JOHN MCROBERTS; CHARLES PECCHIO, JR.; LAURA ROGERS; and THEO VANDERBOOM, <br><br> Defendants. | No. 06 - 665 <br><br> **DECLARATION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

HERBERT C. ROSS, JR. declares as follows:

1.      I am a member of the law firm Olshan Grundman Frome Rosenzweig & Wolofsky LLP, which participated in the representation of plaintiff Ad Hoc Committee of Equity Holders of Tectonic Network, Inc. ("Plaintiff") in the bankruptcy proceedings for Tectonic Network, Inc. and Tectonic Solutions, Inc., commenced by them on October 3, 2005, entitled Tectonic Network, Inc. and Tectonic Solutions, Inc., Debtors (United States Bankruptcy Court, Northern District of Georgia, Case Nos. 05-78966 and 05-78955) (the "Bankruptcy").

2.      This declaration is submitted to furnish to the Court copies of certain filings or relevant parts of filings in the Bankruptcy and the Securities and Exchange Commission as well as documents printed from websites, which are cited in Plaintiff's brief in opposition to Defendants' motion to dismiss this action.

3.      Annexed hereto as Exhibit 1 is a copy of the Stipulation and Order signed on April 12, 2006 by the Bankruptcy Court and entered in the docket in the Bankruptcy on April 13, 2006.

523436-1

4.      Annexed hereto as Exhibit 2 is a copy of the First Amended Plan of

Reorganization for Tectonic Network, Inc. and Tectonic Solutions, Inc. that was confirmed by

order dated July 11, 2006 in the Bankruptcy.

5.      In his undated declaration on Defendants' motion to dismiss, defendant John

McRoberts states that "[s]ince June 2004, my residence has been 122 Camp Creek Point, Panama

City Beach, Fl 32413." We have found information contrary to this assertion that supports

finding his state of domicile to be Alabama.

6.      Annexed hereto as Exhibit 3 are copies of the first two pages and another page

(page 46 of 102) from the Amendment No. 1 to Form SB-2/A Registration Statement filed by

Tectonic Network, Inc. with the Securities and Exchange Commission on June 28, 2005.  Page

46 of 102 states that John W. McRoberts, one of the Defendants in this action and then a member

of Tectonic Network's Board of Directors, was also then the President and Chief Executives

Officer of Meadowbrook Healthcare, Inc., Managing Member of CannonGate Partners LLC, a

private equity firm, and a director of Foresite LLC, a company "that owns, leases and develops

communication towers."

7.      Annexed hereto as Exhibit 4 is a copy of a page printed yesterday, December 11,

2006, from the website of Meadowbrook Healthcare, Inc., showing its corporate office at 1200

Corporate Drive, Suite 340, Birmingham, Alabama 35242, and identifying John W. McRoberts

as President and CEO of that entity.

8.      Annexed hereto as Exhibit 5 is a copy of a page printed yesterday from the

http://birmignham.citysearch.com, showing an address for Cannongate Partners LLC at 1200

Corporate Drive, Suite 150, Birmingham, Alabama 35242.

9.      Annexed hereto as Exhibit 6 are copies of pages, printed yesterday from the

2

website for ForeSite Towers, LLC, stating that it leases "antennae sites on its strategically located towers", a description that is consistent with the description of Foresite LLC in the paragraph about John W. McRoberts in the June 2005 SEC filing described above. Another page among those in Exhibit 6 shows the address for ForeSite Towers, LLC as 22 Inverness Center Parkway, Suite 500, Birmingham, Alabama 35242.

10.     Annexed hereto as Exhibit 7 is a copy of the page printed yesterday by me from ATT's "AnyWho" on-line directory for names, addresses, and telephone numbers, showing an address for John McRoberts at 4109 Old Leeds Lane, Birmingham, Alabama 35213-3238, the same address given for him in paragraph 8 in the Complaint in this action.

11.     Annexed hereto as Exhibit 8 is a copy of the first page and page 9 of the Statement of Financial Affairs of Tectonic Network, Inc. as filed by it in the Bankruptcy on October 26, 2005, showing the same address for John McRoberts in Alabama as alleged in paragraph 8 of the Complaint, 4109 Old Leeds Lane, Birmingham, Alabama 35213.

I hereby declare under penalty of perjury that the foregoing is true and correct. Executed on December 12, 2006.

_____
Herbert C. Ross, Jr.

523436-1

# EXHIBIT 1

ENTERED ON DOCKET
APR 1 3 2006

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| TECTONIC NETWORK, INC., and | : | CASE NO. 05-78966 |
| TECTONIC SOLUTIONS, INC., | : | CASE NO. 05-78955 |
| | : | |
| Debtors. | : | JUDGE MASSEY |
| | : | (Jointly Administered Under |
| | : | CASE NO. 05-78966) |
| | : | |

**STIPULATION AND CONSENT ORDER (a) RESOLVING CERTAIN
MOTIONS BY THE AD HOC COMMITTEE (DOCKET # 119),
(b) LIFTING THE AUTOMATIC STAY TO PERMIT MEMBERS OF THE AD HOC
COMMITTEE OF EQUITY HOLDERS THE RIGHT TO PURSUE CLAIMS AGAINST
THE DEBTORS' OFFICERS AND DIRECTORS AND
(c) AUTHORIZING THE DEBTORS TO ABANDON SUCH CLAIMS**

WHEREAS, the Ad Hoc Committee of Equity Holders (the "Committee") whose

members are shareholders of one of the Debtors, Tectonic Network, Inc. ("Network") has moved

this Court for an order converting the within Chapter 11 cases to Chapter 7 (the "Committee

Conversion Motion", Docket # 59);

WHEREAS, the Debtors have moved this Court for an order authorizing them (1) to

settle certain accounts receivable and (2) to license certain source codes (the "Debtors' Accounts

Motion") and the Committee has filed an Objection thereto (the " Committee's Objection");

WHEREAS, the Committee has moved this Court for an Order approving the

Appointment of an official committee of equity holders ("Equity Committee Motion") and the

Debtors have objected thereto, which motion has been adjourned from time to time;

~4392047.doc

WHEREAS, the Equity Committee Motion sought authority to investigate and pursue any and all claims against the Debtors' directors and officers, including but not limited to claims for fraud, breach of fiduciary duty and breach of the duty of care and loyalty which were assertable prior to the filing of these chapter 11 cases, and claims for fraudulent conveyances (the "Claims"). For the purposes of this Stipulation and Consent Order, the Claims do not include the cause of action the Estate has or may have against the Debtors' directors and officers for preferential transfers pursuant to either Bankruptcy Code § 547 or any applicable state law authorizing the recovery of such preferential transfers (the "Preference Claims");

WHEREAS, the Debtors filed a Joint Plan of Reorganization, dated March 24, 2006 (as same may be amended from time to time, the "Plan"). The Plan provided for releases and exculpation (the "Releases") of all claims against officers and directors, including the Claims, to which Releases the Committee objects;

WHEREAS, the Estate and the Debtors believe it is impractical and not an effective use of Estate resources to prosecute the Claims, have declined to do so and do not oppose the lifting of the automatic stay to permit the prosecution of same by the members of the Committee, either individually or by class action;

WHEREAS, the Debtors, their bankruptcy estate (the "Estate") and the Committee have negotiated in good faith to resolve their differences with regard to the three above-referenced motions and wish to resolve those differences by the withdrawal of the Committee Conversion and Equity Committee Motions, the withdrawal of the Committee Objection and the covenants and agreements set forth below;

-2-

WHEREAS, the relief granted herein is in the best interested of the estate and is necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings herein, and upon due deliberation and sufficient cause appearing;

It is hereby stipulated and agreed by and between the Debtors, the Estate and the Committee and Ordered by the Court as follows.

1.      The above recitals are incorporated herein.

2.      The Committee hereby withdraws the Conversion Motion without prejudice, and the Equity Committee Motion and the Committee Objection with prejudice.

3.      Pursuant to Bankruptcy Code §§ 105, 362, 363 and 554(a), and Bankruptcy Rules 4001 and 9019, the automatic stay of 11 U.S.C. Section 362 shall be terminated to permit the members of the Committee as shareholders of Network to pursue the Claims (which excludes the Preference Claims) against the Debtors' directors and officers in a forum outside of the within chapter 11 proceedings.

4.      Upon the entry of this Order, and subject to objection as set forth below, the Claims shall be deemed to be abandoned.

5.      The Estate shall not be responsible or liable for any costs incurred by the Committee or its members in their pursuit of the Claims.  Unless a member of the Committee, no officer, director or employee of the Debtors, may share in any recovery from any of the Claims and recoveries from the

-3-

~4392047.doc

Claims shall inure solely to the benefit of the Committee or its members subject to any applicable law requiring the Committee to share any recoveries with similarly situated members of the class.

6. All Preference Claims against officers, directors and employees are retained by the Estate subject to the disposition it deems proper and subject to further order of this court.

7. In the event circumstances arise in this or any future proceeding or action which, in the sole discretion of the Committee and/or its members pursuing the Claims, require the Estate or the Debtors to execute any further documents or the Court to enter any further orders to formally assign, deliver or abandon the Claims to the Committee and/or its members, the Estate and the Debtors shall execute such documents, and fully cooperate with the Committee to effectuate such relief.

8. This Court shall retain jurisdiction to take any future action necessary to effectuate any action which permits the Committee to pursue the Claims, including without limitation supplementing or amending this order to effectuate such relief in favor of the Committee's derivative right to pursue the Claims.

9. Neither the Plan nor any order of this or any other court, including a confirmation order of the Plan, may approve any releases of the Claims, which Claims are hereby preserved for the benefit of the Committee. No Plan may be confirmed which is inconsistent with the terms hereof.

~4392047.doc

10.    Debtors' counsel shall serve this Stipulation and Consent Order on all creditors of the Debtors, all parties who have filed Notices of Appearance, the United States Trustee, all current and past officers and directors of the Debtors who served at any time on or after October 1, 2001 and all shareholders of Network on or before April 14, 2006.

11.    Any person who objects to the terms of this Stipulation and Consent Order **shall file** a written objection, stating the grounds therefore, on or before the close of business[1] on the 17th day of May, 2006 with the Clerk, U.S. Bankruptcy Court, 1340 U.S. Courthouse, 75 Spring Street, S.W., Atlanta, Georgia 30303-3367, and **shall serve** a copy on the attorneys for Debtors and attorneys for the Committee at the addresses set forth below.

12.    Any objection not timely filed and served as set forth herein is deemed waived.  If no objection is filed as set forth above, this Stipulation and Consent Order shall thereupon stand approved without further notice or hearing.

---

[1]Objections filed electronically may be filed up to 11:59:59 p.m.  All other objections must be filed by delivery to the Clerk's Office at or before 4:00 p.m.

~4392047.doc

13.　　　　If an objection is filed, a hearing will be held in Courtroom1404, U.S. Courthouse, 75 Spring Street, S.W., Atlanta, Georgia at 10:00 a.m. on the 23rd day of May, 2006.

It is **SO ORDERED** this ___12___ day of April, 2006.

_____
JAMES E. MASSEY
UNITED STATES BANKRUPTCY JUDGE

Prepared by and Consented to:

OLSHAN GRUNDMAN FROME
  ROSENZWEIG & WOLOSKY LLP
Attorneys for the Ad Hoc Committee of Equity
Holders
  Thomas J. Fleming, Esq.
  Michael S. Fox, Esq.
  Adam H. Friedman, Esq.
  Park Avenue Tower
  65 East 55th Street
  New York, New York 10022
  Telephone: (212) 452-2300
  Facsimile: (212) 451-2222

-AND-

COHEN POLLOCK MERLIN AXELROD
  & SMALL, P.C.

By: /s/ Gus H. Small
  Gus H. Small
  GA Bar No.: 653200
  3350 Riverwood Parkway, Suite 1600
  Atlanta, Georgia 30339
  Telephone: (770) 857-4806
  Fax: (770) 857-4807
  E-Mail: gsmall@cpmas.com

Prepared by and Consented to:

LAMBERTH, CIFELLI, STOKES
  & STOUT, P.A.
Attorneys for Debtors

By: /s/ Gregory D. Ellis
  Gregory D. Ellis
  Georgia Bar No. 245310
  William D. Matthews
  Georgia Bar No. 480865
  3343 Peachtree Road NE,
  Suite 550
  Atlanta, Georgia 30326-1022
  Telephone: (404) 262-7373
  E-Mail: gellis@lcsslaw.com

**Identification of parties to be served pursuant to BLR 9013-3(c)(2) NDGa.:**

Gregory D. Ellis, Lamberth, Cifelli, Stokes & Stout, P.A., 3343 Peachtree Rd., NE, Suite 550, Atlanta, Georgia 30326

~4392047.doc

# EXHIBIT 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11-JEM |
| | ) | |
| TECTONIC NETWORK, INC. | ) | CASE NO. 05-78966 |
| TECTONIC SOLUTIONS, INC. | ) | CASE NO. 05-78955 |
| | ) | |
| | ) | (Jointly administered under |
| | ) | 05-78966) |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

---

## FIRST AMENDED JOINT PLAN OF REORGANIZATION
## FOR TECTONIC NETWORK, INC.
### and
## TECTONIC SOLUTIONS, INC.

Dated the 22nd day of May, 2006

---

Filed by: Tectonic Network, Inc. and Tectonic Solutions, Inc., Debtors and
Debtors in Possession

Attorneys for the Debtors:
Gregory D. Ellis
Lamberth, Cifelli, Stokes & Stout, P.A.
3343 Peachtree Road, N.E., Suite 550
Atlanta, GA 30326
(404) 262-7373

202222.wpd

# TABLE OF CONTENTS

**ARTICLE I**

DEFINITIONS AND GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-
1.1    *Definitions.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-
1.2    *Undefined Terms* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-
1.3    *Time* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

**ARTICLE II**

CLASSIFICATION OF CLAIMS AND INTERESTS; IMPAIRMENT . . . . . . . . . . . . . . . . . . . . -11-
2.1    *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-
2.2    *Deemed Acceptance of Plan* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
2.3    *Deemed Rejection of Plan* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

**ARTICLE III**

TREATMENT OF CLAIMS AND INTERESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
3.1    *Class 1 – Other Secured Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
3.2    *Class 2 – Priority Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
3.3    *Class 3 – Prepetition Lender Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
3.4    *Class 4 – General Unsecured Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
3.5    *Class 5 – Unsecured Convenience Claims* . . . . . . . . . . . . . . . . . . . . . . . . -15-
3.6    *Class 6 – Subordinated Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
3.7    *Class 7 – Interests* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
3.8    *Special Provision Governing Unimpaired Claims* . . . . . . . . . . . . . . . . . . -16-

**ARTICLE IV**

TREATMENT OF UNCLASSIFIED CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
4.1    *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
4.2    *Administrative Expense Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
4.3    *Priority Tax Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

**ARTICLE V**

TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES . . . . . . . . . . . . . . -17-
5.1    *Assumption and Rejection of Executory Contracts and Unexpired Leases* . . . -17-
5.2    *Claims Based on Rejection of Executory Contracts or Unexpired Leases* . . . -17-
5.3    *Cure of Defaults for Executory Contracts and Unexpired Leases* . . . . . . . . . -18-

**ARTICLE VI**

MEANS FOR IMPLEMENTATION OF PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
6.1    *Continued Corporate Existence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
6.2    *Pooling of Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
6.3    *Amended Certificate of Incorporation and Amended Bylaws* . . . . . . . . . . . . -19-
6.4    *Directors and Officers of Reorganized Debtors* . . . . . . . . . . . . . . . . . . . . . -19-

| | | |
|---|---|---|
| 6.5 | *Employment, Indemnification, and Other Agreements, and Incentive Compensation Programs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -19- |
| 6.6 | *Issuance of New Common Stock and Other Equity Interest* . . . . . . . . . . . . . . | -19- |
| 6.7 | *Cancellation of Existing Securities of Tectonic and Other Agreements* . . . . . | -20- |
| 6.8 | *Corporate Action* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -20- |
| 6.9 | *Preservation of Causes of Action* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -20- |
| 6.10 | *Exclusivity Period* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -20- |
| 6.11 | *Effectuating Documents; Further Transactions* . . . . . . . . . . . . . . . . . . . . . . | -20- |
| 6.12 | *Exemption From Certain Transfer Taxes and Recording Fees* . . . . . . . . . . . | -20- |
| 6.13 | *Further Authorization* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -21- |

**ARTICLE VII**
DISTRIBUTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

| | | |
|---|---|---|
| 7.1 | *Payment of Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -21- |
| 7.2 | *Time of Distributions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -21- |
| 7.3 | *No Interest on Claims or Interests* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -21- |
| 7.4 | *Surrender of Securities or Instruments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -21- |
| 7.5 | *Claims Administration Responsibility* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -22- |
| 7.6 | *Delivery of Distributions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -22- |
| 7.7 | *Procedures for Treating and Resolving Disputed and Contingent Claims* . . . | -23- |
| 7.8 | *Fractional Dollars* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -24- |
| 7.9 | *No Recourse* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -24- |
| 7.10 | *Withholding Taxes* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -24- |

**ARTICLE VIII**
EFFECT OF PLAN ON CLAIMS AND INTERESTS . . . . . . . . . . . . . . . . . . . . . . . . . -24-

| | | |
|---|---|---|
| 8.1 | *Revesting of Assets* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -24- |
| 8.2 | *Discharge of the Debtors* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -24- |
| 8.3 | *Compromises and Settlements* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -25- |
| 8.4 | *Release by Debtors of Certain Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . | -25- |
| 8.5 | *Setoffs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -25- |
| 8.6 | *Indemnification Obligations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -25- |
| 8.7 | *Injunction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -25- |
| 8.8 | *Effect of Confirmation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -26- |
| 8.9 | *Reservation of Rights of the Estates* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -27- |

**ARTICLE IX**
RETENTION AND SCOPE OF JURISDICTION OF THE BANKRUPTCY COURT . . . . . . . . . . . -27-

| | | |
|---|---|---|
| 9.1 | *Retention of Jurisdiction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -27- |
| 9.2 | *Alternative Jurisdiction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -28- |
| 9.3 | *Final Decree* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | -28- |

**ARTICLE X**
MISCELLANEOUS PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -28-

202222.wpd

10.1    *Modification of the Plan* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -28-
10.2    *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-
10.3    *Preparation of Estates' Returns and Resolution of Tax Claims* . . . . . . . . . . . -29-
10.4    *Headings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-
10.5    *Revocation of Plan* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-
10.6    *Confirmation of Plans for Separate Debtors* . . . . . . . . . . . . . . . . . . . . . . . . . -29-
10.7    *No Admissions; Objection to Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-
10.8    *No Bar to Suits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-

**ARTICLE XI**
    REQUEST FOR CONFIRMATION PURSUANT TO § 1129(B) . . . . . . . . . . . . . . . . . . . . . . . -29-

202222.wpd

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11-JEM |
| | ) | |
| TECTONIC NETWORK, INC. | ) | CASE NO. 05-78966 |
| TECTONIC SOLUTIONS, INC. | ) | CASE NO. 05-78955 |
| | ) | |
| | ) | (Jointly administered under |
| | ) | 05-78966) |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

### JOINT PLAN OF REORGANIZATION

#### INTRODUCTION

COME NOW Tectonic Network, Inc. and Tectonic Solutions, Inc., debtors and debtors-in-possession in the above-captioned cases, and propose this First Amended Joint Plan of Reorganization for the resolution of the outstanding Claims against and Interests in the Debtors. Capitalized terms used herein shall have the meanings ascribed to such terms in Article 1.1 of this Plan. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.

202222.wpd

# ARTICLE I

### DEFINITIONS AND GENERAL PROVISIONS

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article 1.1 of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

*1.1    Definitions.*  The following definitions apply in the Debtors' Plan of Reorganization:

(a)    "Ad Hoc Committee of Equity Holders" means the ad hoc committee of shareholders identified on the Bankruptcy Rule 2016 disclosure filed by counsel for the ad hoc committee of equity holders and entered on the docket in the Bankruptcy case on January 12, 2006.

(b)    "Ad Hoc Committee Stipulation" means that certain Stipulation and Consent Order by and between the Debtors and the Ad Hoc Committee of Equity Holders entered on the docket in the Bankruptcy case on April 13, 2006.

(c)    "Administrative Expense Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs and expenses, incurred on or after the Filing Date, of preserving the Estates and operating the business of the Debtors, including wages, salaries or commissions for services rendered after the commencement of the Bankruptcy Cases, Professional Compensation, and all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code.

(d)    "Administrative Claims Bar Date" means the deadline for filing proofs or requests for payment of Administrative Claims, which shall be forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.

(e)    "Affiliates" has the meaning given such term by section 101(2) of the Bankruptcy Code.

(f)    "Allowed Amount" means, with regard to a Claim against any Debtor, the amount of such Claim as may be agreed to by the Debtors and the Holder or as may be determined by the Bankruptcy Court in accordance with the provisions of the Bankruptcy Code and this Plan.

202222.wpd

(g)    "Allowed Claim" means a Claim against any Debtor:

(1)    With regard to which –

(A)    a proof of claim was timely filed on or before the Claims Bar Date or other applicable date for the filing of a proof of claim; or

(B)    a proof of claim was deemed timely filed pursuant to section 1111(a) of the Bankruptcy Code or the filing of a proof of claim was not required; or

(C)    if an Administrative Expense Claim arising prior to March 24, 2006, other than claims for Professional Compensation, a motion for payment was timely filed pursuant to the Bar Order; and

(2)    which Claim –

(A)    is not a Disputed Claim; or

(B)    is valid, enforceable, and not subject to avoidance or subordination under the Bankruptcy Code or other applicable law and is allowed (and only to the extent allowed) pursuant to section 502 of the Bankruptcy Code by a Final Order of the Bankruptcy Court or other court of competent jurisdiction or by agreement with the Debtors pursuant to Article 8.3.

(h)    "Allowed Secured Claim" means that portion of a Secured Claim that is an Allowed Claim.

(i)    "Allowed Unsecured Claim" means an Unsecured Claim that is an Allowed Claim.

(j)    "Amended By-Laws" means the Amended and Restated By-Laws of Reorganized Tectonic, which shall be in substantially the form contained in the Plan Supplement.

(k)    "Amended Certificate of Incorporation" means the amended and restated Certificate of Incorporation of Reorganized Tectonic, which shall be in substantially the form contained in the Plan Supplement.

(l)    "Asserted Amount" shall mean, with regard to Avoidance Actions under §§ 547, 548, or 549 of the Bankruptcy Code, the total amount of the transfers sought to be avoided.  With regard to other claims, including, without limitation, Retained Actions, Asserted Amount shall mean the gross amount of the claim the Debtor seeks to recover.  With regard to Claims, Asserted Amount shall mean the total amount of the Claim sought to be allowed as an Allowed Claim against any Debtor, subject to estimation by the Bankruptcy Court pursuant to Article 7.7.

(m)    "Assets" means, collectively, all of the property, as defined by section 541 of the

-3-

Bankruptcy Code of the Estates of the Debtors (including, without limitation, all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including Causes of Action), wherever situated as such properties exist on the Effective Date or thereafter.

(n)    "Avoidance Action" means any claim or cause of action of an Estate arising out of or maintainable pursuant to sections 510, 542, 543, 544, 546, 547, 548, 549, 550 or 553 of the Bankruptcy Code or under any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

(o)    "Ballot" means each of the ballot forms that are distributed with the Disclosure Statement to Holders of Claims included in Classes that are Impaired under this Plan and entitled to vote under Article II of this Plan to accept or reject this Plan.

(p)    "Bankruptcy Case" means, with respect to each Debtor, the Chapter 11 case initiated by such Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

(q)    "Bankruptcy Code" means Title 11 of the United States Code.

(r)    "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Georgia or, in the event such court ceases to exercise jurisdiction over any Bankruptcy Case, such court or adjunct thereof that exercises jurisdiction over such Bankruptcy Case in lieu of the United States Bankruptcy Court for the Northern District of Georgia.

(s)    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

(t)    "Bar Order" means any order entered by the Bankruptcy Court requiring the filing of certain proofs of claim on or before the Claims Bar Date, and the filing of motions for payment of certain Administrative Expense Claims on or before the Claims Bar Date.

(u)    "Business Day" means any day on which commercial banks are required to be open for business in Atlanta, Georgia.

(v)    "Cash" means legal tender of the United States of America and equivalents thereof.

(w)    "Causes of Action" means all Avoidance Actions and any and all of a Debtor's and the Reorganized Debtors' actions, causes of action, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

(x)    "Certificate" means any instrument, including, without limitation, any note, bond, indenture, or other document evidencing or creating any indebtedness or obligation of the Debtors

-4-

evidencing a Claim.

(y)    "Chief Executive Officer" means Arol Wolford.

(z)    "Claim" means a claim against one of the Debtors (or both of them) whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

(aa)    "Claims Bar Date" means such date as the Bankruptcy Court may fix as the deadline with respect to filling proofs of claims.

(bb)    "Claims Objection Deadline" means November 15, 2006.

(cc)    "Classes" means a category of Claims or Interests described in Article III of this Plan.

(dd)    "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

(ee)    "Confirmation Hearing" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1128 of the Bankruptcy Code, as such hearing may be continued.

(ff)    "Confirmation Order" means the order confirming the Plan pursuant to section 1129 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in substantially the form attached to the Plan Supplement.

(gg)    "Continuing Indemnification Rights" means those Indemnification Rights held by any Indemnitee who is a Released Party and serves as a director, officer or employee (or in any similar capacity) of the Reorganized Debtors immediately following the occurrence of the Effective Date together with any Indemnification Rights held by any Indemnitee on account of events occurring on or after the Filing Date.

(hh)    "Convenience Class Election" means the election to be made by a holder of an Allowed Unsecured Claim pursuant to Article 3.5.

(ii)    "Cure Amount" means an amount agreed to by the Debtors and the non-debtor party to any Executory Contract or Unexpired Lease assumed pursuant to the Plan, or, absent an agreement, an amount to be determined by the Bankruptcy Court upon Motion filed by the Debtor or the non-debtor party to any assumed Executory Contract or Unexpired Lease on or before the 45th day after the Effective Date as sufficient to satisfy the Debtors' obligations under section 365(b) of the Bankruptcy Code with respect to the Debtors' assumption of such Executory Contract or Unexpired Lease.

(jj)    "Debtor" or "Debtors" means, individually, Tectonic Network, Inc. and Tectonic Solutions, Inc., and collectively, both Tectonic Network, Inc. and Tectonic Solutions, each, both of

202222.wpd

which is a Debtor in its Bankruptcy Case.

(kk)    "Designated Notice" means notice and an opportunity for a hearing as defined in section 102(a) of the Bankruptcy Code, with notice limited to the Debtors, the United States Trustee, and other parties in interest who, after entry of the Confirmation Order, file a request for such notice with the Clerk of the Bankruptcy Court and serve a copy of same on counsel for the Debtors. For thirty (30) days after the Confirmation Date, Designated Notice means notice pursuant to that certain Order limiting notice entered by the Bankruptcy Court on October 12, 2005 in each Debtor's Bankruptcy Case.

(ll)    "Disclosure Statement" means the written disclosure statement that relates to this Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time.

(mm)    "Disputed Claim" means an alleged Claim against any Debtor as to which an objection has been filed or a response in opposition to a motion for payment of the Claim has been made, or as to which there is a dispute between any Debtor and the Holder of the alleged Claim that is the subject of pending litigation as of the Confirmation Date, and that a Final Order or agreement pursuant to Article 8.3 has not resolved.

(nn)    "Distribution" means any distribution by the Debtors or Reorganized Debtors to the Holders of Allowed Claims.

(oo)    "Distribution Date" means (a) the Initial Distribution Date, (b) first Business Day after the end of the month of June, commencing with the first such date to occur more than ninety (90) days after the Effective Date and until the (c) Final Distribution Date; provided, however, that (i) a Distribution Date (other than the Initial Distribution Date and Final Distribution Date) shall not occur if the aggregate value of the consideration to be distributed on account of Allowed Claims on any Distribution Date is less than Ten Thousand and 00/100 Dollars ($10,000.00), in which case the amount to be distributed shall be retained and added to the amount to be distributed on the next Distribution Date, (ii) any Unsecured Claim that becomes Allowed less than twenty (20) Business Days prior to a Distribution Date shall be treated as a Disputed Claim for the purposes of the Distribution occurring on such Distribution Date and shall not receive a Distribution until the Distribution Date immediately succeeding such Distribution Date, and (iii) the Debtors shall distribute amounts towards satisfaction of the Claims of Laurus, whether such Claims are in Class 3 or Class 4, if such Claims become Allowed on a date after the Effective Date, within thirty (30) days after such date.

(pp)    "Distribution Reserve" means the amount be held for Distribution to Holders to be reserved pending allowance of Disputed Claims in accordance with Article 7.7 of this Plan.

(qq)    "District Court" means the United States District Court for the Northern District of Georgia, Atlanta Division.

202222.wpd

(rr)    "Effective Date" means the date specified by the Debtors in a notice filed with the Bankruptcy Court as the date on which the Plan shall take effect, which date shall be not more than 5 Business Days after the later of (i) the date on which the Confirmation Order becomes a Final Order; and (ii) the date on which the conditions to the Effective Date provided for in the Plan have been satisfied or waived.

(ss)    "Estate" means, with regard to each Debtor, the estate that was created by the commencement by a Debtor of a Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or such estate shall have had effective as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

(tt)    "Executory Contract or Unexpired Lease" means all executory contracts and unexpired leases to which either of the Debtors are a party.

(uu)    "Existing Securities" means shares of common stock of Tectonic that are authorized, issued and outstanding on the Effective Date immediately prior to the Plan taking effect.

(vv)    "Filing Date" or "Petition Date" means October 3, 2005.

(ww)    "Final Distribution" means the Distribution by the Debtors or Reorganized Debtors that satisfies all Allowed Claims to the extent provided in and in accordance with the Plan.

(xx)    "Final Distribution Date" means the Distribution Date on which the Final Distribution is made.

(yy)    "Final Order" means an order of the Bankruptcy Court, the District Court, or any other court as to which (1) any appeal that has been taken has been finally determined or dismissed, or (2) the time for appeal has expired and no appeal has been filed timely. (In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.)

(zz)    "General Unsecured Claims" means any Unsecured Claim other than a Unsecured Convenience Claim or a Subordinated Claim.

(aaa)    "Holder" means a holder of a Claim or Interest.

(bbb)    "Impaired" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

-7-

(ccc)   "Indemnification Rights" means any obligations of the Debtors to indemnify, reimburse, advance, or contribute to the losses, liabilities or expenses of an Indemnitee pursuant to the Debtor's certificate of incorporation, bylaws, policy of providing employee indemnification, applicable law, or specific agreement in respect of any claims, demands, suits, causes of action or proceedings against an Indemnitee based upon any act or omission related to an Indemnitee's service with, for, or on behalf of the Debtors.

(ddd)   "Indemnitee" means all parties who are entitled to assert Indemnification Rights pursuant to Article 8.6.

(eee)   "Initial Distribution Date" means the Effective Date.

(fff)   "Interests" means the equity interests in the Debtors, including, but not limited to, the Existing Securities and the common stock of Tectonic and any options, warrants, puts, calls, subscriptions or other similar rights or other agreements, commitments, or outstanding securities obligating any of the Debtors to issue, transfer, purchase, redeem, or sell any shares of capital stock or other securities, any claims arising out of any appraisal or dissenter's rights, any claims arising from rescission of a purchase, sale or other acquisition of any common stock or other equity security (or any right, claim, or interest in and to any common stock or equity security) of any of the Debtors, and any claims for damages or any other relief arising from any such purchase, sale, or other acquisition of such common stock or other equity security.

(ggg)   "Laurus" means Laurus Master Fund, Ltd.

(hhh)   "Laurus Complaint" means (a) adversary proceeding, Case no.05-06542 filed November 28, 2005, Northern District of Georgia, Atlanta Division, by Debtors against Laurus in the Bankruptcy Cases.

(iii)   "Laurus Settlement Agreement" means that certain Settlement Agreement and Mutual Release entered into as of February 15, 2006, by and among the Debtors and Prepetition Lender and the Agreement for Indemnification dated March 24, 2006 and related stipulations therewith all as approved by order of the Bankruptcy Court entered on the docket on April 13, 2006.

(jjj)   "Lien" has the meaning set forth in § 101(37) of the Bankruptcy Code.

(kkk)   "New Common Stock" means the common stock, par value $0.01 per share, of the Reorganized Tectonic to be issued pursuant to the Plan.

(lll)   "New Capital" means the proceeds from the sale of the New Common Stock.

(mmm)"Other Secured Claim" means a Secured Claim other than a Prepetition Lender Claim.

(nnn)   "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

202222.wpd

(ooo)  "Plan" means this Plan of Reorganization as the same may hereafter be amended or modified.

(ppp)  "Plan Supplement" means the forms of Amended By-Laws, Amended Certificate of Incorporation, and Confirmation Order, which shall be filed with the Bankruptcy Court on or before May 15, 2006, except with respect to the form of the Confirmation Order, which will filed on or before the date of the commencement of the hearing on the approval of the Disclosure Statement.

(qqq)  "Post-Confirmation Administrative Expenses" means costs and expenses incurred, after the Confirmation Date, in connection with the administration and consummation of this Plan, by the Debtors, the Reorganized Debtors, and professionals employed by the Debtor or the Reorganized Debtors, from the Confirmation Date through the Effective Date, including, without limitation, Post-Confirmation Professional Compensation and any costs or expenses incident to the ownership or disposition of any Asset.

(rrr)  "Post-Confirmation Professional Compensation" means claims for compensation earned, and reimbursement of expenses incurred, by attorneys or other professionals employed by the Debtors, the Reorganized Debtors, in connection with services rendered after the Confirmation Date with regard to the Retained Actions or Causes of Action, the distribution of funds to creditors, the administration of the cases, and any other aspect of implementation of this Plan.

(sss)  "Prepetition Credit Agreement" means that certain Security Agreement, dated as of January 10, 2005 by and among, inter alia, Debtors and Laurus, as amended, supplemented or otherwise modified from time to time, and all documents executed in connection therewith.

(ttt)  "Prepetition Lender Claims" means all Secured Claims arising under or pursuant to the Prepetition Credit Agreement, as Modified by the Laurus Settlement Agreement.

(uuu)  "Prepetition Lender" means Laurus.

(vvv)  "Priority Claim" means a claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

(www) "Priority Tax Claim" means a Claim against the Debtors that is of a kind specified in section 507(a)(8) of the Bankruptcy Code.

(xxx)  "Pro Rata" means the ratio (expressed as a percentage) of the amount of an Allowed Claim in a Class to the aggregate amount of all Allowed Claims plus the Asserted Amount of all Disputed Claims in the same Class.

(yyy)  "Professional Compensation" means (1) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by the Debtors and (2) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Cases.

(zzz) "Record Date" means the date established in the Confirmation Order or any other order of the Bankruptcy Court for determining the identity of holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order, then the Record Date shall be the Confirmation Date.

(aaaa) "Released Parties" means collectively, (i) all officers of each of the Debtors as of the Petition Date, all members of the boards of directors of each of the Debtors as of the Petition Date, and all employees of the Debtors as of the date of the hearing on the Disclosure Statement.

(bbbb) "Reorganized Debtor" or "Reorganized Debtors" means, individually, any Debtor and, collectively, all of the Debtors, in each case from and after the Effective Date.

(cccc) "Reorganized Tectonic" means Tectonic from and after the Effective Date.

(dddd) "Retained Actions" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or any Debtors' Estate may hold against any Person, including, without limitation, (a) claims and Causes of Action brought prior to the Effective Date, (b) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by any of the Debtors, (c) claims and causes of Action relating to strict enforcement of any of the Debtors' intellectual property rights, including patents, copyrights and trademarks, and (d) claims and Causes of Action seeking the recovery of any of the Debtors' or the Reorganized Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of any of the Debtors' or the Reorganized Debtors' businesses, including, without limitation, claim overpayments and tax refunds; provided, however, that the foregoing shall not include claims explicitly released under this Plan or by Final Order of the Bankruptcy Court prior to the date hereof.

(eeee) "Schedules" means, with respect to any Debtor, the Schedules of Assets and Liabilities, including any amendment thereto, such Debtor files in its Bankruptcy Case.

(ffff) "Secured Claim" means a claim (as defined in section 101(5) of the Bankruptcy Code) against any Debtor to the extent secured by a Lien on any property of any Debtor to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

(gggg) "Securities Act" means the Securities Act of 1933, as amended.

(hhhh) "Subordinated Claim" means all Claims of Arol Wolford, Charlie McRoberts, Specsource.com, Inc., Charles Pechio, Laura Rogers, Theo Vanderboom, Sherwin Krug and any Unsecured Claim that is subordinated in priority to Allowed General Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code, the terms of this Plan, or other applicable law.

(iiii) "Tectonic" means Tectonic Network, Inc.

(jjjj) "Unimpaired" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

202222.wpd

(kkkk) "Unsecured Claim" means any Claim against any Debtor that is not a Secured Claim (though the definition "Unsecured Claim" includes any deficiency Claim), a Priority Claim, a Priority Tax Claim or an Administrative Claim,.

(llll)    "Unsecured Convenience Claim" means (a) any Allowed Unsecured Claim in an amount that is equal to or less than $1,000; or (b) any Allowed Unsecured Claim in an amount that is greater than $1,000 whose Holder has agreed in writing or by designation on their Ballot to reduce their Allowed Unsecured Claim to $1,000.

(mmmm)      "Solutions" means Tectonic Solutions, Inc., one of the Debtors.

*1.2      Undefined Terms.* A term used in the Plan and not defined herein, but that is defined in the Bankruptcy Code, has the meaning given to that term in the Bankruptcy Code.

*1.3      Time.* Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

## ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS; IMPAIRMENT

*2.1      Summary.* The categories of Claims and Interests set forth below classify all Claims against and Interests in the Debtors for all purposes of the Plan. A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. The treatment with respect to each Class of Claims and Interests provided for in this Article II (and any other rights expressly provided for elsewhere in this Plan) shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

For purposes of classification and treatment under this Plan, Claims against Tectonic and Solutions, respectively, are classified in a single class regardless of whether such Claims are assertable against one or more of Tectonic or Solutions. The Debtors do not believe that such classification or treatment adversely affects the rights of any Holder of a Claim. The Debtors do not intend, by so classifying Claims, to effect a substantive consolidation of any of the Debtors or their respective Estates. Rather, the separate corporate existence of each of the Debtors is preserved under the Plan in accordance with Article 6.2 of the Plan. Notwithstanding the single classification and treatment, the Claims against Tectonic and Solutions, respectively, shall be deemed to be in a separate and distinct subclass for each respective Debtor for purposes of voting on, and determining acceptance of, the Plan.

For purposes of classification and treatment under this Plan, Interests in Tectonic and Solutions, respectively, are classified in two subclasses.

202222.wpd

The classification of Claims under this Plan is as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | No |
| 2 | Priority Claims | Unimpaired | No |
| 3 | Prepetition Lender Claim | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Unsecured Convenience Claims | Impaired | Yes |
| 6 | Subordinated Claims | Impaired | No |

The classification of Interests under this Plan are as follows:

| | | | |
|---|---|---|---|
| 7A | Tectonic Interests | Impaired | No |
| 7B | Solutions Interests | Unimpaired | No |

2.2    *Deemed Acceptance of Plan.*  Classes 1, 2, and 7B are Unimpaired under the Plan. Accordingly, pursuant to section 1126(f) of the Bankruptcy Code, Classes 1, 2, and 7B are deemed to accept the Plan and are not entitled to vote to accept or reject the Plan.

2.3    *Deemed Rejection of Plan.*  The holders of Subordinated Claims in Class 6 and Interests in Class 7A will not receive or retain any property under the Plan, and, pursuant to section 1126(g) of the Bankruptcy Code, are deemed to reject the Plan, and, therefore, are not entitled to vote to accept or to reject the Plan.

### ARTICLE III
#### TREATMENT OF CLAIMS AND INTERESTS

3.1    *Class 1 – Other Secured Claims*

(a)    *Classification*: Class 1 consists of all Other Secured Claims. Each Allowed Other Secured Claim shall be deemed to be a separate and distinct subclass for purposes of voting on, and determining acceptance of, the Plan.

(b)    *Treatment*: The legal, equitable and contractual rights of the Holders of Class 1 Other Secured Claims are unaltered by the Plan. Unless the Holder of such Claim and the Debtors agree to a different treatment, each Holder of an Allowed Class 1 Other Secured Claim shall receive, in full and final satisfaction of such Allowed Class 1 Other Secured Claim, one of the following alternative treatments, at the election of the Debtors:

(1)    the legal, equitable and contractual rights to which such Claim entitles the Holder thereof shall be reinstated and the Holder paid in accordance with such legal, equitable and contractual rights;

(2)    the Debtors shall surrender all collateral securing such Claim to the Holder thereof, in full satisfaction of such Holder's Allowed Class 1 Other Secured Claim, without representation or warranty by or recourse against the Debtors or

202222.wpd

Reorganized Debtors; or

(3)    such Allowed Class 1 Other Secured Claim will be otherwise treated in any other manner so that such Claim shall otherwise be rendered Unimpaired pursuant to section 1124 of the Bankruptcy Code.

Any default with respect to any Class 1 Other Secured Claim that occurred before or after the commencement of the Chapter 11 Case shall be deemed cured upon the Effective Date.

(c)    *Voting*: Class 1 is an Unimpaired Class, and the Holders of Allowed Class 1 Other Secured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.   Therefore, the Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

3.2    *Class 2 – Priority Claims*

(a)    *Classification*: Class 2 consists of all Priority Claims other than Priority Tax Claims.

(b)    *Treatment*: The legal, equitable and contractual rights of the Holders of Class 2 Priority Claims are unaltered by the Plan.  Unless the Holder of such Claim and the Debtors agree to a different treatment, each Holder of an Allowed Class 2 Priority Claim shall receive, in full and final satisfaction of such Allowed Class 2 Priority Claim, one of the following alternative treatments, at the election of the Debtors:

(1)    to the extent then due and owing on the Effective Date, such Claim will be paid in full in Cash by the Debtors or the Reorganized Debtors on the Effective Date;

(2)    to the extent not due and owing on the Effective Date, such Claim will be paid in full in Cash by the Debtors or the Reorganized Debtors when and as such Claim becomes due and owing in the ordinary course of business; or

(3)    such Claim otherwise will be treated in any other manner so that such Claims shall otherwise be rendered Unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)    *Voting*: Class 2 is an Unimpaired Class, and the Holders of Class 2 Priority Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

3.3    *Class 3 – Prepetition Lender Claim.*

(a)    *Classification*: Class 3 consists of all Prepetition Lender Claims.

(b)    *Treatment*: The  Holder  of  the  Allowed  Class 3  Prepetition  Lender  Claim  shall

-13-                                    202222.wpd

receive any payments that the Prepetition Lender is entitled to under the Laurus Settlement Agreement and shall be entitled to such security and other rights as set forth in the Prepetition Credit Agreement as modified by the Laurus Settlement Agreement which shall be binding upon the Reorganized Debtors and the Assets revested in the Reorganized Debtors.

(c)    *Voting*: Class 3 is an Impaired Class.  Therefore, the Holder of Claims in Class 3 is entitled to vote to accept or reject the Plan.

3.4    *Class 4 – General Unsecured Claims.*

(a)    *Classification*: Class 4 consists of all General Unsecured Claims.

(b)    *Treatment*:  The Debtor shall make an initial payment on the Effective Date of $100,000 less any amounts necessary to pay Class 2 Priority Claims and Class 5 Unsecured Convenience Claims and four additional annual payments of $100,000 each payable on July 1, 2007, 2008, 2009, and 2010.  Each Holder of an Allowed Class 4 Claim shall receive five (5) annual payments in the amount of that Holder's Pro-Rata share of each payment.

(c)    *Voting*: Class 4 is an Impaired Class, and pursuant to section 1126 of the Bankruptcy Code each Holder of an Allowed Class 4 General Unsecured Claim in entitled to vote to accept or reject the Plan.

3.5    *Class 5 – Unsecured Convenience Claims*

(a)    *Classification*: Class 5 consists of all Unsecured Convenience Claims.

(b)    *Treatment*:. After the later of (i) the Initial Distribution Date, and (ii) the date on which its Unsecured Convenience Claim becomes an Allowed Claim, each Holder of an Allowed Class 5 Unsecured Convenience Claim shall receive, in full and final satisfaction of such Holder's Allowed Class 5 Claim, a Cash payment in an amount equal to twenty-five percent (25%) of such Holder's Allowed Class 5 Unsecured Convenience Claim.

(c)    *Voting*: Class 5 in an Impaired Class.  Pursuant to section 1126 of the Bankruptcy Code the Holders of Allowed Class 5 Unsecured Convenience Claims are each entitled to vote to accept or reject the Plan.

(d)    *Convenience Class Election*: Each Holder of an Unsecured Claim with an Allowed Claim of $ 1,000 or less may elect to be treated as a Holder of an Unsecured Convenience Claim by written agreement between the Holders and Debtors or by designation on their Ballot.

3.6    *Class 6 – Subordinated Claims.*

(a)    *Classification*: Class 6 consists of all Claims of Arol Wolford, Charlie McRoberts, and Specsource.Com, Inc. and all other Subordinated Claim.

(b)    *Treatment*: The Holders of Subordinated Claims will receive no distributions on account of their respective Claims and all rights with respect thereto will be cancelled and fully

-14-                                              202222.wpd

extinguished pursuant to, and on the Effective Date of, the Plan.

(c)     *Voting*: Class 6 is an Impaired Class. Pursuant to section 1126(g) of the Bankruptcy Code, Holders of Class 6 Subordinated Claims are conclusively deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

3.7     *Class 7 – Interests.*

(a)     *Classification*: Class 7A consists of all Interests in Tectonic; and Class 7B consists of all Interests in Solutions.

(b)     *Treatment*: Reorganized Tectonic shall retain its Interests in Solutions. The Holders of Class 7A Interests in Tectonic will receive no distributions on account of such Interests and such Interests will be cancelled and fully extinguished pursuant to, and on the Effective Date of, the Plan.

(c)     *Voting*: With respect to Tectonic, Class 7A is an Impaired Class. Pursuant to section 1126(g) of the Bankruptcy Code, Holders of Class 7A Interests in Tectonic are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan. With respect to Solutions, Class 7B is an Unimpaired Class, and the Holders of Class 7B Interests are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of Interests in Classes 7B is not entitled to vote to accept or reject the Plan.

3.8     *Special Provision Governing Unimpaired Claims*. Except as otherwise provided in the Plan, nothing under the Plan is intended to, or shall affect, the Debtors' or Reorganized Debtors' rights and defenses in respect of any Claim that is Unimpaired under the Plan, including, but not limited to, all rights in respect of legal and equitable defenses to or setoffs or recoupment against such Unimpaired Claims.

### ARTICLE IV
TREATMENT OF UNCLASSIFIED CLAIMS

4.1     *Summary*. Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims against the Debtors are not classified for purposes of voting on, or receiving distributions under, the Plan. Holders of such Claims are not entitled to vote on the Plan. All such Claims are instead treated separately in accordance with this Article IV and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

4.2     *Administrative Expense Claims*. Subject to the provisions of sections 330(a) and 331 of the Bankruptcy Code, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (i) the Initial Distribution Date, (ii) the date such Claim becomes an Allowed Administrative Expense Claim, or (iii) upon such other terms as may be agreed upon by such Holder and Reorganized Debtors or otherwise upon order of the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims and Post-Confirmation Administrative Expenses representing obligations incurred by the Debtors in the ordinary course of business, or otherwise assumed by the Debtors on the Effective Date pursuant to the Plan, including any tax obligations arising after the Petition Date, will be paid or performed by Reorganized Debtors when due in accordance with the terms and conditions

of the particular agreements or non-bankruptcy law governing such obligations.

*4.3    Priority Tax Claims.* Subject to all rights available to the Reorganized Debtors pursuant to section 505 of the Bankruptcy Code, and other applicable law, to seek determination or reduction or otherwise contest the Allowed Amount of Priority Tax Claims, jurisdiction of the Bankruptcy Court as to any Priority Tax Claim being expressly and specifically retained and preserved herein, each Holder of an Allowed Priority Tax Claim shall be paid, in full, on or before 6 years after the date of assessment of such Claim, through annual payments commencing on the Initial Distribution Date, which is projected to be July 1, 2006, and accruing interest at a rate of 8%. The amount of any Priority Tax Claim that is not an Allowed Claim or that is not otherwise due and payable on or prior to the Effective Date, and the rights of the Holder of such Claim, if any, to payment in respect thereof shall (i) be determined in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Bankruptcy Cases had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Cases had not been commenced, and (iii) not be discharged pursuant to Section 1141 of the Bankruptcy Code. In accordance with Section 1124 of the Bankruptcy Code, the Plan leaves unaltered the legal, equitable, and contractual rights of each Holder of a Priority Tax Claim.

## ARTICLE V
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*5.1    Assumption and Rejection of Executory Contracts and Unexpired Leases.* On the Effective Date, all Executory Contracts and Unexpired Leases of any of the Debtors will be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except those Executory Contracts or Unexpired Leases that (1) have been previously assumed by any Debtor pursuant to an order of the Bankruptcy Court, (2) are the subject of a motion filed by any Debtor to reject which is pending on the Effective Date, (3) are identified as being assumed on a list to be filed by the Debtors with the Bankruptcy Court, and served on the non-debtor parties under the agreements listed thereon, no later than 10 (ten) Business Days prior to the last date for filing objections to confirmation of the Plan, or (4) are assumed pursuant to the terms of the Plan. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each Executory Contract or Unexpired Lease that is assumed by any Debtor hereunder or pursuant to any order entered by the Bankruptcy Court shall be deemed to be assigned to Reorganized Debtors on the Effective Date.

*5.2    Claims Based on Rejection of Executory Contracts or Unexpired Leases.* All proofs of claim with respect to Claims arising from the rejection pursuant to the Plan of any Executory Contract or Unexpired Lease, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order by the Bankruptcy Court confirming the Plan and approving such rejection. Any Claims arising from the rejection of Executory Contracts or Unexpired Leases that become Allowed Claims are classified and shall be treated as Class 4 or Class 5 Unsecured Claims depending on the amount of the claim. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within such times will be forever barred from assertion against the Debtors or Reorganized Debtors, the Estate and property of the Debtors or Reorganized Debtors unless otherwise ordered by the Bankruptcy Court or provided in this Plan.

202222.wpd

*5.3    Cure of Defaults for Executory Contracts and Unexpired Leases.* Any Cure Amounts with respect to any Executory Contract or Unexpired Lease assumed by the Debtor shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount in Cash on the Initial Distribution Date, or as soon as is practicable after the Cure Amount is agreed to or determined by the Bankruptcy Court, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding: (1) the existence of any default or the amount of any Cure Amount, (2) the ability of any Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the payment of the Cure Amount required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption. In the event the assumption is not approved, the contract or lease shall be rejected.

## ARTICLE VI
### MEANS FOR IMPLEMENTATION OF PLAN

*6.1    Continued Corporate Existence.* Each of the Debtors will continue to exist after the Effective Date as a separate corporate entity, with all the powers of a corporation under applicable law in the jurisdiction in which each Debtor is incorporated and pursuant to its certificate of incorporation and bylaws or other organizational documents in effect prior to the Effective Date, except to the extent such certificate or articles of incorporation and bylaws or other organizational documents are amended by this Plan. On the Effective Date, the Debtors, at their option, shall have the express right to merge Tectonic Solutions, Inc. into Tectonic, dissolve Tectonic Solutions, Inc. or continue the existence of Tectonic Solutions, Inc. provided that Tectonic assume the obligations of Tectonic Solutions, Inc. under the Plan. The continued existence of Tectonic shall be without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.

*6.2    Pooling of Claims.* As set forth in Article 2.1, the Plan provides for the pooling of Claims asserted against any of the Debtors for purposes of distributions under the Plan and not for voting purposes. For such limited purposes, on the Effective Date, (a) any obligation of any Debtor and all guaranties with respect to any Class of Claims or Interests executed by one or more of the other Debtors and any joint or several liability of any of the Debtors shall be treated as a single obligation, and any obligation of two or more Debtors, and all multiple Impaired Claims against Debtors on account of such joint obligations, shall be treated and Allowed only as a single Claim against the Debtors; and (b) each Claim filed in the Bankruptcy Cases of either Debtor shall be deemed a Claim against and an obligation of each of the Debtors. Such pooling will not (other than for purposes related to this Plan) (a) affect the legal and corporate structures of the Debtors or Reorganized Debtors, (b) affect intercompany Claims of Debtors against Debtors, which intercompany Claims shall survive entry of the Confirmation Order notwithstanding Article 8.2 of this Plan, and (c) affect Interests held by Tectonic in Solutions which Interests shall be retained by Tectonic.

*6.3    Amended Certificate of Incorporation and Amended Bylaws.* The Amended Certificate of Incorporation and Amended Bylaws of each of the other Reorganized Debtors shall be adopted as may be required in order that they are consistent with the provisions of this Plan and the Bankruptcy Code. The Amended Certificate of Incorporation of  Tectonic  shall, among other things, (a)

202222.wpd

authorize the issuance of New Common Stock; and (b) provide, to the extent necessary to comply with section 1123(a)(6) of the Bankruptcy Code, for (i) a provision prohibiting the issuance of non-voting equity securities for a period of two (2) years from the Effective Date and, if applicable, (ii) a provision setting forth an appropriate distribution of voting power among classes of equity securities possessing voting power, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends. The form of the Amended Certificate of Incorporation and Bylaws of the Debtors, if any, will be attached to the Plan Supplement. Any modification to the certificates of incorporation as originally filed may be filed after the Confirmation Date and may become effective on or prior to the Effective Date.

6.4    *Directors and Officers of Reorganized Debtors.*

(a)    Officers.    Subject to their employment contracts as assumed by this Plan and subject to the authority of the board of directors of the Reorganized Debtors, on the Effective Date (i) the term of the office of Chief Executive Officer will expire, the Chief Executive Officer shall serve in the offices of president and chief executive officer of the Reorganized Debtors until the next annual meeting of the stockholders of Reorganized Tectonic, or until a successor is elected and qualified; and (ii) all other existing senior officers of the Debtors in office on the Effective Date shall serve in their current capacities with the Reorganized Debtors after the Effective Date.

(b)    Directors of Tectonic and Solutions. On the Effective Date, the term of the current members of the board of directors will expire. The initial board of directors of Reorganized Tectonic from and after the Effective Date shall consist of 2 directors, who shall be Arol Wolford and Charlie McRoberts, with each such director to serve until the next annual meeting of the stockholders of Reorganized Tectonic, or until their successors are elected and qualified. The initial board of directors of Solutions  from and after the Effective Date shall be Arol Wolford, with each such director to serve until the next annual meeting of the stockholders of Solutions, or until their successors are elected and qualified.

6.5    *Employment, Indemnification, and Other Agreements, and Incentive Compensation Programs.*  After the Effective Date, the Reorganized Debtors shall each have the authority, consistent with the applicable agreements and their Amended Certificate of Incorporation and Amended Bylaws, to terminate, amend, or enter into employment, retirement, indemnification, and other agreements with their respective directors, officers, and employees and to terminate, amend, or implement incentive compensation plans, retirement income plans, welfare benefit plans, and other plans for employees.

6.6    *Issuance of New Common Stock and Other Equity Interest.*

(a)    New Common Stock. On the Effective Date, Tectonic will authorize the issuance of 100,000 shares of New Common Stock. Reorganized Tectonic will issue the New Common Stock in exchange for $100,000 in New Capital. The issuance of New Common Stock as described above will be exempt from registration under applicable securities laws pursuant to section 1145(a) of the Bankruptcy Code.

202222.wpd

6.7     *Cancellation of Existing Securities of Tectonic and Other Agreements.* On the Effective Date, except as otherwise specifically provided for herein, (a) the Existing Securities and any other note, bond, indenture, or other instrument or document evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors, except for the Interests of Tectonic in Solutions,, will be deemed to be fully and finally cancelled, (b) the obligations of, Claims against, and/or Interests in the Debtors under, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the Existing Securities and any other note, bond, indenture, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors, will be released and discharged, and (c), all Claims, Liens, charges, encumbrances, and rights related to any Claim or Interest, including, without limitation, those existing under the Prepetition Credit Agreement and any other documents, except to the extent specifically permitted under Articles 3.1 and 3.3 of the Plan, shall be terminated, null and void, and of no effect.

6.8     *Corporate Action.* Each of the matters provided for under this Plan involving the corporate structure of any Debtor or Reorganized Debtor or corporate action to be taken by or required of any Debtor or Reorganized Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by stockholders, creditors, or directors of any of the Debtors or the Reorganized Debtors.

6.9     *Preservation of Causes of Action.* In accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors will retain and may (but are not required to) enforce all Retained Actions. The Debtors or the Reorganized Debtors, in their sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. The Reorganized Debtors or any successors may pursue such litigation claims in accordance with the best interests of the Reorganized Debtors or any successors holding such rights of action.

6.10    *Exclusivity Period.* The Debtors will retain the exclusive right to amend or modify their Plan, and to solicit acceptances of any amendments to or modifications of their Plan, through and until the Effective Date.

6.11    *Effectuating Documents; Further Transactions.* The Chief Executive Officer, or his respective designees, will be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law. The secretary or assistant secretary of the Debtors will be authorized to certify or attest to any of the foregoing actions.

6.12    *Exemption From Certain Transfer Taxes and Recording Fees.* Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from a Debtor to a Reorganized Debtor or to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local

202222.wpd

governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.13    *Further Authorization.* The Reorganized Debtors shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

## ARTICLE VII
### DISTRIBUTIONS

7.1    *Payment of Claims.* Except as otherwise provided for in the Plan, on the Effective Date, or as soon as practicable thereafter, the Debtors or Reorganized Debtors shall make Distributions required under the Plan from the New Capital and other available funds to pay Administrative Expense Claims which are Allowed Claims, Claims for Professional Compensation as such Claims are Allowed by the Bankruptcy Court, all Allowed Class 1 Claims pursuant to Article 3.1, all Allowed Class 2 Claims pursuant to Article 3.2, all Allowed Class 3 Claims pursuant to Article 3.3, and all Allowed Class 5 Claims pursuant to Article 3.5.

7.2    *Time of Distributions.* Except as otherwise provided for in the Plan or ordered by the Bankruptcy Court, Distributions under this Plan shall be made on the Initial Distribution Date and on each Distribution Date thereafter.

7.3    *No Interest on Claims or Interests.* Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtors and a Holder, postpetition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

7.4    *Surrender of Securities or Instruments.* On or before the Effective Date, or as soon as practicable thereafter, each Holder of a Certificate shall surrender such Certificate to the Reorganized Debtors, and take all necessary steps to evidence such surrender and such Certificate shall be cancelled solely with respect to the Debtors and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-a-vis one another to such instruments; provided, however, that this Article 7.4 shall not apply to any Other Secured Claims reinstated pursuant to Article 3.1 of this Plan or the Class 3 Claim of Laurus. No Distribution of property hereunder shall be made to or on behalf of any such Holder unless and until such Certificate is received by the Reorganized Debtors or the unavailability of such Certificate is reasonably established to the satisfaction of the Reorganized Debtors. Any Holder who fails to surrender or cause to be surrendered such Certificate, or fails to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Reorganized Debtors prior to the second anniversary of the Effective Date, shall be deemed to have forfeited all rights and Claims in respect of such Certificate and shall not participate in any Distribution hereunder, and all property in respect of such forfeited Distribution, including any dividends or interest attributable thereto, shall revert to the Reorganized Debtors notwithstanding any federal or state escheat laws to the contrary.

202222.wpd

7.5    *Claims Administration Responsibility.*

(a)    <u>Reorganized Debtors</u>. Subject to Article 8.3 herein, the Reorganized Debtors will have sole responsibility and authority for administering, disputing, objecting to, compromising, or otherwise resolving and making Distributions (if any) with respect to all Claims against in the Debtors.

(b)    <u>Filing of Objections</u>. Unless otherwise extended by the Bankruptcy Court, any objections to Claims shall be served and filed on or before the Claims Objection Deadline. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder if the Debtors or the Reorganized Debtors effect service in any of the following manners: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for a Holder is unknown, by first class mail, postage prepaid, on the signatory on the proof of claim or interest or other representative identified on the proof of claim or interest or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the Holder's behalf in the Bankruptcy Cases.

(c)    <u>Determination of Claims</u>. Except as otherwise agreed by the Debtors in writing or as set forth in this Plan, any Claim as to which a proof of claim was timely filed in the Bankruptcy Cases shall be determined and liquidated pursuant to a Final Order of the Bankruptcy Court (which determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed, or if filed, remains pending) shall be deemed, to the extent applicable, an Allowed Claim, in such liquidated amount and satisfied in accordance with this Plan. Nothing contained in this Article 7.5 shall constitute or be deemed a waiver of any claim, right, or Cause of Action that the Debtors or the Reorganized Debtors may have against any Person in connection with or arising out of any Claim or Claims, including, without limitation, any rights under section 157(b) of title 28 of the United States Code.

7.6    *Delivery of Distributions.* Distributions to Holders of Allowed Claims shall be made by the Reorganized Debtors (a) at the addresses set forth on the proofs of claim filed by such Holders (or at the last known addresses of such Holders if no proof of claim is filed or if the Debtors have been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Debtors or Reorganized Debtors after the date of any related proof of claim, or (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Debtors or Reorganized Debtors have not received a written notice of a change of address. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Reorganized Debtors are notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions made in Cash shall be retained by the Reorganized Debtors until such Distributions are claimed. All Cash Distributions returned to the Reorganized Debtors and not claimed within six months of return shall be irrevocably retained by the Reorganized Debtors notwithstanding any federal or state escheat laws to the contrary. Upon such reversion, the claim of any Holder or its successors with respect to such property shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.

7.7    *Procedures for Treating and Resolving Disputed and Contingent Claims.*

(a)    No Distributions Pending Allowance. No payments or Distributions will be made with respect to any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim. All objections to Claims must be filed on or before the Claims Objection Deadline.

(b)    Distribution Reserve. The Reorganized Debtors, subject to the Laurus Settlement Agreement (the terms of which shall be considered as incorporated into the terms of this paragraph, and such incorporated terms shall govern in the case of any inconsistency with any other term of this paragraph), shall withhold cash in such amount as the Reorganized Debtors reasonably determine is necessary to enable them to make the Distributions required to be made to Class 4 Holders in the Bankruptcy Cases, when the allowance or disallowance of each Disputed Claim or other contingent claim, including any Claims arising from the rejection of any Executory Contract or Unexpired Lease, is ultimately determined. To the extent that the reserve is based on an amount as to any Disputed Claim that is less than the amount of the proof of claim filed with respect to such Disputed Claim, or the Disputed Claim is unliquidated, the Debtors shall file a list of such affected Disputed Claims with the Bankruptcy Court, which list shall be served on any affected Holders no later than 10 (ten) Business Days prior to the last date for filing objections to confirmation of the Plan.. Absent objection filed on or before the last date established for filing objections to confirmation of the Plan, the Debtors' estimation of each Disputed Claim for the purposes of the Distribution Reserve required by this Article shall be final. Any objections shall be determined by agreement of the Debtors or the Bankruptcy Court. The Reorganized Debtors also shall place in the Distribution Reserve any dividends, payments, or other Distributions made on account of, as well as any obligations arising from, the property initially withheld in the Distribution Reserve, to the extent that such property continues to be withheld in the Distribution Reserve at the time such Distributions are made or such obligations arise. The Holder shall not be entitled to receive or recover any amount in excess of the amount provided in the Distribution Reserve to pay such Claim. Nothing in this Plan or Disclosure Statement will be deemed to entitle the Holder of a Disputed Claim to postpetition interest on such Claim.

(c)    Distributions After Allowance. Promptly after a Disputed Claim becomes an Allowed Claim, the Reorganized Debtors, will distribute on the next succeeding Distribution Date, to the Holder thereof any Cash or other property that would have been distributed on the dates Distributions were previously made to Holders had such Allowed Claim been an Allowed Claim on such dates.

(d)    Deminimis Distributions. The Reorganized Debtors shall have no obligation to make a Distribution on account of an Allowed Claim from any Distribution Reserve or otherwise if the amount to be distributed to the specific holder of the Allowed Claim is or has a value less than $ 50.00.

7.8    *Fractional Dollars.* Any other provision of this Plan notwithstanding, payments of fractions of dollars will not be made. Any other provision of this Plan notwithstanding, the Reorganized Debtors shall not be required to make Distributions or payments of fractions of dollars. Whenever

202222.wpd

any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar or share (up or down), with half dollars and fractions less than ½ being rounded down.

7.9    *No Recourse*. No Holder of any Disputed Claim shall have any recourse against the Debtors, the Estates, or the Reorganized Debtors, or any professionals employed by any of them, in the event any reserve established herein is insufficient to pay an Allowed Claim.

7.10    *Withholding Taxes*. The Debtors shall deduct any federal or state withholding taxes from any payments made with respect to Allowed Claims, as appropriate, and shall otherwise comply with section 346 of the Bankruptcy Code.

## ARTICLE VIII
### EFFECT OF PLAN ON CLAIMS AND INTERESTS

8.1    *Revesting of Assets*. Except as otherwise explicitly provided in this Plan, on the Effective Date all property comprising the Estates (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in each of the Debtors that owned such property or interest in property as of the Filing Date, free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests of creditors and equity security holders, except as specifically provided in the Plan. As of the Effective Date the Reorganized Debtors may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests, without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and the Confirmation Order.

8.2    *Discharge of the Debtors*. Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Confirmation Date (but subject to the occurrence of the Effective Date), of Claims and Causes of Action, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Confirmation Date, any liability (including withdrawal liability) to the extent such Claims relate to services performed by employees of the Debtors prior to the Filing Date and that arise from a termination of employment or a termination of any employee benefit program, regardless of whether such termination occurred prior to or after the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim or interest based upon such Claim, debt, right, or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such Claim, debt, right, or Interest is allowed under section 502 of the Bankruptcy Code, or (c) the Holder of such a Claim, right, or Interest accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtors, subject to the Effective Date occurring.

8.3    *Compromises and Settlements*. In accordance with Article 7.5 of this Plan, but subject to the rights of the Prepetition Lender under the Laurus Settlement Agreement, pursuant to Bankruptcy

202222.wpd

Rule 9019(a), the Debtors may compromise and settle various (a) Claims against them and (b) Causes of Action that they have against other Persons up to and including the Effective Date. After the Effective Date, such right shall pass to the Reorganized Debtors as contemplated in Article 8.1 of this Plan, without the need for further approval of the Bankruptcy Court.

8.4    *Release by Debtors of Certain Parties.* Pursuant to section 1123(b)(3) of the Bankruptcy Code effective as of the Effective Date, and subject to the terms of the Ad Hoc Committee Stipulation which shall be incorporated herein and in the event of any conflict with the Plan control, each Debtor, in its individual capacity and as a debtor-in-possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date in any manner arising from, based on or relating to, in whole or in part, the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor or any Released Party, the restructuring of Claims and Interests prior to or in the Bankruptcy Cases, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, restructuring, or the Bankruptcy Cases. The Reorganized Debtors, and other potential representative of the Estates shall be bound, to the same extent the Debtors are bound, by all of the releases set forth above.

8.5    *Setoffs.* The Debtors may, but shall not be required to, set off against any Claim, the payments or other Distributions to be made pursuant to this Plan in respect of such Claim against claims of any nature whatsoever that the Debtors may have against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such Holder.

8.6    *Indemnification Obligations.* In satisfaction and compromise of the Indemnitees' Indemnification Rights: (a) all Indemnification Rights shall be released and discharged on and as of the Effective Date, except for the obligations of the Debtors and Reorganized Debtors to indemnify Laurus pursuant to the Prepetition Credit Agreement and the Laurus Settlement Agreement and  Continuing Indemnification Rights for present officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns (which shall remain in full force and effect to the fullest extent allowed by law or contract on and after the Effective Date and shall not be modified, reduced, discharged, or otherwise affected in any way by the Bankruptcy Cases).

**8.7    *Injunctions.* The satisfaction, release, and discharge pursuant to this Article VIII shall act as a bar and permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof effective as of the Effective Date, this Plan constitutes an injunction and shall specifically include an injunction against any demand or request for, or prosecution, enforcement or effecting of, and a release**

**of, any action, cause of action, suit, debt, due, sum of money, account, reckoning, bond, bill, specialty, covenant, contract, controversy, agreement, promise, variance, trespass, damages, judgment, extent, execution, setoff, recoupment, claim or demand whatsoever, in law, admiralty or equity, which arises from or is based on or related to the Asset Purchase Agreement dated as of October 3, 2005 between the Debtors and Boston Equities Corporation, any amendment thereof, or any payment in relation thereto, which might otherwise have been brought, prosecuted, enforced, sought, or effected by or on behalf of any of Boston Equities Corporation, any employee, owner or affiliate thereof, or any of their successors, creditors, designees, assigns, agents or representatives, including, without limitation, the estate of any of the foregoing created or to be created at any time by or in a bankruptcy case or any similar proceeding or case filed by or against such entity, or any fiduciary, agent or other representative of such estate, case or proceeding; provided, however, that any Cause of Action or any Claim that may be brought by either of the Debtors or the Reorganized Debtors against Boston Equities Corporation or its successors or assigns shall not be released hereby.**

8.8    *Effect of Confirmation.*

        (a)    <u>Binding Effect</u>. On the Confirmation Date the provisions of the Plan shall be binding on the Debtors, the Estates, all Holders of Claims against or Interests in the Debtors, whether or not such Holders are Impaired and whether or not such Holders have accepted the Plan. and on all other parties-in-interest.

        (b)    <u>Effect of Confirmation on Automatic Stay.</u> Except as provided otherwise in this paragraph, from and after the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code shall terminate.

        (c)    <u>Filing of Reports</u>. The Reorganized Debtors shall file all reports and pay all fees required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

        (d)    <u>Post-Confirmation Date Retention of Professionals.</u> Upon the Confirmation Date, any requirement that professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Debtors and Reorganized Debtors will employ and pay professionals in the ordinary course of business.

8.9    *Reservation of Rights of the Estates.* All Retained Actions of any kind or nature whatsoever, against third parties arising before the Confirmation Date, whether known or unknown and regardless of whether the existence of same has been disclosed, that have not been disposed of prior to the Confirmation Date including, without limitation, Avoidance Actions, shall be preserved for the benefit of the Estates.

## ARTICLE IX
RETENTION AND SCOPE OF JURISDICTION OF THE BANKRUPTCY COURT

*9.1    Retention of Jurisdiction.*  Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

(a)    To adjudicate objections concerning the allowance, priority or classification of claims and any subordination thereof, including, without limitation, all rights available to the Reorganized Debtors pursuant to section 505 of the Bankruptcy Code, and other applicable law, to seek determination or reduction or otherwise contest the Allowed Amount of Priority Tax Claims, jurisdiction of the Bankruptcy Court as to any such Priority Tax Claim being expressly and specifically retained and preserved herein, and to establish a date or dates by which objections to claims must be filed to the extent not established herein;

(b)    To liquidate the amount of any disputed, contingent, or unliquidated claim, to estimate the amount of any disputed, contingent, or unliquidated claim, to establish the amount of any reserve required to be withheld from any distribution under the Plan on account of any disputed, contingent, or unliquidated claim, and to resolve any objection to a settlement of a disputed, contingent, or unliquidated claim;

(c)    To resolve all matters related to the rejection, and assumption and/or assignment, of any Executory Contract or Unexpired Lease of the Debtors;

(d)    To hear and rule upon all Retained Actions, Avoidance Actions, and other Causes of Action commenced and/or pursued by the Debtors and/or the Reorganized Debtors;

(e)    To hear and rule upon all applications for Professional Compensation;

(f)    To remedy any defect or omission or reconcile any inconsistency in the Plan, as may be necessary to carry out the intent and purpose of the Plan;

(g)    To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of the Plan, to the extent authorized by the Bankruptcy Code;

(h)    To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

(i)    To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of the Plan, including the Distribution of funds from the Estates and the payment of claims;

(j)    To determine any suit or proceeding brought by the Debtors and/or the Reorganized Debtors to recover property under any provisions of the Bankruptcy Code;

(k)    To hear and determine any tax disputes concerning the Debtors and to determine and declare any tax effects under the Plan;

202222.wpd

(l)     To determine such other matters as may be provided for in the Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

(m)     To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan; and

(n)     To enter a Final Decree.

9.2     *Alternative Jurisdiction.* In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.

9.3     *Final Decree.* The Bankruptcy Court may, upon application of the Reorganized Debtors after Designated Notice, at any time on or after 120 days after the first Distribution of Cash, enter a Final Decree in these cases, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing these cases pursuant to section 350 of the Bankruptcy Code, provided, however, that: (a) the Reorganized Debtors shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy cases if appropriate for any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications the Debtors have brought or bring with regard to the liquidation of Assets and the prosecution of Causes of Action; (3) enforcing or interpreting the Plan or supervising its implementation; or (4) for other cause.

## ARTICLE X
### MISCELLANEOUS PROVISIONS

10.1     *Modification of the Plan.* The Debtors may modify this Plan pursuant to section 1127 of the Bankruptcy Code and as herein provided, to the extent applicable law permits. The Debtors may modify the Plan, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto. In the event of any modification on or before confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes. The Debtors reserve the right in accordance with section 1127 of the Bankruptcy Code to modify this Plan at any time before the Confirmation Date.

10.2     *Applicable Law.* Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the

202222.wpd

State of Georgia.

*10.3    Preparation of Estates' Returns and Resolution of Tax Claims.*  The Debtors shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

*10.4    Headings.*  The headings of the Articles and the Sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

*10.5    Revocation of Plan.*  The Debtors reserve the right, unilaterally and unconditionally, to revoke and/or withdraw the Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal the Plan shall be deemed null and void and of no force and effect.

*10.6    Confirmation of Plans for Separate Debtors.*  In the event the Debtors are unable to confirm this Plan with respect to all Debtors, the Debtors reserve the right, unilaterally and unconditionally, to proceed with the Plan with respect to any Debtor for which the confirmation requirements of the Bankruptcy Code are met.

*10.7    No Admissions; Objection to Claims.*  Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity as being the holder of a claim is the Holder of an Allowed Claim, except as expressly provided in this Plan.  The failure of the Debtors to object to or examine any claim for purposes of voting shall not be deemed a waiver of the Debtors' rights to object to or reexamine such Claim in whole or in part.

*10.8    No Bar to Suits.*  Neither this Plan nor confirmation hereof shall operate to bar or estop the Debtors or Reorganized Debtors from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date, and whether or not the existence of such Cause of Action or any other legal action was disclosed in any disclosure statement filed by the Debtors in connection with this Plan.

202222.wpd

**ARTICLE XI**

REQUEST FOR CONFIRMATION PURSUANT TO § 1129(B)

If all requirements for Confirmation are met except the provisions of section 1129(a)(8) of the Bankruptcy Code, the Debtors request that the Plan be confirmed pursuant to section 1129(b) of the Bankruptcy Code with respect to Classes 6 and 7A and any other Impaired Class not accepting the Plan.

Dated this 22nd day of May, 2006.

<div style="margin-left:40%">

**Tectonic Network, Inc.; and
Tectonic Solutions, Inc.**

**LAMBERTH, CIFELLI, STOKES
 & STOUT, P.A.**

By: /s/Gregory D. Ellis_____
Gregory D. Ellis
(Ga. Bar No.245310)

**Tectonic Network , Inc**.

By:___ /s/ Arol Wolford_____
Title:___ Chief Executive Officer

**Tectonic Solutions, Inc.**

By:___ /s/ Arol Wolford_____
Title:___ Chief Executive Officer

</div>

3343 Peachtree Road, N.E., Ste. 550
Atlanta, GA 30326
(404) 262-7373

-29-

202222.wpd

# EXHIBIT 3

```
-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGjlWyK3XmZv3dTINen
 TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 HMc9idju86LOkqZkbQQThTkjNxHAqL6zGf28sIWxbsO6X5+5mRjIgTpdrpvQf3AR
 OzyhSYT+Mtr8aPn4q2116Q==
```

```
<SEC-DOCUMENT>0001144204-05-020042.txt : 20050628
<SEC-HEADER>0001144204-05-020042.hdr.sgml : 20050628
<ACCEPTANCE-DATETIME>20050627175713
ACCESSION NUMBER:		0001144204-05-020042
CONFORMED SUBMISSION TYPE:	SB-2/A
PUBLIC DOCUMENT COUNT:		4
FILED AS OF DATE:		20050628
DATE AS OF CHANGE:		20050627

FILER:

	COMPANY DATA:
		COMPANY CONFORMED NAME:			Tectonic Network, Inc
		CENTRAL INDEX KEY:			0000866492
		STANDARD INDUSTRIAL CLASSIFICATION:	SERVICES-PREPACKAGED SOFTWARE [7372]
		IRS NUMBER:				223038309
		STATE OF INCORPORATION:			DE
		FISCAL YEAR END:			0630

	FILING VALUES:
		FORM TYPE:		SB-2/A
		SEC ACT:		1933 Act
		SEC FILE NUMBER:	333-122659
		FILM NUMBER:		05918474

	BUSINESS ADDRESS:
		STREET 1:	1825 BARRETT LAKES BLVD
		STREET 2:	STE 260
		CITY:		KENNESAW
		STATE:		GA
		ZIP:		30144
		BUSINESS PHONE:	7705174750

	MAIL ADDRESS:
		STREET 1:	1825 BARRETT LAKES BLVD.,
		STREET 2:	SUITE 260
		CITY:		KENNESAW
		STATE:		GA
		ZIP:		30144

	FORMER COMPANY:
		FORMER CONFORMED NAME:	RETURN ON INVESTMENT CORP
		DATE OF NAME CHANGE:20000928

	FORMER COMPANY:
		FORMER CONFORMED NAME:	NET TECH INTERNATIONAL INC
		DATE OF NAME CHANGE:19930328
</SEC-HEADER>
<DOCUMENT>
<TYPE>SB-2/A
<SEQUENCE>1
<FILENAME>v020682_sb2a.txt
<TEXT>
```

As Filed with the Securities and Exchange Commission on June 28, 2005
Registration No. 333-122659

=========================================================================
UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

-----------------------

AMENDMENT NO. 1 TO FORM SB-2
REGISTRATION STATEMENT
UNDER THE SECURITIES ACT OF 1933
----------------------
TECTONIC NETWORK, INC.
(Name of small business issuer in its charter)

```
<TABLE>
<CAPTION>

<S>                                <C>                              <C>
       Delaware                            7372                        22-3038309
(State or Other Jurisdiction of    (Primary Standard Industrial    (I.R.S. Employer
Incorporation or Organization)      Classification Code Number)    Identification Number)
</TABLE>
```

1825 Barrett Lakes Blvd.
Suite 260
Kennesaw, GA 30144
(770) 517-4750
(Address and telephone number of principal executive offices)

SHERWIN KRUG                              Copies to:
Chief Financial Officer                   ELIZABETH NOE
1825 Barrett Lakes Blvd.        Paul, Hastings, Janofsky & Walker LLP
Suite 260                        600 Peachtree Street, Suite 2400
Kennesaw, GA 30144                      Atlanta, GA 30308
(770) 517-4750                           (404) 815-2400
(Name, address and
telephone number of
agent for service)

Approximate date of commencement of proposed sale to the public:
From time to time after the effective date of
this Registration Statement.

    If any of the securities being registered on this Form are to be offered
on a delayed or continuous basis pursuant to Rule 415 under the Securities Act
of 1933 check the following box. |X|

    If this Form is filed to register additional securities for an offering
pursuant to Rule 462(b) under the Securities Act, check the following box and
list the Securities Act registration statement number of the earlier effective
registration statement for the same offering. |_|

    If this Form is a post-effective amendment filed pursuant to Rule 462(c)
under the Securities Act, check the following box and list the Securities Act
registration statement number of the earlier effective registration statement
for the same offering. |_|

    If this Form is a post-effective amendment filed pursuant to Rule 462(d)
under the Securities Act, check the following box and list the Securities Act
registration statement number of the earlier effective registration statement
for the same offering. |_|

    If delivery of the prospectus is expected to be made pursuant to Rule 434,
check the following box. |_|

================================================================================

```
<PAGE>


<TABLE>
<CAPTION>
                      CALCULATION OF REGISTRATION FEE
================================================================================
                          Amount         Proposed maximum     Proposed maximum       Amo
    Title of each class    to be          offering price per   aggregate offering    regist
of securities to be registered  registered(1) )      unit(3) price                      
- --------------------------------------------------------------------------------
<S>                       <C>             <C>                  <C>                   <C>
Common Stock, par value   5,452,994 shares(2)   $1.57          $8,561,200.58        $1,307.
$0.01 per share
```

Directions seeks unspecified damages for loss of business, cost of merchandise shipped, shipping costs, bank fees, and defamation in the business community. Management believes it possesses substantial defenses to the action. However, management believes that it is too early to make an assessment of the probable outcome of the litigation in connection with this suit.

42

<PAGE>

MANAGEMENT

Executive Officers and Directors

The following table sets forth certain information regarding our executive officers and directors.

<TABLE>
<CAPTION>

| Name | Age | Position | Director Since |
|------|-----|----------|----------------|
| <S> | <C> | <C> | <C> |
| Charles A. McRoberts | 55 | Director | 2000 |
| John W. McRoberts | 52 | Director | 2000 |
| Charles Pecchio, Jr. | 58 | Chairman of the Board | 2000 |
| Arol R. Wolford | 52 | President, Chief Executive Officer, and Director | 2001 |
| Theo P. VanderBoom | 57 | Director | 2002 |
| Laura C. Rogers | 45 | Director | 2002 |
| Sherwin Krug | 39 | Chief Financial Officer | N/A |

</TABLE>

Charles A. McRoberts (brother of John W. McRoberts) serves as a director and since March 2005 functions in the role of Senior Account Sales Representative for Tectonic Network, Inc. Prior to that he served as Vice President of Developer Channel Sales for GO Software, Inc. He also served as Chairman of the Board of Results Oriented Integration Corporation from 1996 until its reverse merger in August 2000 and as Chairman of the Board of the Company through June 2002. He previously was President and CEO of Mastiff Systems, a company that marketed and serviced security systems. Mr. McRoberts joined Mastiff in 1982 and served as President and CEO from 1987 until the sale of the company in 1996. Prior to joining Mastiff, Mr. McRoberts was Branch Manager of Wells Fargo Alarm Services.

John W. McRoberts (brother of Charles A. McRoberts) serves as a director and is a member of both the Audit Committee and Compensation Committee. He served as a director of Results Oriented Integration Corporation from 1996 until its reverse merger in August 2000. Since July 2003, he has served as Chairman of the Board of Directors, President and Chief Executive Officer of Meadowbrook Healthcare, Inc., a privately-owned healthcare services company operating in the physical rehabilitation industry. Since December 2000, he has been the Managing Member of CannonGate Partners LLC, a private equity firm. Since 1999 he has served as a director of Foresite LLC, a privately-owned company that owns, leases and develops communication towers. He was a co-founder, and served as President and Chief Executive Officer of Capstone Capital Corporation, a NYSE listed real estate investment trust, from 1993 to 1998, when Capstone was acquired by Healthcare Realty Trust in a transaction valued at approximately $900 million. Prior to that, Mr. McRoberts was a senior officer of AmSouth Bank of Alabama (formerly AmSouth Bank N.A.), where he was employed from 1977 to 1993.

Charles Pecchio, Jr., has served as Chairman of the Board since July 2002. He served as a director of Results Oriented Integration Corporation from 1996 until its reverse merger in August 2000 and served as President of the Company through January 2002 and Chief Executive Officer of the Company through June 2002. Since October 2003, Mr. Pecchio has also served as Chairman, President and Chief Executive Officer of Verification Solutions, Inc. which markets systems and services for real-time verification of insurance coverage. Since 1993, he has provided several companies with consulting services related to business development, mergers, and acquisitions. In 2002, Mr. Pecchio founded Community Catalyst Corporation, a non-profit organization that serves youth, senior citizens, and the handicapped, and he serves as Chairman of this corporation.

# EXHIBIT 4

Home | Privacy Policy | Disclaimer | Site Map

ENG
ESP



**Our Company     Our Facilities     Quality     Careers     Contact Us**

OUR COMPANY

The MeadowBrook Management Team



MeadowBrook's executive management team draws on over 50 years of diversified healthcare experience. This experience includes operational and financial management, mergers and acquisitions, risk management and strategic planning.

The MeadowBrook Management Team:

- John W. McRoberts, President and Chief Executive Officer
- John Lee, Executive Vice President and Chief Financial Officer
- Janet L. Nicoll, Executive Vice President and Chief Operating Officer

If you would like to obtain additional information about MeadowBrook Healthcare, Inc., please contact our Corporate office at:

MeadowBrook Healthcare, Inc.
1200 Corporate Drive
Suite 340
Birmingham, AL 35242

(205) 980-9970 | Main
(205) 980-9945 | Fax

Copyright © 2004 MeadowBrook Healthcare, Inc. All Rights Reserved

# EXHIBIT 5

# Cannongate Partners LLC

1200 Corporate Dr Ste 150
Birmingham, AL 35242View Map
2059808081

## Driving Directions

### 1. Enter starting address:
Address:

### 2. Enter destination address:
Address:

1200 Corporate Dr Ste 150, Birmingham, AL 35242

Calculate Directions



**New!**
**CS 411**

Get Citysearch info from your mobile phone. Click here to find out more...

# EXHIBIT 6



**ForeSite**
Towers, LLC

**"Pursuit of Excellence...
Commitment to Customer Satisfaction"**

For more services, go to ForeSite Services, Inc.

**Home**

**Services**

**Tower Locator**

**Co-Location Form**

**Wanted: Towers**

**Career Opportunities**

**News**

**Links**

**Contact Us**

**Site Map**

**Sites Available
for construction**

**Administrator**

ForeSite is a fully integrated owner, operator, and developer of communication towers dedicated to providing comprehensive network services to the wireless and broadcast industries in the Southeastern United States.

Our Management Team

ForeSite considers its primary business to be the delivery of *Quality* infrastructure solutions to wireless communication service providers. ForeSite achieves this mission through the leasing of antennae sites on its strategically located towers. In addition, ForeSite provides turnkey services to its customers in the areas of RF Engineering/Mapping, Site Location/Acquisition, Permitting/Legal/Regulatory, Construction Management, Construction Services, Maintenance, and Marketing.

ForeSite towers are designed to maximize structural capacity to support the co-location requirements of our growing customer base. Wireless communications customers include:

- Cellular, PCS, and SMR
- Paging and Two Way Radio
- Microwave
- Broadcast
- Wireless Data

- Wireless Internet
- Emergency and 911
- Federal and Local Government

22 Inverness Center Parkway · Suite 500 · Birmingham, AL 35242 · Phone (205) 437-3200 · Fax (205) 437-3222
©2006 ForeSite Towers, LLC.
Design by Poisk LLC

# EXHIBIT 7

ForeSite - Contact Us



ForeSite
Towers, LLC

**"Pursuit of Excellence...**
**Commitment to Customer Satisfaction"**
For more services, go to ForeSite Services, Inc.

Home

Services

Tower Locator

Co-Location Form

Wanted: Towers

Career Opportunities

News

Links

Contact Us

Site Map

Sites Available
   for construction

Administrator

**Contact ForeSite Towers, LLC.**
Your comments, suggestions and feedback are appreciated.
Email us using the form below:

22 Inverness Center Parkway
Suite 500
Birmingham, Alabama 35242
Telephone: 205.437.3200
Fax: 205.437.3222
Toll-Free: 1.877.967.2189
E-mail: info@foresitetowers.com
Directions

**First Name:**

**Last Name:**

**E-Mail address:**

**Company Name:**

**Address:**

**Phone:**

**City:**

**State:**

**Zip Code:**

**Message:**

http://www.foresitetowers.com/contact.asp

12/11/2006

ForeSite - Contact Us

 

22 Inverness Center Parkway · Suite 500 · Birmingham, AL 35242 · Phone (205) 437-3200 · Fax (205) 437-3222
©2006 ForeSite Towers, LLC.
Design by Poisk LLC

# EXHIBIT 8

AnyWho: Internet Directory Assistance; Yellow Pages, White Pages, Toll-Free Numbers, Maps and Directions          Page 1 of 3

# AnyWho
online directory
AT&T

**HTTP Error**

AT&T CallVantage®
Phone service for broadband

Finding People, Places,
and Businesses

**HOME    YELLOW PAGES    WHITE PAGES    REVERSE LOOKUP    HELP**

Advertisement

- International
- Maps
- Area Codes
- Toll-Free

Google WEB SEARCH [_____] 🔍 GO

**FIND A PERSON**

- Credit Center
- Shopping.com
- eHarmony.com
- eDiets.com
- Video News

LowerMyBills
Get a $200,000
Mortgage for Under
$664/Month!

Classmates.com
Find old friends and
reconnect with them!

Quicken Loans
Get a $150,000 Loan for
$425 a month.

W3 Data
Reach new customers in
your area!

Reunion.com
Find Anyone's Email
Address

Amazon.com
Shop here for the
holidays!

| Last Name *Required* | First Name | Street |
|---|---|---|
| mcroberts | john | |
| TIP: Try the 1st 4 letters | TIP: Try just the 1st letter | TIP: Don't include St, Ave, etc |

| City | State | Zip | |
|---|---|---|---|
| birmingham | AL | | 🔍 SEARCH |

**You searched for:** john mcroberts in birmingham AL
**Results 1 - 1 of 1**                            ◀ PREVIOUS | NEXT ▶
**Residential Listings**

**McRoberts, John W**                              **205-879-9548**
4109 Old Leeds Ln
Birmingham, AL 35213
Maps & Directions | Did you go to school with John W McRoberts?
More Info on John W McRoberts. Free Preview!
🔍 Find a Nearby Business

                                                  ◀ PREVIOUS | NEXT ▶

View Email Results for john mcroberts

SPONSORED LINKS

- Batch Phone & Address Search        ▸ Find Anyone's Email
- Research Your Family Tree           ▸ Get Your Home's Value
- Get your Free Credit Report         ▸ Find a Great Job in Your Area
- View Homes for Sale Nationwide      ▸ Great Deals at Cingular
- Find your Soul Mate                 ▸ Send an eCard to someone

http://www.anywho.com/qry/wp_fap                              12/11/2006

Form 7
(12/03)

# United States Bankruptcy Court
## Northern District of Georgia - Atlanta Division

In re    Tectonic Network, Inc.

Debtor(s)

Case No.    05-78966

Chapter    11

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs.

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. If the answer to an applicable question is "None," mark the box labeled "None." If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

*DEFINITIONS*

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within the six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE (if more than one) |
|---|---|
| $109,271.00 | July 1, 2005 through August 30, 2005; Gross revenue |
| $1,222,103.00 | Year ended June 30, 2005; Gross revenue |
| $1,167,777.00 | Year ended June 30, 2004; Gross revenue |

**2. Income other than from employment or operation of business**

None
☐

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| $9,941,254.00 | On February 28, 2005, the Debtor sold all its assets held by its GO Software, Inc. subsidiary for $13 million in cash and up to $2 million in a contingent earnout to VeriFone, Inc. |

9

b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

None
☐

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
|---|---|---|
| John R. McRoberts 4109 Old Leeds Lane Birmingham, AL 35213 | Director | 7.1% |
| Arol R. Wolford 1034 Virginia Ave Unit 4 Atlanta, GA 30306 | President, CEO and Director | 24.9% |
| Charlie A. McRoberts 7405 Princeton Trace Atlanta, GA 30328 | Director | 7.6% |
| Charles Pecchio, Jr. 15 Reynolds Lane Kingston, GA 30145 | Former Chairman | 5.7% |
| Laura C. Rogers 1125 Windsor Place Circle Grayson, GA 30017 | Director | 0% |
| Theo P. VanderBoom 4160 Poplar Spring Ct Norcross, GA 30092 | Director | 0% |
| Sherwin Krug 4674 Chardonnay Court Atlanta, GA 30338 | CFO | 0% |

## 22. Former partners, officers, directors and shareholders

None
■

a. If the debtor is a partnership, list each member who withdrew from the partnership within one year immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
|---|---|---|

None
☐

b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within one year immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
|---|---|---|
| Charles Pecchio, Jr. 15 Reynolds Lane Kingston, GA 30145 | Former Chairman | July 11, 2005 |

## 23. Withdrawals from a partnership or distributions by a corporation

None
☐

If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during one year immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| Arol R. Wolford 1034 Virginia Ave, Unit 4 Atlanta, GA 30306 President and CEO | 12 months ended 9/30/2005; Salary | $90,000.00 |

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of December, 2006, a copy of Declaration in

Opposition to Defendants' Motion to Dismiss was caused to be served in the manner indicated

upon the following:

**VIA HAND DELIVERY**
Adam W. Poff, Esquire
William D. Johnston, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

**VIA FEDERAL EXPRESS**
J. Allen Maines, Esquire
John G. Parker, Esquire
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street, Suite 2400
Atlanta, GA  30308

Linda Richenderfer (#4138)
Bifferato, Gentilotti, Biden & Balick
1308 Delaware Avenue
P.O. Box 2165
Wilmington, DE 19899-2165