# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AD HOC COMMITTEE OF EQUITY HOLDERS OF TECTONIC NETWORK, INC. | |
| Plaintiff, | Civil Action No. 06-665 (***) |
| vs. | |
| AROL WOLFORD, SHERWIN KRUG, CHARLES McROBERTS, JOHN McROBERTS, CHARLES PECCHIO, JR., LAURA ROGERS and THEO VANDERBOOM | |
| Defendants. | |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
William D: Johnston (No. 2123)
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone:   (302) 571-6672

**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
J. Allen Maines, Georgia Bar No. 466575
John G. Parker, Georgia Bar No. 562425
Albert M. Myers, Georgia Bar No. 002711
Michael D. Grider, Georgia Bar No. 310473
600 Peachtree Street, Suite 2400
Atlanta, GA  30308
Telephone:   (404) 815-2400
Facsimile:   (404) 815-2424

*Attorneys for Defendants*

December 22, 2006

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT

    I.    THE ACTION MUST BE DISMISSED BECAUSE THE
          COURT LACKS SUBJECT MATTER JURISDICTION .....................................2

    II.   THE COMPLAINT SHOULD BE DISMISSED FOR
          INSUFFICIENCY OF SERVICE OF PROCESS ...................................................4

    III.  THE CLAIMS ARE DERIVATIVE IN NATURE BUT PLAINTIFF
          HAS NOT SATISFIED THE LONGSTANDING PREREQUISITES
          FOR BRINGING SUCH CLAIMS, INCLUDING PRIOR
          EVALUATION BY THE BOARD OF DIRECTORS OF A SIMILAR
          "GATEKEEPER," AND EVEN IF THE CLAIMS ARE DIRECT,
          PLAINTIFF HAS NO STANDING TO ASSERT THEM......................................5

          A.   Plaintiff Has Not Satisfied the Requirements for
                 Bringing Derivative Claims ........................................................................5

          B.   Even if the Claims Are Direct, They Must Be Dismissed ...........................8

    IV.  THE COMPLAINT MUST BE DISMISSED FOR FAILURE
          TO STATE A CLAIM UPON WHICH RELIEF MAY BE
          GRANTED AND FAILURE TO PLEAD FRAUD WITH
          PARTICULARITY ...................................................................................................9

          A.   The Complaint Fails To State A Claim For
                 Breach of Fiduciary Duties ........................................................................9

               1.   Plaintiff Has Not Stated a Claim for
                       Breach of the Duty of Loyalty or Good Faith..................................9

               2.   Plaintiff Has Not Stated a Claim for
                       Breach of the Duty of Care ..............................................................12

               3.   By Plaintiff's Express Admission, No
                       Claim for Corporate Waste is Stated .............................................13

# TABLE OF CONTENTS

Page

     B.     All Claims Must Be Dismissed Because Plaintiffs
Have Not Satisfied Rule 9(b) In Pleading Claims
for Fraud and Breaches of Fiduciary Duties
Based on Fraud ........................................................................................ 13

CONCLUSION ............................................................................................................. 16

065840.1001

# TABLE OF AUTHORITIES

## CASES

Page

Byington v. Vega Biotechnologies, Inc.,
869 F. Supp. 338 (D. Md. 1994).......................................................................7

Continuing Creditors' Committee of Star
Telecommunications, Inc. v. Edgecomb,
385 F. Supp. 2d 449 (D. Del. 2004)...................................................9, 11, 12

Grimes v. Donald,
673 A.2d 1207 (Del. 1996) .........................................................................7

IT Litigation Trust v. D'Aniello,
No. 02-10118, Civ. A. 04-1268-KAJ,
2005 WL 3050611 (D. Del. Nov. 15, 2005) ...........................................12, 13

Khanna v. McMinn,
No. Civ. A. 20545-NC, 2006 WL 1388744
(Del. Ch. May 9, 2006) ...........................................................................13

Malpiede v. Townson,
780 A.2d 1075 (Del. 2001) ...............................................................11, 12, 13

Nagy v. Bistricer,
770 A.2d 43 (Del. Ch. 2000)......................................................................9

Production Res. Group, L.L.C. v. NCT Group, Inc.,
863 A.2d 772 (Del Ch. 2004)....................................................................12

In re Scott Paper Co. Sec. Litig.,
142 F.R.D. 611 (E.D. Pa. 1992)..................................................................9

Seaford Funding Limited Partnership v. M & M Assoc. II, L.P.,
C.A. No. 1578 S, 1995 Del. Ch. LEXIS 51 (Del. Ch. Apr. 26, 1995)................7

Shamrock Holdings, Inc. v. Arenson,
No. CIV. 04-1339-SLR, 2006 WL 2802913
(D. Del. Sept. 29, 2006) ...........................................................................10

Shapiro v. UJB Financial Corp.,
964 F.2d 272 (3d Cir. 1992).......................................................................15

065840.1001

<u>Stone v. Ritter,</u>
    No. 93, 2006, 2006 Del. LEXIS 597 (Del. Nov. 6, 2006) .................................................9

<u>In re Suprema Specialties, Inc. Sec. Litigation,</u>
    438 F.3d 256 (3d Cir. 2006).........................................................................................14

<u>Toner v. Allstate Ins. Co.,</u>
    821 F. Supp. 276 (D. Del. 1993).................................................................................14

<u>In re Tower Air,</u>
    416 F.3d 229 (3d Cir. 2005).................................................9, 10, 11, 12, 13

<u>Weiner v. Quaker Oats Co.,</u>
    129 F.3d 310 (3d Cir. 1997)...............................................................................14, 15

## **STATUTES**

28 U.S.C. § 1332 .............................................................................................................1, 2

28 U.S.C. § 1334...................................................................................................................3

Fed. R. Civ. P. 4(m) .............................................................................................................4

Fed. R. Civ. P. 4(h) ..............................................................................................................4

Fed. R. Civ. P. 9(b) .................................................................................................1, 13, 16

Fed. R. Civ. P. 12(b)(6).......................................................................................................13

Fed. R. Civ. P. 23 .............................................................................................................1, 8

Fed. R. Civ. P. 23.1 ...............................................................................................................8

Del. Ch. R. 23.1 ..................................................................................................................13

8 <u>Del. C.</u> § 102(b)(7)...........................................................................................................12

DB02:5681720.1
065840.1001

# PRELIMINARY STATEMENT

The would-be plaintiff, the so-called "Ad Hoc Committee of Equity Holders of Tectonic Network, Inc.," fails to satisfy numerous pre-requisites to asserting the claims set forth in this action—any one of which is fatal to, and requires dismissal of, the Complaint in its entirety. First and foremost, this Court lacks subject matter jurisdiction over the claims: the action consists of state-law fiduciary claims among parties who are not completely diverse, as required by 28 U.S.C. § 1332. Infra, part I. Second, plaintiff has not properly served any of the Defendants under Delaware's consent statute for service upon corporate officers and directors. Infra, part II. Third, plaintiff concedes that it has satisfied none of the pre-requisites for asserting derivative claims on behalf of the corporation, while arguing that its claims are not even derivative ones. The claims, however, are derivative, and they were never evaluated, prior to being filed, by a gatekeeper, such as Tectonic's Board of Directors, with authority to do so, as required of derivative claims. Infra, part III.A. Even were the claims direct, as plaintiff claims, they still may not be asserted by plaintiff because plaintiff does not and cannot allege that it was ever a shareholder of Tectonic and thus lacks standing to prosecute the claims. Also, if the claims are direct, then they are only appropriately asserted as class claims, but plaintiff has not complied with the requirements of Fed. R. Civ. P. 23 for doing so. Infra, part III.B. Fourth, plaintiff does not state a claim upon which relief can be granted. Among other things, it fails to overcome the presumption of good faith provided by the business judgment rule, which is wholly applicable to claims such as these at the pleading stage. Infra, part IV.A. Finally, although all of plaintiff's claims sound in fraud, plaintiff has not satisfied the particularized pleading requirements for such claims set forth in Fed. R. Civ. P. 9(b). Infra, part IV.B.

1

## ARGUMENT

### I.    THE ACTION MUST BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION.

As Defendants demonstrated, this Court does not have subject matter jurisdiction over this action.  See Opening Brief in Support of Defendants' Motion to Dismiss ("Mem.") at 7-9.  The Complaint purports to found subject matter of jurisdiction on diversity of citizenship under 28 U.S.C. § 1332.  Complaint ¶ 17.  Plaintiff does not contest that diversity is destroyed if there is one state in which any plaintiff and any defendant both reside, and that the citizenship of an unincorporated association is all states in which one or more of its members reside.  Nor does plaintiff dispute that at least four of its members are citizens of Florida.  However, as Defendants demonstrated, defendant John McRoberts also resides in Florida, and is therefore a citizen of that state for purposes of the diversity statute.  See Mem. at 9; Poff Aff. Exh. J.

In response, plaintiff attempts to show that John McRoberts is not a resident of Florida.  See Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss ("Pl. Mem.") at 12-14.  First, it argues, incorrectly, that Defendants have "merely assert[ed]" that John McRoberts is a resident of Florida.  See Pl. Mem. at 14.  To the contrary, Mr. McRoberts, on behalf of all Defendants, has submitted a declaration, signed under penalty of perjury, listing his exact street address in Florida.  See Poff. Aff. Exh. J.  Such a declaration is entitled to evidentiary weight.

Second, plaintiff makes the arguments – none of which is dispositive of the issue – that (1) Mr. McRoberts "maintains a residence" in Alabama, (2) this Alabama residence was listed in Tectonic's October 2005 bankruptcy petition, and (3) Mr. McRoberts may conduct significant business in Alabama.  Pl. Mem. at 14.  None of these arguments individually establish that Alabama is Mr. McRoberts's true domicile, and the arguments, collectively, do not do so

2

either. As plaintiff itself alludes to, a party can have residences in more than one state, while still having a "residence" for purposes of citizenship under the diversity statute in only one state. In Mr. McRoberts's case, that state is Florida. The listing of Mr. McRoberts's Alabama address in the bankruptcy petition establishes nothing – it is possible that Mr. McRoberts's address in the company records relied upon by Tectonic's bankruptcy counsel to draft the bankruptcy petition had not been updated. Also, there is no requirement that, for a person with more than one address, a bankruptcy petitioner list each one, or any particular one. Finally, to say that Mr. McRoberts may conduct business in Alabama merely confuses the requirements for establishing personal jurisdiction in Alabama with citizenship for diversity purposes.

In point of fact, John McRoberts votes in Florida, pays property taxes on his Florida residence, is subject to jury duty in Florida, registers his automobile in Florida, and is considered a resident of Florida for federal and state income taxation purposes. This is established in the Reply Declaration of John McRoberts. In light of these facts, his Florida citizenship is conclusively established, and no "discovery" is necessary, as plaintiff urges, to decide the issue of subject matter jurisdiction now. See Pl. Mem. at 14.

Plaintiff asserts that subject matter jurisdiction exists, in the alternative, because this action is "related to a case under title 11 of the United States Code" and satisfies the jurisdictional standard set forth in 28 U.S.C. § 1334. Pl. Mem. at 14-16. But jurisdiction must be established based on the face if the complaint, and the Complaint here is silent as to any such jurisdictional basis (see Complaint ¶¶ 17-18)—a fact which distinguishes IT Litigation Trust v. D'Aniello, No. 02-10118, Civ. A. 04-1268-KAJ, 2005 WL 3050611 (D. Del. Nov. 15, 2005), cited by plaintiff. Moreover, deeming this action one that arises under the Bankruptcy Code is completely at variance with the theory alleged in the Complaint itself, viz., that the claims are

3

state law fraud and fiduciary claims against directors and officers of the company—and it is

completely at variance with the Bankruptcy Court's own determination that the Claims should go

forward, if at all, "in a forum <u>outside of the within chapter 11 proceedings</u>."  Poff Aff. Exh. C, ¶

3 (emphasis added).

## II.    THE COMPLAINT SHOULD BE DISMISSED FOR INSUFFICIENCY OF SERVICE OF PROCESS.

As Defendants demonstrated, plaintiff has not adequately served any of the

Defendants, and the Court therefore has no personal jurisdiction over them.  Mem. at 9-10.  What

plaintiff did in this case was to send <u>one</u> copy of the Summons and Complaint to the former

registered agent for service of process of Tectonic.  That agent then sent a copy of the process to

an address on file for defendant Vanderboom, and Mr. Vanderboom received it.  Importantly, no

attempt was made by the former registered agent to send copies of process to the other

Defendants.  Moreover, before filing, no attempt was made to have a Prothonotary or the

Register in Chancery of any court, state or federal, send such process to any of the Defendants.

Mem. at 9.

Plaintiff urges that Defendants' argument is "premature," inasmuch as plaintiff

has 120 days from the date of filing in which to perfect service under Fed. R. Civ. P. 4(m).  Pl.

Mem. at 17.  All of the cases cited by plaintiff, however, are from outside this District.  <u>See</u> Pl.

Mem. at 17.  Moreover, the argument can scarcely be "premature" since it would be waived if

not asserted in the first responsive pleading, including a motion to dismiss.  <u>See</u> Fed. R. Civ. P.

4(h).

The fact remains that, to date, proper service on Defendants has not been made.

Absent any controlling authority requiring an otherwise proper motion to dismiss for

insufficiency of process to be denied, the Complaint should be dismissed without prejudice to

4

refiling at another time.  Nonetheless, if the Court is disinclined to grant defendants' motion until after the 120-day deadline of Rule 4(m) has passed, Defendants respectfully request the opportunity to submit a brief paper explaining the remaining 12(b)(5) grounds for dismissal, if any, at that time.

**III.  THE CLAIMS ARE DERIVATIVE IN NATURE BUT PLAINTIFF HAS NOT SATISFIED THE LONGSTANDING PREREQUISITES FOR BRINGING SUCH CLAIMS, INCLUDING PRIOR EVALUATION BY THE BOARD OF DIRECTORS OF A SIMILAR "GATEKEEPER," AND EVEN IF THE CLAIMS ARE DIRECT, PLAINTIFF HAS NO STANDING TO ASSERT THEM.**

**A.  Plaintiff Has Not Satisfied the Requirements for Bringing Derivative Claims.**

As Defendants demonstrated, plaintiff's claims are derivative and, as such, must satisfy the pleading pre-requisites applicable to such claims. See Mem. at 10-22.  These requirements include:  (1) ownership of stock at the time of the wrongs complained of; (2) ownership of stock at the commencement of the lawsuit; (3) a demand on the Board that the company bring suit in its own name, or particularized facts showing why demand on the Board should be excused as futile; (4) verification of the complaint by a natural person; and (5) a statement that the action is not a collusive one to confer jurisdiction on a federal court. See id.

In response, plaintiff concedes that it does not meet any of the above five pre-requisites. See Pl. Mem. at 18-20.  Instead, plaintiff's single argument is that its claims are not derivative, but direct. See id.  In this regard, plaintiff argues that the claims against Tectonic's officers and directors that formerly inhered in Tectonic were somehow "assigned" to the Ad Hoc Committee by the Bankruptcy Court—and that, through this assignment, the claims somehow lost their status as derivative claims.

This argument is wrong.  Contrary to plaintiff's argument, the Bankruptcy Court did not "specifically authorize[] Plaintiff to bring this action in its own name for the benefit of

itself and its members." Pl. Mem. at 18. To the contrary, the Bankruptcy Court, in paragraph 3 of the Ad Hoc Committee Order, provided that the automatic stay would be terminated "to permit the <u>members</u> of the Committee as shareholders of [Tectonic] to pursue the Claims . . . ." Affidavit of Adam W. Poff, Esq., sworn to November 28, 2006 ("Poff Aff."), Exh. C (emphasis added). Moreover, in paragraph 8 of the same order the Bankruptcy Court made clear that any claims thus abandoned to members of the Ad Hoc Committee were "derivative." <u>Id</u>. In other words, the derivative claims did not lose their status as derivative claims, and they survived only as claims that could be brought by <u>members</u> of the Ad Hoc Committee—i.e., <u>shareholders</u>.[1] Indeed, in the first sentence of its brief, plaintiff cannot help but concede that the only injury it alleges is fraud and breach of fiduciary duties that caused harm to "<u>the corporation</u>." Pl. Mem. at 1 (emphasis added).

　　　　Plaintiff's argument boils down to the notion that the Bankruptcy Court—in carving out certain Claims (as defined in the Ad Hoc Committee Order) from the purview of automatic stay and Tectonic's plan of reorganization—could magically transform those Claims from derivative claims into direct ones. Such an act would be without precedent and foreign to all authority of a federal court. Plaintiff, as an unincorporated association, never owned any shares of Tectonic (a fact which plaintiff itself does not contest); thus, the Bankruptcy Court could not and did not invest such a non-shareholder with the rights of a shareholder. Moreover, by preserving certain Claims for <u>shareholders</u> of Tectonic, the Bankruptcy Court self-evidently

---

[1] This conclusion is not negated by the fact that the Ad Hoc Committee Order refers, in paragraphs 5 and 9 to "recoveries" and "benefit[s]" that could be enjoyed by the Committee. These paragraphs do not contain the operative language of paragraph 3 formally abandoning the claims to the "members of the Committee." Indeed, if "members" of the Committee receive certain "recoveries" and "benefits," it can be said that the "Committee" does, too—which is the evident meaning intended by the Bankruptcy Court.

did not attempt to change the nature of those claims. It simply preserved such claims from otherwise being released and discharged in the consummation of Tectonic's bankruptcy. Tectonic's shareholders are free to assert the claims now, despite Tectonic's discharge, but this freedom is subject to whatever limitations and requirements are otherwise applicable to such claims by their nature. See Poff. Aff. Exh. C. As the Complaint makes clear, the claims asserted by plaintiff are wholly derivative in nature and, as such, must satisfy all the requirements applicable to derivative claims. See Mem. at 10. Because plaintiffs do not contest that they failed to satisfy any of the requirements, the claims must be dismissed.

The above principles are especially applicable here, where plaintiff makes no attempt to allege that it represents all shareholders of Tectonic equally and instead is composed of only some, unspecified shareholders. See Byington v. Vega Biotechnologies, Inc., 869 F. Supp. 338, 343-44 (D. Md. 1994).

Plaintiff's argument stands the well-settled jurisprudence of derivative claims on its head. Delaware law is clear that before claims that allege injury to the corporation or shareholders generally may be brought against directors and officers, such claims must be presented to and evaluated by a gatekeeper (usually the Board of Directors), so as to give that gatekeeper a chance to bring the claims itself. In no event may shareholders assert the claims before this gatekeeper process has been completed. As the Court of Chancery has held:

> [T]he demand rule is to act as a gatekeeper to both encourage extra judicial intra-corporate solutions to internal problems [e.g., demand on the Board] and to bar meritless claims of self-interested decision making.

Seaford Funding Limited Partnership v. M & M Assocs. II, L.P., C.A. No. 1578 S, 1995 Del. Ch. LEXIS 51, at *12 (Del. Ch. Apr. 26, 1995). See also Grimes v. Donald, 673 A.2d 1207, 1218-19 (Del. 1996).

There has been no such gatekeeper evaluation here. The Bankruptcy Court, in abandoning the claims to members of the Ad Hoc Committee, did not purport to evaluate the claims, or even to substitute some other party besides Tectonic's Board as the gatekeeper. Nor did the Trustee in bankruptcy try to do so—the Trustee <u>opposed</u> shareholders' effort to appoint themselves into the Ad Hoc Committee. <u>See</u> Poff Aff. Exh. B. Thus, the claims asserted here have never been evaluated by any gatekeeper with authority to do so. The time to do so is now. The pre-requisites of Rule 23.1 thus are wholly applicable to prevent the usual abuses that rule was designed to prevent—including verification, allegation regarding collusive jurisdiction, and demand on the Board.

**B.    Even if the Claims Are Direct, They Must Be Dismissed.**

Even if the claims asserted herein are viewed as being direct claims, plaintiff has no standing to assert them. It is undisputed that plaintiff, which purports to be an unincorporated association of shareholders, never held, and never could have held, shares of Tectonic in its own name. <u>See</u> Mem. at 12. As such, plaintiff has no standing to sue for injury—<u>either</u> on behalf of the company <u>or</u> in the capacity of a shareholder.

The claims, even if direct, must be dismissed for an independent reason as well. Plaintiff, which seizes upon certain language of the Ad Hoc Committee Order to assert that its claims are direct, must also be bound by all other language in the Order. This includes the Order's reference that any "recoveries" go to "similarly situated members of the <u>class</u>." Poff Aff. Exh. C, ¶ 5 (emphasis added). Pursuant to this language, the claims, to the extent direct, are class claims. If so, then Defendants hereby move to dismiss on the basis that plaintiff has not pleaded any of the requirements of Fed. R. Civ. P. 23 (detailing the prerequisites of bringing an action as a class action). Indeed, the claims here—premised as they are on fraud involving

8

individual issues of reliance—may not be maintained as class claims. See In re Scott Paper Co. Sec. Litig., 142 F.R.D. 611, 617-18 (E.D. Pa. 1992).

## IV.   THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND FAILURE TO PLEAD FRAUD WITH PARTICULARITY.

### A.   The Complaint Fails To State A Claim For Breach of Fiduciary Duties.

#### 1.   Plaintiff Has Not Stated a Claim for Breach of the Duty of Loyalty or Good Faith.

Plaintiff's arguments regarding its purported breach of fiduciary duty claims regarding the duty of loyalty and good faith[2] completely miss the point of Defendants' motion to dismiss, and grossly misapply controlling authority.

First, plaintiff incorrectly applies the Third Circuit Court of Appeals' decision in In re Tower Air, 416 F.3d 229 (3d Cir. 2005). Tower Air stands for the proposition that a complaint that expressly or implicitly invokes the business judgment rule "must plead around" that rule, in order to survive a motion to dismiss. 416 F.3d at 238. In fact, the Tower Air court dismissed the claim at issue on that very basis. Here, in an attempt to fit its square allegations into the round hole of Tower Air, plaintiff simply ignores the multiple allegations in the Complaint that clearly invoke the business judgment rule.

For example, the Complaint describes each of the transactions which underlie the breach of fiduciary duty claims as being "decisions that no reasonable person could possibly

---

[2] While plaintiff attempts to assert the duties of loyalty and good faith as separate causes of action, this Court has consistently noted that the "two duties are identical." Continuing Creditors' Committee of Star Telecommunications, Inc. v. Edgecomb, 385 F. Supp. 2d 449, 460 n.9 (D. Del. 2004) (quoting Nagy v. Bistricer, 770 A.2d 43, 49 n.2 (Del. Ch. 2000)). In fact, the Delaware Supreme Court recently has concluded that the requirement to act in good faith is a "subsidiary element" of the duty of loyalty. Stone v. Ritter, No. 932006, 2006 Del. LEXIS 597, at *19 (Del. Nov. 6, 2006).

9

065840.1001

<u>authorize in good faith</u> . . . ." Complaint ¶ 127 (emphasis added). The Complaint is suffused

with other examples. <u>See id</u>. ¶ 31 ("no reasonable expectation" by Board that Tectonic would

achieve certain results); <u>id</u>. ¶ 127(a) (Board relied "in bad faith" on representations of certain

defendants in acquiring various businesses); <u>id</u>. ¶ 127(b) (Board "paid no attention" to poor

prospects of acquired businesses and "relied in bad faith" on certain defendants); <u>id</u>. ¶ 127(d)

("[t]here was no justification or need" for Tectonic to give a note to SSI); <u>id</u>. ¶ 128 (same); <u>id</u>.

¶ 129 (referring to action that the "Board could not reasonably have concluded in good faith that

it was proper or prudent" to take).

      The same result as in <u>Tower Air</u> is commanded here. Like the plaintiffs in <u>Tower

Air</u>, plaintiff here has invoked the business judgment rule by repeatedly referencing that standard

in the conclusory allegations of its pleadings, without support.[3]  Plaintiff's argument to the

contrary is purely circular and based upon its own failure to plead around the business judgment

rule. <u>Cf</u>. <u>Tower Air</u>, 416 F.3d at 239 ("[t]he problem here, though, is not the facts that are not

pleaded, but the facts that are"). Indeed, just like the complaint in <u>Tower Air</u>, the Complaint

here is "self-defeating" because it merely alleges an "ostensibly legitimate purpose" (i.e., to grow

the company through mergers and the sale of GO Software) while at the same time attacking it as

an "egregious decision" that "no reasonable person could possibly authorize in good faith." <u>Id</u>.

at 238. As <u>Tower Air</u> teaches, such allegations are manifestly inadequate, and should be

dismissed.

---

[3] <u>Shamrock Holdings, Inc. v. Arenson</u>, No. CIV. 04-1339-SLR, 2006 WL 2802913 at *8 (D. Del.
Sept. 29, 2006), relied upon by plaintiff, is inapposite. In that case, the court considered whether
counterclaims raised by minority shareholders in response to a declaratory action were required
to be dismissed under the business judgment rule. The only evidence relied upon to invoke the
business judgment rule was allegations that the actions of the minority shareholders were "well
reasoned." This is a far different allegation than the ones repeated by plaintiff here.

10

                                               

In sum, under <u>Tower Air</u>, a plaintiff, to overcome the business judgment rule, must allege facts establishing that the challenged decisions could not have been reached <u>except in bad faith</u>. <u>Tower Air</u>, 416 F.3d at 239. Just the opposite is true here: there is an abundance of good-faith explanations for each of the actions alleged of Tectonic's Board of Directors. Plaintiff itself alleges many of them, <u>viz.</u>, that Tectonic wanted to transition out of credit card payment processing software to devote itself entirely to construction industry information systems based on the economic promise of the latter business. <u>See</u> Complaint ¶¶ 25, 63, 64, 85, 86, 89). Moreover, as Defendants have already noted, Tectonic's bankruptcy counsel already has analyzed the claims and set forth the many ways that the Board legitimately discharged its duties to the company by its decisions. <u>See</u> Poff Aff. Exh. D.

In all events, plaintiff's claims are subject to dismissal for failure to satisfy even the most basic notice pleading standards. <u>See Tower Air</u>, 416 F.3d at 239-40; <u>see also</u> <u>Star Telecommunications v. Edgecomb</u>, 385 F. Supp. 2d 449, 459-64 (D. Del. 2004) (conclusory allegations regarding alleged breaches of fiduciary duty are insufficient to defeat a motion to dismiss even under notice pleading standards); <u>Malpiede v. Townson</u>, 780 A.2d 1075, 1085 n.29 (Del. 2001) (dismissing bidder's loyalty and good faith claims premised on conclusory statements that target company's Board rejected an offer based upon "(1) the interested director's desire to consummate [the deal proposed by the other bidder], (2) a desire to benefit [the majority shareholders] with a quick deal, (3) 'dislike' of [the spurned bidder], or (4) a personal desire to complete the sale process"). Plaintiff's claims here plainly fail to satisfy even those notice standards of pleadings. <u>See, e.g.</u>, Complaint ¶¶ 31-33 (allegations that Defendants "stood to benefit" from stock purchases and that Wolford "exercised control" over the Tectonic Board); <u>cf</u>. <u>Star Telecomms.</u>, 385 F. Supp. 2d at 461-62 ("[n]o precedent . . . stands for the proposition

11

that stock ownership, coinciding with a Board decision that may affect the price of those shares, is adequate to show a breach of the duty of loyalty").

### 2.    Plaintiff Has Not Stated a Claim for Breach of the Duty of Care.

Tectonic's shareholders adopted a charter provision pursuant to Delaware General Corporation Law § 102(b)(7) protecting its directors from money damages liability for breach of the duty of care:

> No director shall be liable to the corporation or any of its stockholders for monetary damages for breach of fiduciary duty as a director, except with respect to (1) a breach of the director's duty of loyalty to the corporation and its stockholders, (2) acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (3) liability under Section 174 of the Delaware General Corporation Law or (4) a transaction from which the director derived an improper personal benefit, it being the intention of the foregoing provision to eliminate the liability of the corporation's directors to the corporation or its stockholders to the fullest extent permitted by Section 102(b)(7) of the Delaware General Corporation Law, as amended from time to time.[4]

Accordingly, plaintiff's duty of care claims should be dismissed. See IT Litigation Trust v. D'Aniello, No. 02-10118, Civ. A. 04-1268-KAJ, 2005 WL 3050611, at *10-*11 (D. Del. Nov. 15, 2005) (dismissing due care claims under similar circumstances); Malpiede, 780 A.2d at 1093 (same). This is no less true where, as here, the claims are asserted on behalf of an insolvent corporation for pre-insolvency conduct. See Production Res. Group, L.L.C. v. NCT Group, Inc., 863 A.2d 772, 793-94 (Del Ch. 2004).

In arguing that it sufficiently alleges breach of the duty of care, plaintiff again misapplies Tower Air – ignoring the holding of that case that "[i]n Delaware, the merits of a business decision are considered separately from the process used to reach that decision." Tower Air, 416 F.3d at 240 (emphasis added). Thus, an attack on "an allegedly egregious decision"

---

[4] A true and correct copy of this charter provision is attached as Exhibit A to the Reply Affidavit of Adam W. Poff, Esquire, dated December 22, 2006.

12

does not implicate "the process used to reach that decision." Id. Here, plaintiff's duty of care claims relate to "the process" the Board used to reach its decisions and, thus, must be considered separately from its duty of loyalty and good faith claims. As one of plaintiff's primary authorities explains: "[W]hile duty of loyalty claims are unaffected, . . . directors are protected by § 102(b)(7) against liability for breaching the duty of care." IT Litigation Trust, 2005 WL 3050611, at \*10-\*11 (citing Malpiede, 780 A.2d at 1095). Therefore, the IT Litigation Trust court, following the Delaware Supreme Court's decision in Malpiede, dismissed the plaintiffs' duty of care claims notwithstanding the fact that the plaintiffs had alleged claims for breach of the duties of loyalty and good faith. See IT Litigation Trust, 2005 WL 3050611, at \* 11.

Like the defendants in IT Litigation Trust and Malpiede, Defendants here are entitled to a dismissal of the duty of care claims under Rule 12(b)(6) because those claims are precluded by the exculpatory charter provision.[5]

### 3. By Plaintiff's Express Admission, No Claim for Corporate Waste is Stated.

Plaintiff disclaims any claim for corporate waste. See Pl. Br. at 4. Thus, this basis for asserting a breach of fiduciary duties is of no further moment in this case.

### B. All Claims Must Be Dismissed Because Plaintiffs Have Not Satisfied Rule 9(b) In Pleading Claims for Fraud and Breaches of Fiduciary Duties Based On Fraud.

As Defendants demonstrated, plaintiff does not satisfy the applicable standard for averments of fraud under Rule 9(b). See Mem. at 25-27. This is fatal—not only to plaintiff's

---

[5] The dicta cited by plaintiff in footnote 201 in the unpublished decision of Khanna v. McMinn, No. Civ. A. 20545-NC, 2006 WL 1388744 (Del. Ch. May 9, 2006), does not compel a different result. The court in Khanna was not concerned with whether a claim for breach of the duty of care should be dismissed on a 12(b)(6) motion, but was focused instead exclusively on the question of whether pre-suit demand was excused under Rule 23.1.

13

first claim for relief (delineated "fraud")—but also to its second through fourth claims for relief (delineated "breach of fiduciary duty"), inasmuch as the latter claims are <u>premised</u> upon fraud. The claims for breach of fiduciary duties are all based on a theory that the alleged breaches would not have occurred <u>but for</u> fraud allegedly committed by certain defendants and the Director Defendants' failure to discover that fraud.[6]  As such, the gravamen of these claims is fraud, and Rule 9(b) requires that they be pled with particularity.  See <u>Toner v. Allstate Ins. Co.</u>, 821 F. Supp. 276, 283-85 (D. Del. 1993) (dismissing good faith and fair dealing claims for failing to plead fraud with particularity).  These claims, like all other claims and allegations in the Complaint, contain no "precision" or "measure of substantiation" to support the existence of fraud.  See <u>In re Suprema Specialties, Inc. Sec. Litig.</u>, 438 F.3d 256, 270 (3d Cir. 2006).

Plaintiff argues that <u>Weiner v. Quaker Oats Co.</u>, 129 F.3d 310 (3d Cir. 1997), justifies the application of a more "flexible" standard to the Complaint.  But plaintiff ignores the central holding <u>Weiner</u>, which sets out the particularized averments that must be alleged for fraud and misrepresentation claims, and focuses instead on dicta in <u>Weiner</u> that are wholly inapplicable to this case.  Plaintiff contends that "[i]n cases alleging corporate fraud, where plaintiffs cannot be expected to have personal knowledge of the details of corporate internal

---

[6] <u>See</u> Complaint ¶ 26 ("the acquired businesses were riddled with fraudulent…business practices"); <u>id.</u> ¶ 28 ("Wolford and Krug falsely exaggerated performance of the three businesses…and caused Tectonic Network to acquire them"); <u>id.</u> ¶¶ 36-54 (describing the "SpecSource Fraud"); <u>id.</u> ¶¶ 55-56(describing "Wolford's Post Acquisition Fraud"); <u>id.</u> ¶¶ 57 ("[u]pon information and belief, the true nature and condition of each of the three businesses acquired by Tectonic Network was at all times known to Defendant's [sic] Wolford and Krug and had such been disclosed to Tectonic Network's Board of Directors and shareholders, Tectonic Network would not have acquired and thereafter invested substantial funds in the businesses*)*; <u>id.</u> ¶¶ 58-62 (describing the "Fraudulent Practices at the Acquired Businesses); <u>id.</u> ¶¶ 63-76 (describing the "Virtual Building Model Fraud"); <u>id.</u> ¶¶ 77-82 (describing the "National Print Directory Fraud"); <u>id.</u> ¶¶ 85-90 (describing "misrepresentations" by Wolford and Krug that induced Tectonic to sell GO Software).

14

affairs, the Third Circuit has relaxed the particularity rule when factual information is peculiarly within the defendant's knowledge and control." Weiner, 129 F.3d at 319 (internal quotations omitted). However, that "relaxed" rule cannot apply before a series of detailed conditions are met. See Weiner, 129 F.3d at 319-20. In particular,

> even under a non-restrictive application of the rule, pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based.

Id. at 319 (emphasis added). This statement must include "facts indicating why the charges against defendants are not baseless and why additional information lies exclusively within defendants' control." Id. The Weiner court explained further that:

> we require[] that to avoid dismissal in these circumstances, a complaint must delineate at least the nature and scope of plaintiffs' effort to obtain, before filing the complaint, the information needed to plead with particularity. We direct[] that plaintiffs thoroughly investigate all possible sources of information, including but not limited to all publicly available relevant information before filing the complaint.

Id. at 319 (citing Shapiro v. UJB Financial Corp., 964 F.2d 272 (3d Cir. 1992)).

Unlike the plaintiffs in Weiner—or, for that matter, the plaintiffs in In re Veritas Software Corp. Securities Lit. (the only other case cited by plaintiff on this point)—plaintiff here has not alleged in the Complaint that necessary information lies exclusively within Defendants' control, and it has given absolutely no statement of facts explaining why the charges "are not baseless." Even when given an opportunity to do so in its response to Defendants' motion, plaintiff does nothing more than rehash the allegations of the Complaint. See Pl. Mem. at 28-30. Absent are particularized allegations that, if true, would establish the "who, what, when, where, why, and how" of the supposed fraud – i.e., the content of any misrepresentations, when and where said, by whom, to whom, how communicated, and a particularized explanation of why the statements that were made misrepresented any material fact.

15

Worse, there is nothing in the Complaint to even suggest, much less state, that plaintiff here "thoroughly investigated all possible sources of information" as required by <u>Weiner</u> and numerous other Third Circuit decisions.  The only conclusion that can be drawn by plaintiff's failure to plead such facts is that it has not investigated its claims, knows of no information exclusively within Defendants' control, and cannot establish that its claims are not baseless. Under these circumstances, the requirements of Fed. R. Civ. P. (9)(b) have not been satisfied, and the fraud based claims must be dismissed.

<u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed in its entirety.

Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

William D. Johnston (No. 2123)
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone:  (302) 571-6672

**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
J. Allen Maines, Georgia Bar No. 466575
John G. Parker, Georgia Bar No. 562425
Albert M. Myers, Georgia Bar No. 002711
Michael D. Grider, Georgia Bar No. 310473
600 Peachtree Street, Suite 2400
Atlanta, GA  30308
Telephone:  (404) 815-2400
Facsimile:  (404) 815-2424

*Attorneys for Defendants*

Dated: December 22, 2006

16

## CERTIFICATE OF SERVICE

I, Adam W. Poff, hereby certify that on December 22, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Ian Connor Bifferato
> Linda Richenderfer
> Joseph K. Koury
> Bifferato, Gentilotti, Biden & Balick
> 1308 Delaware Ave.
> Wilmington, DE 19806

I further certify that on December 22, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> **BY FEDERAL EXPRESS**
>
> Thomas J. Flemming
> Herbert C. Ross, Jr.
> Olshan, Grundman, Frome,
> Rosenzweig, & Wolosky LLP
> 65 East 55th Street
> New York, NY 10022

YOUNG CONAWAY STARGATT & TAYLOR, LLP

William D. Johnston (No. 2123)
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
(302) 571-6600
apoff@ycst.com

065840.1001