## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AD HOC COMMITTEE OF EQUITY HOLDERS OF TECTONIC NETWORK, INC., | No. 06 – 665 *** |
| Plaintiff, | |
| v. | |
| AROL WOLFORD; SHERWIN KRUG; CHARLES MCROBERTS; JOHN MCROBERTS; CHARLES PECCHIO, JR.; LAURA ROGERS; and THEO VANDERBOOM, | |
| Defendants. | |

### NOTICE OF SUBPOENAS DUCES TECUM

PLEASE TAKE NOTICE THAT, pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure, Plaintiff Ad Hoc Committee of Equity Holders of Tectonic Network, Inc is demanding documents (1) from Tectonic Network, Inc., pursuant to subpoenas duces tecum, a copy of which is attached as Exhibit A hereto hereto, and (2) from Tectonic Partners, Inc., pursuant to subpoenas duces tecum, a copy of which is attached as Exhibit B hereto.

Dated: October 17, 2007

Ian Connor Bifferato (#3273)
Linda Richenderfer (#4138)
BIFFERATO GENTILOTTI LLC
800 N. King Street, Plaza Level
Wilmington, DE 19806
Telephone: 302-429-1900
Facsimile: 302-429-8600

– and –

Herbert C. Ross, Jr., Esquire
OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
65 East 55th Street
New York, New York 10022
Telephone: 212-451-2300
Facsimile: 212-451-2222

*Attorneys for Plaintiff Ad Hoc Committee of Equity Holders
of Tectonic Network, Inc.*

# EXHIBIT A

AO88  (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

NORTHERN                    DISTRICT OF                    GEORGIA

AD HOC COMMITTEE OF EQUITY HOLDERS OF TECTONIC
NETWORK, INC.
             V.

AROL WOLFORD, ET AL.,

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  06-665
U.S. DISTRICT COURT,
DISTRICT OF DELAWARE

TO:    TECTONIC NETWORK, INC.

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):

    SEE ATTACHMENT A
    HERETO

| PLACE   COHEN POLLOCK MERLIN & SMALL, P.C.<br>3350 Riverwood Parkway, Suite 1600, Atlanta, GA 30339 | DATE AND TIME<br>11/5/07, 9:30 a.m. |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Herbert C. Ross, Jr.*   ATTORNEY FOR PLAINTIFF | OCTOBER 16, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Herbert C. Ross, Jr., Olshan Grundman Frome Rosenzweig & Wolosky LLP, 65 E. 55th St., NY, NY 10022
212-451-2300

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

**ATTACHMENT A TO**
**SUBPOENA ADDRESSED TO TECTONIC NETWORK, INC.**

Pursuant to Fed. R. Civ. P. 45, Tectonic Network, Inc. is required to produce for

Plaintiff's inspection and copying, at the offices of Cohen Pollock Merlin & Small, P.C., at 3350

Riverwood Parkway, Suite 1600, Atlanta, Georgia 30339, on November 5, 2007 at 9:30 a.m., the

following documents and other things.

<u>DEFINITIONS AND INSTRUCTIONS</u>

The following definitions and instructions apply to this Attachment A:

A.     For purposes of this Attachment A, the term "documents" is defined to be

synonymous in meaning and equal in scope to the usage of this term in Fed.R.Civ.P. 34 and

includes, but is not limited to, any handwritten, typed or printed matter and any matter

electronically or magnetically transcribed or stored. A draft or non-identical copy is a separate

document within the meaning of this term.

B.     For purposes of this Attachment A, the term "Plaintiff" means and shall refer to

the Ad Hoc Committee of Equity Holders of Tectonic Network, Inc. and its members, agents,

and attorneys, and any of the foregoing.

C.     For purposes of this Attachment A, the term "Tectonic" means and shall refer to

Tectonic Network, Inc. (formerly known as Return on Investment Corporation), and its officers,

directors, employees, predecessors, successors, direct and indirect parents, subsidiaries, affiliates,

agents, and attorneys, and any of the foregoing.

D.    For purposes of this Attachment A, the term "Solutions" means and shall refer to Tectonic Solutions, Inc., and its officers, directors, employees, predecessors, successors, direct and indirect parents, subsidiaries, affiliates, agents, and attorneys, and any of the foregoing.

E.    For purposes of this Attachment A, the term "BBN" means and shall refer to BBN Acquisition, Inc., and its officers, directors, employees, predecessors (including, but not limited to, Blue Bolt Networks Inc.), successors, direct and indirect parents, subsidiaries, affiliates, agents, and attorneys, and any of the foregoing.

F.    For purposes of this Attachment A, the term "CYP" means and shall refer to Construction Yellow Pages LLC, and its officers, directors, employees, predecessors, successors, direct and indirect parents, subsidiaries, affiliates, agents, and attorneys, and any of the foregoing.

G.    For purposes of this Attachment A, the term "SpecSource" means SpecSource.com, Inc., and its officers, directors, employees, predecessors, successors, direct and indirect parents, subsidiaries, affiliates, agents, and attorneys, and any of the foregoing.

H.    For purposes of this Attachment A, the term "GO" means GO Software, Inc., and its officers, directors, employees, predecessors, successors, agents, and attorneys, and any of the foregoing.

I.    For purposes of this Attachment A, the term "Wolford" means Arol Wolford and his agents and attorneys, and any of the foregoing.

J.    For purposes of this Attachment A, the term "Krug" means Sherwin Krug and his agents and attorneys, and any of the foregoing.

2

K.     For purposes of this Attachment A, the term "Pecchio" means Charles Pecchio Jr.,
and his agents and attorneys, and any of the foregoing.

L.     For purposes of this Attachment A, the term "Defendants" means the defendants
in this action, Arol Wolford, Sherwin Krug, Charles McRoberts, John McRoberts, Charles
Pecchio Jr., Laura Rogers, and Theo Vanderboom, and their respective agents and attorneys, and
any of the foregoing.

M.     For purposes of this Attachment A, the term "Escrow Agreement" means the
escrow agreement entered into in October 2000 by and among between Tectonic, John
McRoberts, Charles McRoberts, and Pecchio whereby shares of stock of Tectonic were held in
escrow.

N.     For purposes of this Attachment A, the term "SEC" means the United States
Securities and Exchange Commission.

O.     For purposes of this Attachment A, the term "person" is defined as any natural
person or any business, legal or governmental entity or association.

P.     The following rules of construction apply to this Attachment A:

    (i)     The terms "all" and "each" shall each be construed as all and each;
and;

    (ii)     The connectives "and" and "or" shall be construed either
disjunctively or conjunctively as necessary to bring within the

scope of the discovery demand all responses that might otherwise
be construed to be outside of its scope.

Q.    In the event any document or any of a part of a document is withheld from production on the basis of any claim of privilege, Tectonic is to identify in writing as to each such document or part of a document:

(i)    the nature of the privilege that is being claimed (if the privilege is asserted in connection with a claim or defense governed by state law, Tectonic is also to identify the state's privilege rule being invoked);

(ii)    the type of document;

(iii)    the general subject matter of the document or part being withheld;

(iv)    the date of the document;

(v)    the author of the document;

(vi)    the addressee(s) and recipient(s) of the document; and

(vii)    where not apparent, the relationship of the author and addressee(s) to each other.

R.    For purposes of this Attachment A, the term "concerning" means relating to, referring to, describing, evidencing or constituting.

4

S. Tectonic is to produce all responsive documents that are electronically or magnetically stored in Concordance load file format.

T. Tectonic is to produce all responsive documents that are in its custody, possession, or control.

## DOCUMENTS REQUESTED

1. Each document concerning Tectonic's acquisition (through Solutions) of the business of BBN or the merger of BBN into Solutions.

2. Each document concerning Tectonic's acquisition (through Solutions) of the business of CYP or substantially all of CYP's operating assets.

3. Each document concerning Tectonic's acquisition (through Solutions) of the business of SpecSource or substantially all of SpecSource's operating assets.

4. Each document reflecting or containing any representation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the business or assets of BBN prior to their acquisition by Tectonic.

5. Each document reflecting or containing any representation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the business or assets of CYP prior to their acquisition by Tectonic.

6. Each document reflecting or containing any representation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the business or assets of SpecSource prior to their acquisition by Tectonic.

7.    Each written presentation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the business or assets of BBN prior to their acquisition by Tectonic.

8.    Each written presentation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the business or assets of CYP prior to their acquisition by Tectonic.

9.    Each written presentation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the business or assets of SpecSource prior to their acquisition by Tectonic.

10.    Each document concerning the performance of the business of BBN after the acquisition of such business by Tectonic.

11.    Each document concerning the performance of the business of CYP after the acquisition of such business by Tectonic.

12.    Each document concerning the performance of the business of SpecSource after the acquisition of such business by Tectonic.

13.    Each document concerning the performance of Solutions.

14.    Each document concerning the costs, expenses, or revenues of the business of SpecSource after the acquisition of such business by Tectonic.

15.    Each document concerning the costs, expenses, or revenues of the business of BBN after the acquisition of such business by Tectonic.

6

16.     Each document concerning the costs, expenses, or revenues of the business of CYP after the acquisition of such business by Tectonic.

17.     Each document concerning the costs, expenses, or revenues of the business of Solutions.

18.     Each document concerning the deliberations of, or considerations taken into account by, Tectonic's Board of Directors, or any member(s) thereof, concerning the acquisition of the business or assets of BBN prior to their acquisition by Tectonic.

19.     Each document concerning the deliberations of, or considerations taken into account by, Tectonic's Board of Directors, or any members thereof, concerning the acquisition of the business or assets of CYP prior to their acquisition by Tectonic.

20.     Each document concerning the deliberations of, or considerations taken into account by, Tectonic's Board of Directors, or any member(s) thereof, concerning the acquisition of the business or assets of SpecSource prior to their acquisition by Tectonic.

21.     The minutes of each meeting of Tectonic's Board of Directors or any subcommittee thereof during the period from January 1, 2003 through August 2006.

22.     Each document reflecting or containing any representation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the sale or proposed sale of the business or assets of GO prior to such sale to VeriFone, Inc.

7

23.    Each written presentation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the business of GO prior to the sale of such business to VeriFone, Inc.

24.    Each document concerning the deliberations of, or considerations taken into account by, Tectonic's Board of Directors, or any member(s) thereof, concerning the sale or proposed sale of the business of GO prior to prior to the sale of such business to VeriFone, Inc.

25.    All documents concerning any bonus or other compensation paid by Tectonic or Solutions to Wolford, Krug, or any of the other Defendants.

26.    All documents concerning any payment made or anticipated to be made by Tectonic or Solutions to John White under the non-competition agreement between him and Tectonic.

27.    All documents concerning any payment made or anticipated to be made by Tectonic to Pecchio, under his employment agreement with Tectonic, as result of the sale of GO's business to VeriFone, Inc.

28.    All documents concerning any payment made or anticipated to be made by Tectonic to Wolford, under his employment agreement with Tectonic, as result of the sale of the GO's business to VeriFone, Inc.

29.    All promotional and advertising materials for the business of BBN whether used prior to or after Tectonic's acquisition of such business.

8

30.    All promotional and advertising materials for the business of CYP whether used prior to or after Tectonic's acquisition of such business.

31.    All promotional and advertising materials for the business of SpecSource whether used prior to or after Tectonic's acquisition of such business.

32.    Each document reflecting or containing any representation made to Tectonic's Board of Directors, or any member(s) thereof, concerning any of the businesses or assets acquired by Tectonic from (i) BBN, (ii) CYP, or (iii) SpecSource after their acquisition by Tectonic.

33.    Each written presentation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the businesses acquired by Tectonic from (i) BBN (such business later named "Tectonic Studio"), (ii) CYP (such business later named "Tectonic Print Directories"), or (iii) SpecSource (such business later named "Tectonic Online Directory") after their acquisition by Tectonic.

34.    Each document concerning the deliberations of, or considerations taken into account by, Tectonic's Board of Directors, or any member(s) thereof, concerning any actual or proposed investments in any of the businesses acquired by Tectonic from (i) BBN , (ii) CYP, and (iii) SpecSource after their acquisition by Tectonic.

35.    Each document concerning any business plan for any of the businesses acquired by Tectonic from (i) BBN , (ii) CYP, and (iii) SpecSource, or the Virtual Model business of Solutions.

9

36.    Each document concerning any financial projections for any of the businesses acquired by Tectonic from (i) BBN , (ii) CYP, and (iii) SpecSource, or the Virtual Model business of Solutions.

37.    Each document reflecting or containing any representation made to Tectonic's Board of Directors, or any member(s) thereof, concerning Solutions' Virtual Model (also referred to as "Tectonic Models") business.

38.    All documents concerning the Escrow Agreement.

39.    All documents concerning the "settlement" of the Escrow Agreement, entered into on or about October 29, 2003, whereby 750,000 shares of stock of Tectonic were released on a *pro rata* basis to  John McRoberts, Charles McRoberts, and Pecchio, including, but not limited to, all documents concerning the terms of such settlement and the negotiation of such settlement.

40.    All documents concerning any actual or proposed financing for, or loan to, Tectonic, made or proposed at any time during the period January 1, 2002 through October 3, 2005.

41.    Each written presentation made to Tectonic's Board of Directors, or any member(s) thereof, concerning Solutions' Virtual Model business.

42.    Each document concerning the deliberations of, or considerations taken into account by, Tectonic's Board of Directors, or any members thereof, concerning any investment(s) in Solutions' Virtual Model business.

10

43.    Each document concerning the performance of Solutions' Virtual Model business.

44.    Each document concerning the costs, expenses, or revenues of Solutions' Virtual Model business.

45.    Each document concerning the intended, proposed, or actual uses of any proceeds from Tectonic's sale of GO's business.

46.    Each financial statement for any period or as of any date during the time period January 1, 2002 through the present for Tectonic, Solutions, GO, BBN, CYP, or SpecSource.

47.    All documents concerning Tectonics or Solutions' decision that Solutions would publish and distribute a national print directory in 2005.

48.    All documents concerning the cost and expenses of Solutions' publishing and distributing a national print directory in 2005.

49.    All documents concerning Tectonic or Solutions' revenues from Solutions' publishing and distributing a national print directory in 2005.

50.    All documents reflecting any complaint by any customer(s) or others, concerning any of the products or services offered or provided by (i) the business of BBN, (ii) the business of CYP, or (iii) the business of SpecSource, whether before or after their acquisition by Tectonic.

51.    All documents reflecting any complaint by any customer(s) or others, concerning any of the products or services offered or provided by the Virtual Model business of Solutions.

11

52.    All documents concerning each actual or proposed contract whereby Solutions agreed to provide any services or products of Solutions' Virtual Model Business.

53.    All documents concerning communications between Tectonic or its attorneys, on the one hand, and any directors' and officers' liability insurer of Tectonic or the attorneys of such insurer, on the other hand, concerning this action or the claims described in the "Motion for an Order Approving the Appointment of an Official Committee of Equity Holders Pursuant to 11 U.S.C. §1102(a)(2)" in *In re Tectonic Network, Inc. and Tectonic Solutions, Inc.*, Case Nos. 05-78966 and 05-78955 (United States Bankruptcy Court, Northern District of Georgia).

54.    All documents concerning the non-competition agreement between John White and Tectonic.

55.    All documents concerning any employment or consulting agreement between Pecchio and Tectonic, entered into at any time during the period January 1, 2002 through June 2005.

56.    All documents concerning any services performed by Pecchio for Tectonic or Solutions or Pecchio's failure to perform services for Tectonic or Solutions during the period from February 1, 2002 through October 3, 2005.

57.    All documents concerning Wolford's performance as President and subsequently also as Chief Executive Officer of Tectonic or Solutions during the period from in or about February 2002 through August 2006.

545174-1

58.     All documents concerning Krug's performance as Chief Financial Officer and Treasurer of Tectonic or Solutions during the period from in or about January 2003 through November 21, 2005.

59.     All documents concerning any residence, business office, mail address, or license maintained or used by John McRoberts in any state outside of Florida at any time during the period from the date of commencement of this action to and including the date of this Request.

60.     All documents concerning the termination of James Serio's employment with Solutions, including, but not limited to, (a) all documents concerning the reasons for such termination and (b) all notes and memoranda of any and all members of the special committee of the Board of Directors of Tectonic, concerning the proposed or actual termination of James Serio's employment with Solution.

61.     All notes or memoranda of any and all members of the special committee of the Board of Directors of Tectonic, concerning any interview or document review regarding James Serio's claim that his employment with Solutions was wrongfully terminated.

62.     All documents concerning any of the complaints, allegations, or claims of James Serio, set forth in the letter dated January 18, 2005 from Daniel M. Klein to Wolford and Krug, including, but not limited to, all documents concerning any investigation of, or response to any of such complaints, allegations, or claims.

63.     All documents concerning the numbers of "hits", visits, searches, or "click throughs" on or to the website maintained by the business of SpecSource before Tectonic's acquisition of such business.

13

64.     All documents concerning the numbers of "hits", visits, searches, or "click throughs" on or to the website maintained by the business of SpecSource after Tectonic's acquisition of such business.

65.     All documents concerning any of the complaints, allegations, or claims of James Serio, set forth in the letter dated March 18, 2005 from Daniel M. Klein to the Occupational Safety & Health Administration of the United States Department of Labor, including, but not limited to, all documents concerning any investigation of, or response to any of such complaints, allegations, or claims.

66.     All documents concerning Tectonics' document retention policy.

67.     All documents concerning the destruction of any of the documents responsive to this Attachment A.

68.     All documents concerning any transfer of assets from Tectonic to Tectonic Partners, Inc.

69.     All documents identifying the shareholders, officers, and directors of Tectonic Partners, Inc.

70.     All documents concerning the incorporation or organization of Tectonic Partners, Inc., including, but not limited to, all documents concerning the reasons for its incorporation or organization.

71.     All documents explaining the business, products or services of Tectonic Partners, Inc.

14

# EXHIBIT B

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

NORTHERN                    DISTRICT OF                    GEORGIA

AD HOC COMMITTEE OF EQUITY HOLDERS OF TECTONIC NETWORK, INC.

**SUBPOENA IN A CIVIL CASE**

V.

AROL WOLFORD, ET AL.

Case Number:[1]  06-665

U.S. DISTRICT COURT,
DISTRICT OF DELAWARE

TO:      TECTONIC PARTNERS, INC.

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A hereto.

| PLACE    Cohen Pollock Merlin & Small, P.C.<br>3350 Riverwood Parkway, Suite 1600, Atlanta, Georgia 30339 | DATE AND TIME<br>11/5/2007  9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Herbert C. Ross, Jr.*,  ATTORNEY FOR PLAINTIFF | OCTOBER 16, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Herbert C. Ross, Jr., Olshan Grundman Frome Rosenzweig & Wolosky LLP, 65 E. 55th St., NY, NY 10022
212-451-2300

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

**ATTACHMENT A TO**
**SUBPOENA ADDRESSED TO TECTONIC PARTNERS, INC.**

Pursuant to Fed. R. Civ. P. 45, Tectonic Partners, Inc. is required to produce for

Plaintiff's inspection and copying, at the offices of Cohen Pollock Merlin & Small, P.C., at 3350

Riverwood Parkway, Suite 1600, Atlanta, Georgia 30339, on November 5, 2007 at 9:00 a.m., the

following documents and other things.

DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to this Attachment A:

A.     For purposes of this Attachment A, the term "documents" is defined to be

synonymous in meaning and equal in scope to the usage of this term in Fed.R.Civ.P. 34 and

includes, but is not limited to, any handwritten, typed or printed matter and any matter

electronically or magnetically transcribed or stored. A draft or non-identical copy is a separate

document within the meaning of this term.

B.     For purposes of this Attachment A, the term "Plaintiff" means and shall refer to

the Ad Hoc Committee of Equity Holders of Tectonic Network, Inc. and its members, agents,

and attorneys, and any of the foregoing.

C.     For purposes of this Attachment A, the term "Tectonic" means and shall refer to

Tectonic Network, Inc. (formerly known as Return on Investment Corporation), and its officers,

directors, employees, predecessors, successors, direct and indirect parents, subsidiaries, affiliates,

agents, and attorneys, and any of the foregoing.

D.     For purposes of this Attachment A, the term "Solutions" means and shall refer to Tectonic Solutions, Inc., and its officers, directors, employees, predecessors, successors, direct and indirect parents, subsidiaries, affiliates, agents, and attorneys, and any of the foregoing.

E.     For purposes of this Attachment A, the term "Partners" means and shall refer to Tectonic Partners, Inc., and its officers, directors, employees, predecessors, successors, direct and indirect parents, subsidiaries, affiliates, agents, and attorneys, and any of the foregoing.

F.     For purposes of this Attachment A, the term "BBN" means and shall refer to BBN Acquisition, Inc., and its officers, directors, employees, predecessors (including, but not limited to, Blue Bolt Networks Inc.), successors, direct and indirect parents, subsidiaries, affiliates, agents, and attorneys, and any of the foregoing.

G.     For purposes of this Attachment A, the term "CYP" means and shall refer to Construction Yellow Pages LLC, and its officers, directors, employees, predecessors, successors, direct and indirect parents, subsidiaries, affiliates, agents, and attorneys, and any of the foregoing.

H.     For purposes of this Attachment A, the term "SpecSource" means SpecSource.com, Inc., and its officers, directors, employees, predecessors, successors, direct and indirect parents, subsidiaries, affiliates, agents, and attorneys, and any of the foregoing.

I.     For purposes of this Attachment A, the term "GO" means GO Software, Inc., and its officers, directors, employees, predecessors, successors, agents, and attorneys, and any of the foregoing.

2

J.      For purposes of this Attachment A, the term "Wolford" means Arol Wolford and his agents and attorneys, and any of the foregoing.

K.      For purposes of this Attachment A, the term "Krug" means Sherwin Krug and his agents and attorneys, and any of the foregoing.

L.      For purposes of this Attachment A, the term "Pecchio" means Charles Pecchio Jr., and his agents and attorneys, and any of the foregoing.

M.      For purposes of this Attachment A, the term "Defendants" means the defendants in this action, Arol Wolford, Sherwin Krug, Charles McRoberts, John McRoberts, Charles Pecchio Jr., Laura Rogers, and Theo Vanderboom, and their respective agents and attorneys, and any of the foregoing.

N.      For purposes of this Attachment A, the term "Escrow Agreement" means the escrow agreement entered into in October 2000 by and among between Tectonic, John McRoberts, Charles McRoberts, and Pecchio whereby shares of stock of Tectonic were held in escrow.

O.      For purposes of this Attachment A, the term "SEC" means the United States Securities and Exchange Commission.

P.      For purposes of this Attachment A, the term "person" is defined as any natural person or any business, legal or governmental entity or association.

Q.      The following rules of construction apply to this Attachment A:

3

    (i)      The terms "all" and "each" shall each be construed as all and each; and;

    (ii)     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery demand all responses that might otherwise be construed to be outside of its scope.

R.    In the event any document or any of a part of a document is withheld from production on the basis of any claim of privilege, Partners is to identify in writing as to each such document or part of a document:

    (i)      the nature of the privilege that is being claimed (if the privilege is asserted in connection with a claim or defense governed by state law, Tectonic is also to identify the state's privilege rule being invoked);

    (ii)     the type of document;

    (iii)    the general subject matter of the document or part being withheld;

    (iv)    the date of the document;

    (v)     the author of the document;

    (vi)    the addressee(s) and recipient(s) of the document; and

    (vii)   where not apparent, the relationship of the author and addressee(s) to each other.

4

556041-1

S.    For purposes of this Attachment A, the term "concerning" means relating to, referring to, describing, evidencing or constituting.

T.    Partners is to produce all responsive documents that are electronically or magnetically stored in Concordance load file format.

U.    Partners is to produce all responsive documents that are in its custody, possession, or control.

## DOCUMENTS REQUESTED

1.    Each document concerning Tectonic's acquisition (through Solutions) of the business of BBN or the merger of BBN into Solutions.

2.    Each document concerning Tectonic's acquisition (through Solutions) of the business of CYP or substantially all of CYP's operating assets.

3.    Each document concerning Tectonic's acquisition (through Solutions) of the business of SpecSource or substantially all of SpecSource's operating assets.

4.    Each document reflecting or containing any representation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the business or assets of BBN prior to their acquisition by Tectonic.

5.    Each document reflecting or containing any representation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the business or assets of CYP prior to their acquisition by Tectonic.

5

6.      Each document reflecting or containing any representation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the business or assets of SpecSource prior to their acquisition by Tectonic.

7.      Each written presentation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the business or assets of BBN prior to their acquisition by Tectonic.

8.      Each written presentation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the business or assets of CYP prior to their acquisition by Tectonic.

9.      Each written presentation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the business or assets of SpecSource prior to their acquisition by Tectonic.

10.     Each document concerning the performance of the business of BBN after the acquisition of such business by Tectonic.

11.     Each document concerning the performance of the business of CYP after the acquisition of such business by Tectonic.

12.     Each document concerning the performance of the business of SpecSource after the acquisition of such business by Tectonic.

13.     Each document concerning the performance of Solutions.

6

14.     Each document concerning the costs, expenses, or revenues of the business of SpecSource after the acquisition of such business by Tectonic.

15.     Each document concerning the costs, expenses, or revenues of the business of BBN after the acquisition of such business by Tectonic.

16.     Each document concerning the costs, expenses, or revenues of the business of CYP after the acquisition of such business by Tectonic.

17.     Each document concerning the costs, expenses, or revenues of the business of Solutions.

18.     Each document concerning the deliberations of, or considerations taken into account by, Tectonic's Board of Directors, or any member(s) thereof, concerning the acquisition of the business or assets of BBN prior to their acquisition by Tectonic.

19.     Each document concerning the deliberations of, or considerations taken into account by, Tectonic's Board of Directors, or any members thereof, concerning the acquisition of the business or assets of CYP prior to their acquisition by Tectonic.

20.     Each document concerning the deliberations of, or considerations taken into account by, Tectonic's Board of Directors, or any member(s) thereof, concerning the acquisition of the business or assets of SpecSource prior to their acquisition by Tectonic.

21.     The minutes of each meeting of Tectonic's Board of Directors or any subcommittee thereof during the period from January 1, 2003 through August 2006.

7

22.    Each document reflecting or containing any representation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the sale or proposed sale of the business or assets of GO prior to such sale to VeriFone, Inc.

23.    Each written presentation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the business of GO prior to the sale of such business to VeriFone, Inc.

24.    Each document concerning the deliberations of, or considerations taken into account by, Tectonic's Board of Directors, or any member(s) thereof, concerning the sale or proposed sale of the business of GO prior to prior to the sale of such business to VeriFone, Inc.

25.    All documents concerning any bonus or other compensation paid by Tectonic or Solutions to Wolford, Krug, or any of the other Defendants.

26.    All documents concerning any payment made or anticipated to be made by Tectonic or Solutions to John White under the non-competition agreement between him and Tectonic.

27.    All documents concerning any payment made or anticipated to be made by Tectonic to Pecchio, under his employment agreement with Tectonic, as result of the sale of GO's business to VeriFone, Inc.

28.    All documents concerning any payment made or anticipated to be made by Tectonic to Wolford, under his employment agreement with Tectonic, as result of the sale of the GO's business to VeriFone, Inc.

8

29.    All promotional and advertising materials for the business of BBN whether used prior to or after Tectonic's acquisition of such business.

30.    All promotional and advertising materials for the business of CYP whether used prior to or after Tectonic's acquisition of such business.

31.    All promotional and advertising materials for the business of SpecSource whether used prior to or after Tectonic's acquisition of such business.

32.    Each document reflecting or containing any representation made to Tectonic's Board of Directors, or any member(s) thereof, concerning any of the businesses or assets acquired by Tectonic from (i) BBN, (ii) CYP, or (iii) SpecSource after their acquisition by Tectonic.

33.    Each written presentation made to Tectonic's Board of Directors, or any member(s) thereof, concerning the businesses acquired by Tectonic from (i) BBN (such business later named "Tectonic Studio"), (ii) CYP (such business later named "Tectonic Print Directories"), or (iii) SpecSource (such business later named "Tectonic Online Directory") after their acquisition by Tectonic.

34.    Each document concerning the deliberations of, or considerations taken into account by, Tectonic's Board of Directors, or any member(s) thereof, concerning any actual or proposed investments in any of the businesses acquired by Tectonic from (i) BBN , (ii) CYP, and (iii) SpecSource after their acquisition by Tectonic.

9

35.    Each document concerning any business plan for any of the businesses acquired by Tectonic from (i) BBN , (ii) CYP, and (iii) SpecSource, or the Virtual Model business of Solutions.

36.    Each document concerning any financial projections for any of the businesses acquired by Tectonic from (i) BBN , (ii) CYP, and (iii) SpecSource, or the Virtual Model business of Solutions.

37.    Each document reflecting or containing any representation made to Tectonic's Board of Directors, or any member(s) thereof, concerning Solutions' Virtual Model (also referred to as "Tectonic Models") business.

38.    All documents concerning the Escrow Agreement.

39.    All documents concerning the "settlement" of the Escrow Agreement, entered into on or about October 29, 2003, whereby 750,000 shares of stock of Tectonic were released on a *pro rata* basis to John McRoberts, Charles McRoberts, and Pecchio, including, but not limited to, all documents concerning the terms of such settlement and the negotiation of such settlement.

40.    All documents concerning any actual or proposed financing for, or loan to, Tectonic, made or proposed at any time during the period January 1, 2002 through October 3, 2005.

41.    Each written presentation made to Tectonic's Board of Directors, or any member(s) thereof, concerning Solutions' Virtual Model business.

10

42.     Each document concerning the deliberations of, or considerations taken into account by, Tectonic's Board of Directors, or any members thereof, concerning any investment(s) in Solutions' Virtual Model business.

43.     Each document concerning the performance of Solutions' Virtual Model business.

44.     Each document concerning the costs, expenses, or revenues of Solutions' Virtual Model business.

45.     Each document concerning the intended, proposed, or actual uses of any proceeds from Tectonic's sale of GO's business.

46.     Each financial statement for any period or as of any date during the time period January 1, 2002 through the present for Tectonic, Solutions, Partners, GO, BBN, CYP, or SpecSource.

47.     All documents concerning Tectonics or Solutions' decision that Solutions would publish and distribute a national print directory in 2005.

48.     All documents concerning the cost and expenses of Solutions' publishing and distributing a national print directory in 2005.

49.     All documents concerning Tectonic or Solutions' revenues from Solutions' publishing and distributing a national print directory in 2005.

11

50.    All documents reflecting any complaint by any customer(s) or others, concerning any of the products or services offered or provided by (i) the business of BBN, (ii) the business of CYP, or (iii) the business of SpecSource, whether before or after their acquisition by Tectonic.

51.    All documents reflecting any complaint by any customer(s) or others, concerning any of the products or services offered or provided by the Virtual Model business of Solutions.

52.    All documents concerning each actual or proposed contract whereby Solutions agreed to provide any services or products of Solutions' Virtual Model Business.

53.    All documents concerning communications between Tectonic or its attorneys, on the one hand, and any directors' and officers' liability insurer of Tectonic or the attorneys of such insurer, on the other hand, concerning this action or the claims described in the "Motion for an Order Approving the Appointment of an Official Committee of Equity Holders Pursuant to 11 U.S.C. §1102(a)(2)" in *In re Tectonic Network, Inc. and Tectonic Solutions, Inc.*, Case Nos. 05-78966 and 05-78955 (United States Bankruptcy Court, Northern District of Georgia).

54.    All documents concerning the non-competition agreement between John White and Tectonic.

55.    All documents concerning any employment or consulting agreement between Pecchio and Tectonic, entered into at any time during the period January 1, 2002 through June 2005.

56.    All documents concerning any services performed by Pecchio for Tectonic or Solutions or Pecchio's failure to perform services for Tectonic or Solutions during the period from February 1, 2002 through October 3, 2005.

12

57.    All documents concerning Wolford's performance as President and subsequently also as Chief Executive Officer of Tectonic or Solutions during the period from in or about February 2002 through August 2006.

58.    All documents concerning Krug's performance as Chief Financial Officer and Treasurer of Tectonic or Solutions during the period from in or about January 2003 through November 21, 2005.

59.    All documents concerning any residence, business office, mail address, or license maintained or used by John McRoberts in any state outside of Florida at any time during the period from the date of commencement of this action to and including the date of this Request.

60.    All documents concerning the termination of James Serio's employment with Solutions, including, but not limited to, (a) all documents concerning the reasons for such termination and (b) all notes and memoranda of any and all members of the special committee of the Board of Directors of Tectonic, concerning the proposed or actual termination of James Serio's employment with Solution.

61.    All notes or memoranda of any and all members of the special committee of the Board of Directors of Tectonic, concerning any interview or document review regarding James Serio's claim that his employment with Solutions was wrongfully terminated.

62.    All documents concerning any of the complaints, allegations, or claims of James Serio, set forth in the letter dated January 18, 2005 from Daniel M. Klein to Wolford and Krug, including, but not limited to, all documents concerning any investigation of, or response to any of such complaints, allegations, or claims.

13

63.     All documents concerning the numbers of "hits", visits, searches, or "click throughs" on or to the website maintained by the business of SpecSource before Tectonic's acquisition of such business.

64.     All documents concerning the numbers of "hits", visits, searches, or "click throughs" on or to the website maintained by the business of SpecSource after Tectonic's acquisition of such business.

65.     All documents concerning any of the complaints, allegations, or claims of James Serio, set forth in the letter dated March 18, 2005 from Daniel M. Klein to the Occupational Safety & Health Administration of the United States Department of Labor, including, but not limited to, all documents concerning any investigation of, or response to any of such complaints, allegations, or claims.

66.     All documents concerning Tectonics' document retention policy.

67.     All documents concerning Partners' document retention policy.

68.     All documents concerning the destruction of any of the documents responsive to this Attachment A.

69.     All documents concerning any transfer of assets from Tectonic to Partners.

70.     All documents identifying the shareholders, officers, and directors of Partners.

71.     All documents concerning the incorporation or organization of Partners, including, but not limited to, all documents concerning the reasons for its incorporation or organization.

72.    All documents explaining the business, products or services of Partners.

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of October, 2007, a copy of Notice of Subpoenas

Duces Tecum was caused to be served by hand delivery upon the following:


Adam W. Poff, Esquire
William D. Johnston, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801



By: _____
Linda Richenderfer (#4138)
Bifferato Gentilotti LLC
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
(302) 429-1900